## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FOUR WOMEN HEALTH SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ABUNDANT HOPE PREGNANCY RESOURCE CENTER INC., d/b/a ATTLEBORO WOMEN'S HEALTH CENTER, CATHERINE ROMAN, NICOLE CARGES, and, DARLENE HOWARD, <br><br> Defendants. | Civil Action No. 24-12283 |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      Plaintiff Four Women Health Services, LLC ("Four Women") brings this action against Defendant Abundant Hope Pregnancy Resource Center Inc. d/b/a Attleboro Women's Health Center ("AWHC"), Catherine Roman, Nicole Carges, and Darlene Howard (collectively, "Defendants") to halt Defendants' unlawful practices of interfering with women seeking to obtain reproductive healthcare services at Four Women.

2.      "Access to reproductive health care services . . . is a right secured by the constitution and laws of the commonwealth." M.G.L. ch. 12, § 11I 1/2.  Defendants actively manipulate the lawful reproductive healthcare marketplace to deprive women of this right.

3.      Interfering with women's access to reproductive healthcare is not new.  Women seeking reproductive healthcare have faced intimidation, obstruction, and other forms of interference for decades.  Since 1994, the Freedom of Access to Clinic Entrances Act ("FACE Act"), 18 U.S.C. § 248, has helped shield many women from such conduct—but it has led some organizations to pursue more sophisticated interference strategies.

4.      AWHC is an organization whose mission is to prevent women from obtaining reproductive healthcare services, especially abortion care.  In furtherance of this mission, it engages in false advertising, deception, and recently, technological attacks to redirect patients from Four Women to AWHC and prevent them from receiving their chosen and preferred reproductive healthcare services.

5.      Defendants' false advertising and deception begins with AWHC's marketing.  Its anodyne name and website contents, including prompts to make appointments in connection with abortion care, are designed to deceive women into believing AWHC is a licensed medical provider.

6.      AWHC is not a licensed medical facility.  It cannot lawfully provide ultrasounds, gynecological care, or any of the other medical services it advertises on its website.

7.      Recently, Defendants have employed more advanced technological methods to specifically target Four Women patients.  Four Women has learned of multiple cases in which AWHC has intercepted communications between Four Women and patients[1] scheduling appointments.  Within minutes of communicating with Four Women, the patients received a call on their cell phone from AWHC.  These Four Women patients had never called or contacted AWHC; AWHC's outreach arose only after the women contacted Four Women.

8.      Once on the phone, AWHC employed several strategies to prevent the women from showing up to their Four Women appointments:  In some cases AWHC indicated that it *was* Four Women, to hijack the potential appointment or cause the patient to believe her Four Women appointment had been canceled; and in others it suggested it was affiliated with Four Women, falsely instructing the woman she must receive an ultrasound at AWHC before her Four Women procedure, in an attempt to derail the woman's pursuit of services from Four Women.

---

[1] This Complaint refers to "patients" herein to encompass both existing Four Women patients and prospective patients.

2

9.      AWHC's unlawful outreach to Four Women's patients appears to be the result of Defendants' infiltration of Four Women's electronic platforms.  AWHC intercepts messages sent by women seeking reproductive healthcare services from Four Women with a goal of disrupting the process and misdirecting them to prevent Four Women patients or potential patients from receiving the reproductive healthcare services they seek.

10.      Once onsite, AWHC's scheme to obstruct Four Women patients' access to Four Women involves a combination of deceptive maneuvers.  AWHC's physical location alone is designed to deceive Four Women patients into inadvertently entering AWHC—in 2018, after much effort, AWHC moved essentially next-door to Four Women.  Once inside, AWHC often coerces women who enter to prevent or delay their departure, including by instructing them they must receive certain care at AWHC (such as ultrasounds) prior to their Four Women appointments. AWHC then purports to perform medical services for these women, despite lacking the requisite license to do so, and the medical "advice" it provides is often dangerously inaccurate.

11.      At minimum, AWHC's conduct delays and frustrates women seeking care from Four Women by an hour or two.  Four Women is aware of several instances in which women eventually returned to Four Women and were able to access care, but days later than intended.

12.      When it comes to reproductive healthcare, several days of delay may make all the difference in a woman's health or the care she can safely receive.  Four Women can only imagine how many women have been deterred or blocked from receiving any care from Four Women as a result of AWHC's deception, or how many women AWHC has placed at risk through its illegal and dangerous medical advice.

13.      Four Women brings this action to prevent Defendants from continuing to interfere with women's access to reproductive healthcare through these unlawful means.

3

**PARTIES**

14.     Plaintiff Four Women is a Massachusetts limited liability company organized under the laws of Massachusetts and with a principal place of business in Attleboro, Massachusetts.

15.     Defendant AWHC is a nonprofit corporation organized under the laws of Massachusetts in 2010 under the name the Attleboro Women's Center Incorporated.  On January 25, 2011, the Attleboro Women's Center Incorporated changed its name to Abundant Hope Pregnancy Resource Center Inc. ("Abundant Hope").  It maintains a principal place of business in Attleboro, Massachusetts, and does business under the name Attleboro Women's Health Center.

16.     Defendant Catherine Roman is the President of Abundant Hope and resides in North Attleboro, Massachusetts 02760.

17.     Defendant Nicole Carges is the Treasurer of Abundant Hope and resides in North Attleboro, Massachusetts 02760.

18.     Defendant Darlene Howard is the Executive Director of Abundant Hope and resides in Mansfield, Massachusetts 02048.

19.     At all relevant times Defendants Roman, Carges, and Howard have controlled and directed the actions of AWHC.

**JURISDICTION**

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this action includes claims arising under the laws of the United States, specifically the U.S. Computer Fraud & Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.*; and Title I of the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, *et seq.* ("Federal Wiretap Act").  The Court has supplemental jurisdiction over the state law claims herein pursuant to 28 U.S.C. § 1367 because the claims are so related to the federal claims for which this Court has original jurisdiction that they form part of the same controversy.

4

21.     This Court has personal jurisdiction over Defendants because AWHC has a principal place of business in the Commonwealth of Massachusetts and Defendants Roman, Carges, and Howard reside and are domiciled in the Commonwealth of Massachusetts.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1) and (2) because Defendants reside in the District of Massachusetts and the events giving rise to the claims in this action occurred in substantial part within this District.

## FACTS

**I.     Four Women Provides Legal Reproductive Healthcare to Women Who Seek It.**

23.     Four Women is licensed with the Massachusetts Department of Public Health as a clinic and ambulatory surgical center that provides comprehensive gynecological care.

24.     Founded in 1998 to ensure that all women have access to high quality reproductive healthcare, Four Women serves communities that often lack access to care—especially low-income communities.  It is one of only three reproductive healthcare clinics that provide abortion care in southeastern Massachusetts, and the only one offering surgical abortion services.  Since April 2003, Four Women has maintained a fully licensed surgery center with experienced staff, including licensed medical doctors, nurses, and medical assistants.

25.     Four Women provides a range of reproductive healthcare services, including birth control information and prescriptions, ultrasounds, abortion care, and more.  As Four Women is a for-profit entity, they charge for their services, accepting health insurance and direct payments from patients.

**II.     AWHC Is Not a Licensed Medical Facility in the Commonwealth.**

26.     AWHC is not licensed by the Massachusetts Department of Public Health to provide medical care.

27.     Massachusetts law requires clinics, which include "any entity, however organized, whether conducted for profit or not for profit, that is advertised, announced, established, or maintained for the purpose of providing ambulatory medical . . . services," to be licensed by the Department of Public Health.[2]  "Ambulatory medical services are services providing diagnosis or treatment of a health condition and include procedures such as diagnosing pregnancies, performing ultrasounds and other clinical procedures."[3]

28.     AWHC purports to provide ambulatory medical services, including diagnosing pregnancies and performing ultrasounds.

29.     Providing diagnosis regarding viability and location of the fetus without the assistance of a licensed doctor or Advanced Practice Registered Nurse is a violation of Massachusetts regulations pertaining to the practice of medicine and nursing.

30.     Upon information and belief, AWHC staff that is not licensed to diagnose a pregnancy conveys a diagnosis prior to the participation of medical staff licensed to do so.

31.     AWHC is organized as a nonprofit and purports to provide medical services to patients at no cost.  The individual defendants play a leadership role in developing and executing its mission as well as fundraising.

32.     AWHC has attempted to use the legal system to intimidate Four Women.  For example, on June 22, 2022, AWHC sent Four Women a letter threatening a lawsuit under Massachusetts General Laws ch. 93A, § 11.  The accusations in the letter were baseless, as Four

---

[2] *Reminder to Licensees Regarding Licensure Obligations and Providing Standard of Care*, Robert Goldstein, MD, PhD, Commissioner, Department of Public Health Executive Office of Health and Human Services for the Commonwealth of Massachusetts, 1 (Jan. 3, 2024), *available at* https://www.mass.gov/doc/reminder-to-licensees-regarding-licensure-obligations-and-providing-standard-of-care-january-3-2024/download (citing M.G.L. c. 111, § 51).
[3] *Id.*

Women stated in its letter in response.  True and accurate copies of both letters are attached hereto

as **Exhibit A**.

### III.    AWHC Works to Interfere with the Reproductive Healthcare Services Marketplace Through False and Deceptive Advertising.

33.    AWHC's primary mission is to inject itself into the reproductive healthcare

marketplace to prevent women from accessing all legally protected reproductive healthcare, with

a specific focus on preventing women from accessing abortion care.

34.    AWHC purports to provide reproductive healthcare services.

35.    AWHC advertises on its website that it provides "medical appointments" and

"medical tests."[4]

36.    Defendants proclaim that they have performed hundreds of "medical

appointments" and "medical tests," at the monetary value of $157,000 in 2023 alone.[5]

37.    Defendants tout these medical "services," including how they interfere with women

accessing Four Women, in connection with efforts to raise funds from donors for their work

manipulating the reproductive healthcare marketplace.

38.    AWHC advertises, including through the purchase of Google advertising, that it

provides medical services to women including pregnancy testing, ultrasounds, pregnancy

consultation, and testing for sexually transmitted diseases.[6]

39.     AWHC advertises that its ultrasounds identify (1) the gestational age of a fetus; (2)

the location of the pregnancy, by determining whether the pregnancy is intrauterine or ectopic—

---

[4] *See* "About," Attleboro Women's Health Center, https://awhc.net/services/ (last visited Aug. 21, 2024).
[5] *See* "About Us," Abundant Hope Pregnancy Resource Center, https://www.ahprc.org/about/ (last visited Aug. 28, 2024).
[6] *See* "Services," Attleboro Women's Health Center, https://awhc.net/services/ (last visited Aug. 13, 2024).

meaning outside the uterus and not viable; and (3) any cardiac activity, which "can verify that the fetus is viable."[7]

40.     According to the American College of Obstetricians and Gynecologists, "[t]he concept of viability of a fetus is frequently misrepresented or misinterpreted based on ideological principles."[8]  The term has two meanings: "In the first, 'viability' addresses whether a pregnancy is expected to continue developing normally.  In early pregnancy, a normally developing pregnancy would be deemed viable, whereas early pregnancy loss or miscarriage would not.  In the second, 'viability' addresses whether a fetus might survive outside of the uterus.  Later in pregnancy, a clinician may use the term 'viable' to indicate the chance for survival that a fetus has if delivered before it can fully develop in the uterus."[9]

41.     It is the latter form of "viability" that has been used in connection with abortion care from a legal standpoint, as many state laws (such as Massachusetts) prohibit abortion after a fetal gestational age (typically between 24 and 26 weeks) that is widely considered "fetal viability."

42.     The first definition of "viability" has no connection with abortion care.  There is no scientific or legal basis to restrict a woman's access to abortion care based on whether her early pregnancy is developing normally.

43.     AWHC misuses the term "viability" to confuse and mislead women seeking abortion care.

---

[7] *See* "Ultrasounds," Attleboro Women's Health Center,  https://awhc.net/services/ultrasounds/ (last visited Aug. 13, 2024).
[8]     *See*  "Facts   Are   Important:   Understanding   and   Navigating   Viability,"  https://www.acog.org/advocacy/facts-are-important/understanding-and-navigating-viability  (last visited Aug. 31, 2024).
[9] *Id.*

44.     For example, AWHC's website contains a page titled "Thinking About Abortion?" which instructs women seeking abortions to first "confirm" their pregnancy with an ultrasound, stating: "Even if you've taken a home pregnancy test, you need more information.  It's critical to confirm that your pregnancy is viable (growing inside the uterus with a detectable heartbeat) with an ultrasound."

45.     Invoking "viability" is calculated to deceive women seeking abortion care to delay them beyond the recommended time for a medication abortion, which is ordinarily limited to the first 10 weeks of pregnancy.[10]

46.     AWHC's guidance on "viability" also includes dangerous misinformation about ectopic pregnancies.

47.     On the same page of AWHC's website, below the heading "Why Is It Important To Confirm Your Pregnancy If You Want An Abortion?", AWHC states that ectopic pregnancies or active sexually transmitted infections can cause life-threatening outcomes.

48.     AWHC also counsels women through distributed printed materials that "[y]ou may have a serious ectopic pregnancy and abortion is dangerous."[11]

49.     These materials convey the message that it would be unsafe for women with ectopic pregnancies to receive abortions.  This advice is more than false; it puts women at grave risk.

50.     In fact, failure to terminate an ectopic pregnancy can cause serious bodily harm or death.   According to the American College of Obstetricians and Gynecologists, "ectopic

---

[10] Medication abortion mifepristone is safe through 70 days (10 weeks) of pregnancy.  *See* "Information about Mifepristone for Medical Termination of Pregnancy Through Ten Weeks Gestation," U.S. Food and Drug Administration, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/information-about-mifepristone-medical-termination-pregnancy-through-ten-weeks-gestation, (last visited August 31, 2024).

[11] Heartbeat International provides propaganda to AWHC, including a pamphlet deceiving women about ectopic pregnancies.  *See* **Exhibit B**.

pregnancies will never be viable, and the treatment for ectopic pregnancy requires ending the nonviable pregnancy."[12] Even with proper diagnosis and management, "ectopic pregnancy continues to be a significant cause of pregnancy-related mortality and morbidity" and is "the leading cause of hemorrhage-related mortality." **Exhibit C**.

51.      AWHC's preventing women from terminating ectopic pregnancies can therefore cause grave, even fatal harm to the women.

## IV.   AWHC Specifically Directs Its Deception Toward Women Seeking Services from Four Women.

52.      In or around May 2018, AWHC attempted to move into the same address as Four Women, 150 Emory Street.

53.      When this failed, AWHC moved its principal office to 152 Emory Street directly next to Four Women.

54.      150 Emory Street and 152 Emory Street share a driveway and parking lot.

55.      AWHC leverages its physical proximity in its tactics to both insert itself into the reproductive healthcare marketplace and target women intending to access reproductive healthcare services from Four Women.

56.      First, women seeking reproductive healthcare services occasionally make appointments with AWHC, believing they are making appointments at Four Women.

57.      Prospective patients, perhaps aware that the only abortion care provider in the region is in Attleboro, Massachusetts, are reasonably misled by AWHC's name and website to believe that AWHC provides such services.  For example:

- AWHC's website contains a page titled "Options," of which the first "option" listed is

---

[12]    *See* "Facts Are Important: Understanding and Navigating Viability," https://www.acog.org/advocacy/facts-are-important/understanding-and-navigating-viability (last visited, August 31, 2024).

abortion.[13]

- AWHC's website contains a page titled "Abortion," and lists questions women may have "about the abortion pill and other abortion procedures," and directs women who are "thinking about abortion" to make an appointment with a button highlighted in green, stating "MAKE AN APPOINTMENT."[14]

- The page also contains quotes purporting to be a testimonial regarding AWHC's services, which states: "Great place for women considering abortion.  Staff is friendly and nonjudgmental."

58.    When women contact AWHC seeking abortion care, they are not informed that AWHC does not provide abortion care; they are instead given appointments at AWHC.

59.    Then, Defendants interfere with women's physical access to Four Women.

60.    Individuals acting on behalf of Defendants obstruct Four Women's main driveway by pacing with placards at the entrance.  Ride-sharing drivers often refuse to enter Four Women's parking lot due to the conduct of the individuals with the placards, instead dropping patients in the street where AWHC can engage and interfere with them.  This interference includes, but is not limited to, AWHC approaching patients to attempt to give them literature and other information.

61.    To assist patients in overcoming AWHC's interference, Four Women relies on volunteers, who wear colored and labeled parking vests to protect patient access and escort them to the facility.

62.    Individuals acting on behalf of AWHC, however, often wear vests to appear as Four Women volunteers and confuse and deceive the patients.

---

[13] "Options," Attleboro Women's Health Center, https://awhc.net/options/ (last visited Aug. 13, 2024).

63.     In addition, when women inadvertently enter AWHC for their Four Women appointments, they are not informed that they are in the wrong place.

64.     Instead, AWHC engages in conduct to prevent women from leaving its premises, including conducting lengthy intake procedures; obtaining, holding, and copying personal identification cards; sequestering women in isolated rooms; and conducting tests appearing to be ultrasounds.

65.     AWHC's presentation of its staff as medical—although by information and belief they are unlicensed—is coercive.  Women held in isolation rooms under the auspices of receiving testing or "counseling" necessary for medical treatment often do not feel free to leave the premises or refuse to comply with what they are led to believe are medical instructions.

66.     As an example, in or around March of 2024, Jane Doe 1 undertook efforts to seek reproductive healthcare, specifically a medication abortion.[15]

67.     Through its online advertising, AWHC led Jane Doe 1 to believe that AWHC was the Attleboro clinic that provided abortions—*i.e.*, that AWHC was Four Women.

68.     Jane Doe 1's support person called AWHC on her behalf to schedule an appointment for a medication abortion, and AWHC—rather than stating that they do not provide such care—made an appointment for her.  Accordingly, AWHC led Jane Doe 1 to believe that her AWHC appointment was for the medication abortion services she sought.

69.     Jane Doe 1 brought cash with her to the appointment as she was prepared to pay for the reproductive healthcare services.  Upon arrival at her appointment, AWHC requested Jane Doe

---

[15] Four Women patients are referred to herein using pseudonyms.  *See Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D. Mass. 1995) (courts permit the utilization of pseudonyms for parties "in cases involving social stigmatization [or] real danger of physical harm . . . . Cases in which parties are allowed to proceed anonymously because of privacy interests often involve abortion.").

12

1's identification and informed her that they accepted health insurance, so the cash was not necessary.

70.     AWHC then brought Jane Doe 1 to a room away from the waiting room with only one door, no windows, and no phone.

71.     Jane Doe 1 was accompanied to AWHC by a support person, but Jane Doe 1 was sequestered in this room alone with AWHC staff.

72.     AWHC kept Jane Doe 1 in this sequestration room for more than an hour, during which time AWHC staff provided medically inaccurate information regarding abortions.

73.     AWHC misled Jane Doe 1 to believe that this consultation was a required step in the process for undergoing an abortion and, therefore, that she could not leave if she wanted to obtain the services she sought.

74.     AWHC staff then brought Jane Doe 1 to another room where three employees—including one self-identified ultrasound technician and one self-identified Registered Nurse—purported to perform an ultrasound.

75.     There was no doctor present at any point during Jane Doe 1's experience at AWHC.

76.     The AWHC staff told Jane Doe 1 that no heartbeat could be detected but provided ultrasound images to her purportedly stating the gestational age of her fetus.  Using this information, they informed her that she could not undergo an abortion at that time as she was only six weeks pregnant.

77.     Jane Doe 1 requested to still undergo the medication abortion, but AWHC instructed her that in order to do so she would need to return in two weeks for another ultrasound.

78.     Jane Doe 1 believes she was ten weeks pregnant at the time.

79.     AWHC's behavior during Jane Doe 1's visit was designed to mislead Jane Doe 1 and delay and even—by providing false medical advice, causing her to endure a difficult appointment, misdiagnosing her pregnancy, and ultimately declining her the treatment she sought—prevent her from obtaining abortion care services from Four Women.

80.     Following her AWHC appointment, Jane Doe 1 scheduled an appointment with Four Women.

81.     A few days later, Jane Doe 1 attended her appointment with Four Women.  While she was actually inside Four Women's office for that appointment, AWHC called Jane Doe 1 on her cell phone.  Jane Doe 1, unaware that the caller was AWHC, answered the call.  The AWHC speaker asked Jane Doe 1 about her plans with respect to her pregnancy.  Jane Doe 1 realized the speaker was AWHC and hung up the call.

82.     While she was on this call, Jane Doe 1's support person noticed an individual circling the Four Women facility.  Jane Doe 1 believes this person was affiliated with AWHC, conducting surveillance, and had seen her enter Four Women.

83.     AWHC's actions, including holding Jane Doe 1 in isolated areas she did not feel free to leave, calling her during her Four Women appointment, and appearing to surveil the Four Women facility, placed Jane Doe 1 in apprehension and fear.  Indeed, while she still seeks reproductive healthcare from Four Women, including birth control, she does not go physically to the facility out of fear of what AWHC had already done and might attempt to do next.

84.     Jane Doe 1's experience and her resulting trauma is not unique:  Four Women staff frequently hear from women they treat that AWHC has attempted to interfere with their access to Four Women or deceived them about the reproductive healthcare services marketplace.

85.     For example, on or around October 25, 2023, Jane Doe 2 had an appointment at Four Women, but because of AWHC's deceptive in-person tactics, she inadvertently went into AWHC's facility.  AWHC led Jane Doe 2 to believe that AWHC was Four Women, putting her through their intake process and leading her to a sequestration room.  While in the sequestration room, AWHC staff attempted to dissuade Jane Doe 2 from her intended healthcare decisions (terminating her pregnancy), and shamed her for that decision.

86.      Jane Doe 3 and Jane Doe 4 also both had appointments with Four Women but inadvertently ended up in AWHC due to in-person misdirection.

87.     In October 2023, upon arrival at AWHC, Jane Doe 3 stated that she had an appointment.  AWHC knew Jane Doe 3 did not have an appointment at AWHC, but staff did not inform her until she had checked in and provided her identification, which AWHC copied, that she was in the wrong place.

88.     In November 2023, Jane Doe 4 arrived at AWHC for a Four Women appointment. She told AWHC she had an appointment—AWHC knew Jane Doe 4 did not have an appointment there but did not inform her until after she spent twenty minutes completing paperwork, copying her identification, and asking her probing questions.

89.     AWHC's actions delay and potentially prevent Four Women's patients from accessing Four Women and attending their scheduled appointments at Four Women.

**V.    AWHC Intercepts Four Women's Confidential Patient-Client Communications and Contacts Patients Directly.**

90.     Recently, AWHC has realized that they need not simply wait for Four Women patients to see their marketing and come to them.  Instead, AWHC has become more proactive, using technology to target women seeking reproductive healthcare services from Four Women and reaching out to them directly.

91.     Specifically, on multiple occasions over the past year, AWHC has intercepted electronic communications between patients and Four Women as they are scheduling appointments.  Using information gained through this interception, AWHC then called Four Women patients directly on their cell phones.

92.     Many patients schedule appointments with Four Women by phone, simply by calling Four Women.  Many other patients schedule appointments with Four Women online.

93.     Four Women's website contains a widget that permits patients or potential patients to make appointments or send messages to Four Women.

94.     The widget connects to a platform managed by Klara Technologies, Inc. ("Klara"), which facilitates secure patient messaging, among other services.



---

[16] Screen shot of Four Women Health Services, https://www.fourwomen.com/ (last visited Sep. 1, 2024).

95.     When patients select "Send us a message" on the Klara widget, they are prompted to type their message and provide their cell phone number so that Four Women may respond.

96.     Four Women staff then responds using the organization's Klara page, which staff can access using a browser on their computer or an application on their mobile device.

97.     Messages sent by Four Women staff using the Klara platform are then sent to the inquiring patients on their respective devices.

98.     Immediately after booking an appointment, appointment information—including the patient's name, phone number, and appointment type—is uploaded to Athenahealth, Inc. ("Athena"), a third-party electronic health record system.

99.     Four Women uses Athena to manage patient health records and information. Four Women's Athena platform stores patient records, appointments, and information. Four Women's patient visitation schedule also resides on the Athena platform.

100.    Recently, Four Women has learned of multiple instances in which electronic communications with patients sent via Klara were apparently intercepted by AWHC.

101.    For example, on or about 1:25 p.m. on October 30, 2023, Jane Doe 5 contacted Four Women seeking to schedule an ultrasound after testing positive on a home pregnancy test.

102.    Through electronic messaging facilitated by Klara, Four Women staff communicated with Jane Doe 5 about scheduling an appointment. At 1:40 p.m., Four Women wrote: "We have appointments on Wednesday, Thursday or Friday this week."

103.    At 1:55 p.m., Jane Doe 5 responded: "I received a call from someone at your office and I scheduled an appointment for Thursday morning at 9:15."



104.    Four Women had not called Jane Doe 5.

105.    Four Women informed Jane Doe 5 that no one in the Four Women office had called her, and that Four Women does not see patients on Thursday mornings.

106.    Jane Doe 5 received a text confirmation for her Thursday appointment, which stated that the appointment was with AWHC.

107.    Jane Doe 5 had never contacted or communicated with AWHC prior to October 30.

108.    Jane Doe 5's October 30 messages with Four Women was the only method by which AWHC could have obtained Jane Doe 5's contact information and known that she was pursuing reproductive healthcare services that day.  AWHC's interference occurred in real time, offering an appointment on one of the three days identified by Four Women less than 15 minutes prior.  Thus, on information and belief, AWHC intercepted Jane Doe 5's communications with Four Women that day and obtained both her cell phone number and the content of the communication.

109.    AWHC's practice of calling women who have communicated with Four Women is not isolated to Jane Doe 5.

110.    As a further example, Jane Doe 6 scheduled an appointment for a medication abortion with Four Women on or about May 1, 2024.  At 9:05 a.m., Jane Doe 6 contacted Four Women to schedule an appointment.

111.    Jane Doe 6 and Four Women then messaged using the Klara platform to schedule an appointment.  At 10:09 a.m., Four Women sent Jane Doe 6 a link on Klara that she could use to upload insurance information.

112.    Two minutes after Four Women's message, AWHC called Jane Doe 6.

113.    Specifically, Jane Doe 6 received a call at 10:11 a.m. from the phone number (508) 455-0172.

114.    AWHC's phone number is (508) 455-0172.

115.    Jane Doe 6 answered the call.  During the call, AWHC made misleading statements to indicate it was the entity with which she had made an appointment.  AWHC stated it had received her online request for an appointment and that she was required to undergo an ultrasound prior to the medication abortion to verify the pregnancy and see if it is viable.

116.    AWHC's statements to Jane Doe 6 contradict medical advice and reproductive healthcare standards of care.

117.    AWHC's tactics are not limited to patients seeking abortion care.  AWHC also seeks to interfere with women seeking other reproductive healthcare services from Four Women.

118.    For example, on or around August 31, 2023, Jane Doe 7 contacted Four Women and scheduled an appointment for birth control.

119.    Minutes after booking an appointment with Four Women, Jane Doe 7 received a call from AWHC.  During the call, AWHC personnel stated that it could not provide her with birth control and invited her instead to a diaper give-away.  AWHC deceived Jane Doe 7 to believe that

she was speaking with Four Women and not AWHC.  At the end of the call, Jane Doe 7 believed that her appointment with Four Women had been canceled.

120.    Additionally, on or around May 6, 2024, Jane Doe 8 messaged Four Women using its online platform, operated by Klara, and made an appointment for a medication abortion.

121.    On the day of her appointment, AWHC called Jane Doe 8 on her cell phone.  On the call, AWHC attempted to persuade Jane Doe 8 to come to AWHC before or in lieu of Four Women.  Jane Doe 8 had never previously contacted AWHC and does not know how AWHC obtained her contact information.

122.    AWHC intercepted Jane Doe 5-8's, phone, online, and/or text communications with Four Women and used it to obtain names, phone numbers, and appointment requests, and ultimately contact the patient with the sole purpose of preventing her from accessing reproductive healthcare at Four Women.

123.    Four Women is aware of this interception through women who have informed Four Women of AWHC's conduct.  AWHC has likely intercepted countless other women from accessing reproductive healthcare at Four Women.  On a regular basis, women who have scheduled appointments through online communications or using the appointments option in the Klara widget cancel or do not show up for their appointments.  Four Women thus reasonably believes there are women for whom AWHC's conduct has prevented their access to Four Women altogether.

## COUNT I

### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*

124.    Four Women incorporates the allegations contained in Paragraphs 1 - 121 as if fully set forth herein.

125.    Four Women brings this action under 18 U.S.C. § 1030(g) allowing any injured person to maintain a civil action against the violator of the CFAA.

126.    Four Women's computer system and web-based platforms are a "protected computer" within the meaning of the CFAA because they were used in or affected interstate or foreign commerce or communication and each constitutes an electronic, cloud-based, or other high-speed data processing device performing logical, arithmetic, or storage functions, or a data storage facility or communications facility directly related to or operating in conjunction with such device.

127.    Four Women did not authorize AWHC to access its computer system or web-based platforms.

128.    AWHC nevertheless accessed Four Women's computer system and/or web-based platforms and obtained information from that system, including the names and contact information of patients or women seeking to make appointments with Four Women.

129.    For example, AWHC gained unauthorized access to Four Women's electronic communications with Jane Does 5-8 as they were in the process of or had recently completed communicating with Four Women to schedule appointments.

130.    As a consequence of the foregoing, Four Women has suffered and will continue to suffer irreparable harm.

131.    By engaging in the foregoing conduct, AWHC violated 18 U.S.C. § 1030(a)(2)(C).

132.    AWHC's unauthorized access to Four Women's computer system resulted in the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of one or more Four Women patients.

133.    AWHC's unauthorized access to Four Women's computer system resulted in Four Women accruing costs responding to the offense and lost revenue and other consequential damages exceeding $5,000.

134.    A violation of 18 U.S.C. § 1030(a)(2)(C) that results in the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of one or more individuals entitles Four Women to injunctive relief.  18 U.S.C. § 1030(g).

## COUNT II

### Violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*

135.    Four Women incorporates the allegations contained in Paragraphs 1 - 132 as if fully set forth herein.

136.    Four Women brings this action under 18 U.S.C. § 2511(1)(a), allowing any injured person to maintain a civil action against the violator of the Federal Wiretap Act.

137.    AWHC intended to intercept communications between Four Women and potential or existing Four Women patients.

138.    AWHC intercepted electronic and/or telephonic communications between Four Women and women seeking appointments or services with Four Women, including between patients' cell phones and Four Women's account on the Klara online platform.

139.    AWHC's interception of Four Women's electronic and/or telephonic communications was contemporaneous with the communications as they were made:  For example, AWHC called Jane Doe 5 as she was in the course of messaging Four Women to make her appointment and called Jane Doe 6 within minutes of making her appointment and messaging with Four Women online.  Jane Doe 7 received a call on her cell phone from AWHC minutes after making an appointment with Four Women.

140.    AWHC's interception of communications included such content as patient names, phone numbers, and the patients' requests for appointments with Four Women.

141.    AWHC intercepted electronic and/or telephonic communications made by Four Women using its own electronic devices, including its web server, to gain unauthorized access to Four Women's electronic and/or telephonic messages, including its Klara account.

142.    AWHC's conduct has caused irreparable harm to Four Women and the patients pursuing care with Four Women.

143.    A violation of 18 U.S.C. § 2511(1)(a) entitles Four Women to injunctive relief, statutory damages of $100 a day for each day of violation or $10,000, whichever is greater, and reasonable attorney's fees and costs.  18 U.S.C § 2520(a)-(c).

### COUNT III

### Violation of the Massachusetts Wiretap Act, M.G.L. c. 272, § 99

144.    Four Women incorporates the allegations contained in Paragraphs 1 - 141 as if fully set forth herein.

145.    Four Women brings this action under M.G.L. c. 272, § 99 ("Massachusetts Wiretap Act"), allowing any injured person to maintain a civil action against the violator of the Massachusetts Wiretap Act.

146.    Four Women engaged in wire communications when it messaged with Four Women patients and scheduled appointments with Four Women patients electronically or telephonically, including via the Klara platform.

147.    The contents of Four Women's wire communications were intercepted when AWHC secretly recorded them by copying down patient names, phone numbers, and the patients' requests for appointments with Four Women.

148.    AWHC intercepted communications made by Four Women using its own intercepting devices, including its web server, to gain unauthorized access to Four Women's electronic and/or telephonic messages, including its Klara account.

149.    AWHC's conduct has caused irreparable harm to Four Women and the patients pursuing care with Four Women.

150.    AWHC's willful violation of M.G.L. c.  272, § 99 entitles Four Women to injunctive relief, statutory damages computed at the rate of $100 per day for each day of violation or $1,000, whichever is greater, and reasonable attorney's fees and costs.  M.G.L. c.  272, § 99.

<u>**COUNT IV**</u>

<u>**Violation of Massachusetts Consumer Protection Act M.G.L. c. 93A, § 1, *et seq.***</u>

151.    Four Women incorporates the allegations contained in Paragraphs 1 - 148 as if fully set forth herein.

152.    AWHC through its actions and advertising have engaged in unfair competition and deceptive acts in order to manipulate the healthcare marketplace.

153.    AWHC's activities arise in a business context and thus it is engaged in trade and commerce.

154.    AWHC's actions are willful and knowing as it did so with the intent to manipulate the healthcare marketplace.

155.    AWHC's willful violation of M.G.L. c. 93A, § 11 entitles the Plaintiff to injunctive relief, actual damages, treble damages, and reasonable attorney's fees and costs.

156.    "[A]n act or practice is a violation of M.G.L. c.93A, § 2 if . . . [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection." 940 Mass. Code Regs. 3.16(3).

157.    The Department of Public Health's authorizing statute, including M.G.L. ch. 111 § 51, and regulations require that an entity advertised, announced, established, or maintained for the

purpose of providing ambulatory medical services, including performing ultrasounds, must be licensed with the Department of Public Health.

158.   The Department of Public Health authorizing statute and its regulations are meant for the protection of the public health.

159.   The Defendants advertise, announce, establish, and maintain AWHC as providing ambulatory medical services, including ultrasounds.

160.   AWHC is not licensed with the Department of Public Health.

161.   AWHC advertising, announcing, establishing, and maintaining AWHC as an ambulatory medical service without a license violates the Department of Public Health statute and regulations.

162.   AWHC's activities arise in a business context and thus it is engaged in trade and commerce.

163.   AWHC's actions are willful and knowing as it did so with the intent to manipulate the healthcare marketplace.

164.   AWHC violation of these statutes and regulations is a violation of M.G.L. c. 93A and 940 Mass. Code Regs. 3.16(3).

165.   AWHC's willful violation of M.G.L. c. 93A, § 11 entitles the Plaintiff to injunctive relief, actual damages, treble damages, and reasonable attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Four Women respectfully pray that this Court:

   a.   Enter judgment in favor of Four Women and against AWHC on all counts of the Complaint;

b. Enter preliminary and permanent injunctions preventing AWHC from:

    i. Accessing any Four Women computer system;

    ii. Obtaining or interfering with Four Women's communications with patients or prospective patients;

    iii. Misleading and directing women seeking medical services at Four Women to enter AWHC's premises for consultations or ultrasounds;

    iv. Providing ultrasounds or any diagnosis from ultrasounds;

    v. Promoting itself in any way as providing a team of board-certified doctors and nurses that utilize ultrasounds to diagnose the viability of a pregnancy;

    vi. Promoting itself in any way as providing the full range of appropriate and standard medical care and instead disclose that its purpose is to deter and prevent abortion; and

    vii. Communicating with or contacting Four Women patients or prospective patients.

c. Award damages as follows:

    i. Award statutory damages of $100 a day for each day of violation or $10,000, whichever is greater, pursuant to 18 U.S.C § 2520(a)-(c).

    ii. Award statutory damages of $100 per day for each day of violation or $1,000, whichever is greater, pursuant to M.G.L. c. 272, § 99.

    iii. Award treble damages and interest pursuant to M.G.L. c. 93A, § 11 for unfair trade practices.

d. Award Four Women the cost of this action; and

e. Award such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Four Women demands a trial by jury on all issues so triable.

DATED:  September 5, 2024

**Four Women Health Services, LLC,**

By its attorneys,

/s/ *Matthew Patton*
Matthew D. Patton (BBO No. 703798)
Law Office of Nicholas F. Ortiz, P.C.
One Boston Place, Suite 2600
Boston, MA 02108
(617) 338-9400
mdp@mass-legal.com

/s/ *Emily Nash*
Martha Coakley (BBO #87300)
Emily J. Nash (BBO #696460)
Caroline Holliday (BBO #707301)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
mcoakley@foleyhoag.com
enash@foleyhoag.com

Brenna Rosen (*pro hac vice forthcoming*)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, New York 10019
brosen@foleyhoag.com