**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

FOUR WOMEN HEALTH SERVICES, LLC.

               Plaintiff,

v.

ABUNDANT HOPE PREGNANCY RESOURCE CENTER INC. d/b/a ATTLEBORO WOMEN'S HEALTH CENTER, CATHERINE ROMAN, NICOLE CARGES, DARLENE HOWARD, and CHOOSE LIFE MARKETING, LLC,

               Defendants.

Case No. 1:24-cv-12283-JEK

**DEFENDANT CHOOSE LIFE MARKETING, LLC's
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## <u>INTRODUCTION</u>

      This case began with Plaintiff Four Women seeking temporary injunctive relief, on the basis of fanciful claims of wiretapping by Defendant Abundant Hope, which were shown instead to be standard marketing efforts. Having abandoned the core of their initial case, Plaintiff now attacks Defendants with business tort claims—despite the fact Abundant Hope's activities are charitable, its speech is noncommercial, and its advocacy is otherwise protected by the First Amendment. These latest claims, while less conspiratorial, are no less fanciful than Plaintiff's initial imaginings.

      The state law claim is entirely barred, for the Massachusetts Supreme Judicial Court specifically prohibited the application of its deceptive practices law in a similar lawsuit, brought by

an abortion clinic against a nearby pregnancy help center. The facts of that case were more egregious than the conjurings of Plaintiff here: in that suit, the pregnancy center moved to a location in the same hallway as the clinic, past which all clinic patrons had to pass; misappropriated the clinic's trade name and service mark; and was found by the trial court to have intended to misuse the clinic's name and mark to confuse women.[1] Even under those circumstances, the Supreme Judicial Court held that the center's charitable services cannot constitute the necessary "trade or commerce" to trigger the state deceptive practices law. The First Circuit has similarly held that the Lanham Act only applies to commercial speech of commercial competitors—none of which applies to the utterly free services and noncommercial speech and advocacy at issue here.

And Plaintiff's claims against Defendant Choose Life Marketing ("Choose Life") are doubly meritless, for Missouri-based Choose Life is involved solely because of its (entirely remote and online) copywriting and Google ad placement services. Plaintiff does not and cannot allege that Choose Life was involved in or had knowledge of Plaintiff's various tales of woe, involving in-person and telephone conversations and other supposed actions at and around the Attleboro Women's Health Center and Four Women clinic. Plaintiff alleges that Choose Life's copy and advertisements are false and deceptive, but the actual materials belie those claims—regardless, the speech is protected from suit by the First Amendment. Even more, Plaintiff has not sufficiently alleged, with particularity, that Choose Life's speech on the internet proximately caused Plaintiff a material business harm under the relevant statutes.

## FACTS

---

[1] Just as here, the clinic presented example "Jane Does," alleging distress and confusion and delay due to the pregnancy center's efforts to inform them about abortion and dissuade them from having an abortion. *Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480, 482, 498 N.E.2d 1044, 1045-46 (1986). As here, those Does were alleged to have entered the facility "to have either a pregnancy test or an abortion at [Planned Parenthood] and by mistake entered the offices of" the pregnancy center. *Id.* at 483.

Four Women is a for-profit clinic offering abortions and related services to the public, at 150 Emory St in Attleboro, Massachusetts. *See* https://www.fourwomen.com/. Abundant Hope, a/k/a Attleboro Women's Health Center ("Attleboro"), is a nonprofit Christian pregnancy help center, offering free assistance to those facing unexpected pregnancies and advocacy against abortion, in the rear of the building at 152 Emory St. Their respective buildings are separated by the distinct parking lots for each building. *See* Ex. A, Google Maps Images of 150-152 Emory St, attached hereto.

Abundant Hope contracted with Choose Life, a Missouri corporation with no Massachusetts presence, to provide copywriting and maintenance of the Attleboro website and online ad placement. Dkt. 59 at ¶ 10. Choose Life does not have (nor is it alleged to have) any involvement in the management or delivery of the services provided at the Attleboro Women's Health Center.

Plaintiff claims that Abundant Hope has committed a variety of deceptive practices as part of its advocacy against abortion and provision of free services. Some of these allegations relate to alleged actions on the public sidewalk outside of Plaintiff, some involving conversations and actions in and around the Attleboro center, and some involving online copy and advertising. Plaintiff does not allege that Choose Life had any involvement in, knowledge of, nor reason to know about anything but the online copy and advertising.

As to the Attleboro website, Plaintiff alleges (*id.* at ¶ 12) that the site was false insofar as it advised that Attleboro would provide free medical appointments and medical tests—not because

the tests were inaccurate or did not involve healthcare professionals,[2] but due to lack of state licensing as a "clinic" under M.G.L. c. 111 § 52, which Plaintiff alleges was required. Plaintiff also alleges the website included "falsities about pregnancy and abortion designed to delay and dissuade women seeking abortion care." *Id.* Finally, Plaintiff alleges the site "deceives women into believing that Abundant Hope provides abortion care, which it does not." *Id.*

Plaintiff includes an exhibit, at Dkt. 59-1, purporting to be true and accurate printouts of the former Attleboro website—none of Plaintiff's pages state that Attleboro performs abortions. And looking at the website, clearly separates services provided at Attleboro (drop-down menu for "Services+" includes "Pregnancy Testing", "Ultrasounds", "Pregnancy Consultation", and "STD testing") from the options available to a pregnant woman (drop-down menu for "Options+" includes "Abortion", "Adoption", and "Parenting"). *See* Ex. B hereto.[3] Unlike an abortion, a medical procedure which has a cost (see, e.g., https://www.fourwomen.com/learn-more/payment-insurance/), the designated services at Attleboro have no cost. *See, e.g.,* Dkt. 59-1 at 12 ("Contact us today to schedule a free, confidential appointment. We're a great place to start and are here for you with a FREE ultrasound, pregnancy consultation, and more.") & Ex. B, *passim* ("Our services are provided at no cost" appears on each page).

---

[2] Plaintiff appears to concede the involvement of at least a medical doctor (*id.* at ¶ 57, 166), ultrasound technician, and registered nurse (*id.* at ¶ 160) in the services provided at Attleboro, though it challenges the involvement of a Dr. Levis Guzman, who was apparently involved in reading one ultrasound at some point but who apparently was not licensed in Massachusetts at the time (*id.* at ¶ 166). Regardless, Plaintiff makes no allegations that Choose Life had any knowledge or reason to know of, or involvement in, any of these alleged licensing or regulatory deficiencies.

[3] The actual Attleboro webpage is significantly different than the incomplete printout provided by Plaintiff at Dkt. 59-1. Defendant provides at Ex. B accurate screenshots of the archive.org recording of the website from September 9, 2024, the date Plaintiff's Complaint was served. (Found at https://web.archive.org/web/20240909202417/https://awhc.net/.)

The mentions of "abortion" in the Plaintiff's pages are limited to discussion of options. *See, e.g.*, Dkt. 59-1 at 2 ("compassionate and accurate medical information" & "We will provide medically accurate information about your options"), 4 ("talk in a safe, non-judgmental environment"), 6 ("You owe it to yourself to become fully informed in order to make a confident decision." & "Let's talk about making an adoption plan." & "Now's the time to look at all your options, and parenthood is one of them."), 8 ("Thinking About Abortion? . . . These are important questions to have answered so that you can make an empowered and confident decision. You owe it to yourself to get accurate information"), 11 ("if you want to talk to someone in person about the risks of abortion and your options"), 12 ("we offer free pregnancy resources that can help you feel empowered to make an informed decision about what to do next"). All of Attleboro's web pages include the disclaimer that, "We do not provide gynecologic or extended obstetrical care, nor do we perform or refer for abortion services." Ex. B, *passim*.

Plaintiff finally alleges that "Choose Life Marketing propagates these misrepresentations through Google advertisements that prompt women searching for abortion care to 'schedule an appointment' with 'Attleboro Women's Health Center.'" Dkt. 59 at ¶ 13. Plaintiff alleges generally that the Google ads were deceptive (*id.* at ¶¶ 119-122) and that they were designed to reach women who may be considering abortion, but as before, Plaintiff does not allege any statements indicating that Attleboro actually provides abortions. Nor does Plaintiff allege that any of the Attleboro website pages or Google ads reference "Four Women" at all.

## ARGUMENT

### I. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, state a claim for relief that is "plausible on its face." *Ashcroft*

5

*v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that offers only "naked assertion[s]" devoid of "further factual enhancement" cannot survive a motion to dismiss. *Id*. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The First Circuit emphasizes "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

But here, Plaintiff faces and even higher pleading burden, because it alleges that Defendants performed "deceptive acts" in order to "manipulate the healthcare marketplace." Dkt. 59 at ¶ 190-192. As a result, Plaintiff must surmount the "additional hurdle" of Fed. R. Civ. P. 9(b), and plead "with particularity" the "time, place, and content of the alleged misrepresentation with specificity." *Id.* (citations omitted). *See Valley Children's Hosp. v. Athenahealth, Inc*., 2023 WL 6065800, at *4 (D. Mass. Sept. 18, 2023) (applying Rule 9(b) to a complaint under Ch. 93A § 11, holding that "[c]laims that rely on allegations of intentional . . . false statements . . . cannot serve as the lynchpin of a cause of action without triggering Rule 9(b)).

## II.    Plaintiff's claim under M.G.L. c. 93A fails because Defendants are not engaged in the "trade" or "commerce" required for that law to apply.

Plaintiff asserts that Defendants violated the Massachusetts Consumer Protection Act M.G.L. c. 93A § 11. (Dkt. 59 at ¶ 30-31). But for at least the past 40 years, the Massachusetts courts have taught that Ch. 93A does not apply to the charitable activities of nonprofits advancing their mission. And the Supreme Judicial Court has specifically held that a pro-life pregnancy help center is not subject to suit under Ch. 93A brought by a neighboring abortion provider, because centers providing free services are not engaged in "trade or commerce" under Ch. 93A. *See Planned Parenthood*, *passim*.

6

In *Planned Parenthood*, the Supreme Judicial Court considered an abortion provider's claim that a non-profit pregnancy help center—which had appropriated Planned Parenthood's "PP" trademark—had engaged in unfair and deceptive trade practices in violation of Ch. 93A. The non-profit provided "pregnancy tests, pregnancy counseling advice and other services relative to pregnancy" at no cost to its clients. *Id.* at 494. This fact was fatal to the abortion clinic's claim: because Ch. 93A governs "trade" and "commerce," it does not apply to a pro-life clinic which does not "exchange [services] for some consideration." *Id.* at 493. The court concluded that "the Legislature intended to exclude the activities engaged in by a corporation such as [defendant] from the reaches of c. 93A." And in doing so, the Court rejected the dissent's argument that an "unfair or deceptive act" under Ch. 93A includes activities by a pro-life clinic that "diverts trade or commerce" from an abortion clinic by offering women free alternatives. *Id.* at 499. *See also Squeri v. Mount Ida Coll.*, 954 F.3d 56, 73 (1st Cir. 2020) (summarizing *Planned Parenthood* as "determining that a charitable corporation, which had engaged in advertising of its services, was not engaged in trade or commerce."); *cf. Hebrew Senior Life, Inc. v. Novack,* 102 Mass. App. Ct. 1105 (2022) (citing *Planned Parenthood* and holding that a nonprofit charity dedicated to housing the elderly did not engage in trade or commerce under Ch. 93A because renting the apartments was part of the charity's "core mission," *even though* it accepted rent from its clients).

There is no daylight between the Court's holding in *Planned Parenthood* and Plaintiff's doomed claims here. Plaintiff alleges that Abundant Hope unfairly competes with it under Ch. 93A, but that runs headlong into the holding that the predicate for a Ch. 93A claim is an "exchange" of services by the defendant "for some consideration." The complaint does not allege that Abundant Hope's clients pay for services. On the contrary, the complaint concedes that Abundant Hope's services are entirely *free*: Plaintiff states that Abundant Hope "purports to provide free

medical appointments and medical tests" (Dkt. 59 at ¶ 12). Plaintiff adds that Abundant Hope advertises "Free Support" and free referrals (*id.* at ¶ 122) and creates an "impression that women will receive free medical care" (*id.* at ¶ 125). The fact that some monetary value may be ascribed to Abundant Hope's free services shows the scale of Abundant Hope's generosity, but that is entirely irrelevant to whether Abundant Hope charged for its services.

"In most circumstances, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission." *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 26 (1997), cert. denied, 522 U.S. 1015 (1997). Plaintiff alleges that Abundant Hope's "central mission" includes "reach[ing] abortion-minded women." Dkt.. 59 at ¶ 10. The Amended Complaint concedes that Abundant Hope's offerings of free pregnancy tests and ultrasounds further that core mission: Abundant Hope is thus not engaged in trade or commerce, and Ch. 93A § 11 does not cover its activities.

As to Choose Life, Plaintiff alleges it "writes the content for the Abundant Hope Website and buys and places Google advertisements on its behalf" (Dkt. 59 at ¶ 10) and "shares the same mission" as Abundant Hope (*id.* at ¶ 83). According to Plaintiff, Abundant Hope "approve[s] the language of these websites and advertisements drafted by Choose Life Marketing." *Id.* at ¶ 75. But none of these actions constitute trade or commerce for purposes of Ch. 93A, either. Instead, they are "activities in furtherance of [Abundant Hope's] core mission." The activities Plaintiff alleges Choose Life to have performed for Abundant Hope are not "trade or commerce" because they are "merely engaged in the customary business necessary to meet [Abundant Hope's] charitable purpose," *Trustees of Bos. Univ. v. ASM Commc'ns, Inc.,* 33 F. Supp. 2d 66, 77 (D. Mass. 1998), which Plaintiffs concede includes "reach[ing] abortion-minded women." Operating a website and

8

running advertisements fall squarely into Abundant Hope's charitable purpose and are thus not "trade or commerce" for purposes of Ch. 93A.

Choose Life's sole connection to this case is drafting copy and placing ads for an entity whose activities are not in "trade or commerce"—Choose Life's mere marketing of those activities, under the control and at the request of the entity, does not change their character. Plaintiff's state law claim thus necessarily fails and must be dismissed, with prejudice.

### III.    Plaintiff Cannot Sue Choose Life Under M.G.L. 93A § 11 Because They Have No Commercial Relationship.

Plaintiff's claim against Choose Life fails because Choose Life has no commercial relationship with Plaintiff. Plaintiff asserts its claim under § 11 of Ch. 93A. Dkt. 59 at ¶ 194-200. The Supreme Judicial Court has held that § 11 "requires that there be a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce." *Linkage Corp. v. Trustees of Bos. Univ.*, 425 Mass. 1, 23 (1997) (cleaned up). Even if the transactions alleged here were "trade or commerce" under § 11—and they are not—transactions among defendants cannot trigger liability for an uninvolved third party like Plaintiff. Rather, § 11 "require[s] . . . that there be a commercial transaction between the parties." *Rafferty v. Merck & Co.*, 479 Mass. 141, 162 n. 7 (2018) (emphasis added). "When the theory of c. 93A liability is unfair and deceptive acts and practices, those acts must occur within the parties' business relationship." *FlightLevel Norwood, LLC v. Bos. Exec. Helicopters LLC*, 105 Mass. App. Ct. 1114 (2025).

This Court has applied the Supreme Judicial Court's construction of Ch. 93A in the context of a § 9 consumer action under Ch 93A. *See Courtemanche v. Motorola Sols., Inc.*, 2024 WL 5111509 (D. Mass. Dec. 13, 2024). There, this Court recognized that § 9 claimants have a "lower burden in establishing a commercial relationship than an action between two businesses under § 11." *Id.* at *2. But plaintiffs there only alleged a "commercial relationship between [defendants],

9

not any commercial relationship with the Plaintiffs." *Id*. This Court denied plaintiffs' request for "modest" discovery in the context of a motion to dismiss, because "there [was] little indication that the discovery requested [would] yield any information supporting the requisite commercial relationship between Plaintiffs and the Defendants in question." *Id*. (emphasis original). The Court later dismissed the case, holding that those plaintiffs failed to state a claim against the defendants. *Courtemanche v. Motorola Sols., Inc.*, 2025 WL 641398 (D. Mass. Feb. 27, 2025).

Here, Plaintiff alleges no commercial transactions, let alone a business relationship, between it and Choose Life.[4] And there are none. In fact, there is nothing in the Amended Complaint and its Exhibit A alleging that Four Women is referenced on the Attleboro website or Google ads, the only connection Choose Life has to this case.

Plaintiff also cannot allege a commercial relationship between Plaintiff and any Defendants. Plaintiff is in the for-profit, commercial business of abortion. Abundant Hope is in the non-profit charitable realm of advocacy against abortion and assistance to pregnant women in need. Defendants are not commercial competitors with Plaintiff for the simple reason that they do not provide abortions—and they are not commercial actors. Defendants do not seek to compete in the abortion market: they have sincere moral objections to its very existence. And Choose Life's copywriting and ad placement services are incident to the activities of the charitable pregnancy help center it serves here, not an independent foray into commercial competition with Plaintiff. For this reason, the state law claim against Defendants must be dismissed with prejudice.

IV.    **Plaintiff Fails to Allege that Choose Life Performed Any Unfair or Deceptive Acts Under Ch. 93A § 11.**

---

[4] Plaintiff has not alleged any commercial transactions between the individual defendants (Catherine Roman, Nicole Carges, Darlene Howard) and itself, nor any commercial transactions between these individuals and Choose Life.

Even assuming that Ch. 93A governs the nonexistent relationship between Plaintiff and Choose Life—and it does not—Plaintiff's claim still fails because it has not alleged every required element of its § 11 claim.

"To be successful, a plaintiff bringing a claim under § 11 must establish (1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by G.L. c. 93A, § 2, or the regulations promulgated thereunder; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014). Plaintiff's complaint fails all three elements.

a.  **Choose Life's actions were noncompetitive, fair, and truthful.**

First, Plaintiff's § 11 claim fails because none of Choose Life's actions were unfairly competitive, even in Plaintiff's retelling. Choose Life cannot unfairly compete with Plaintiff, because their businesses are unrelated: Choose Life is an advertising agency, and Plaintiff is an abortion clinic.

Plaintiff's allegations that Choose Life employed deceptive acts fare no better. Plaintiff alleges that Defendants violated the authorizing statute for the Department of Public Health. Dkt. 59 at ¶ 194-200. Plaintiff attempts to explain that Defendants' actions generally violate "M.G.L. ch. 111 § 51, and regulations" that purportedly require "an entity advertised, announced, established, or maintained for the purpose of providing ambulatory medical services, including performing ultrasounds, [to] be licensed with the Department of Public Health." *Id.* at ¶ 195. Plaintiff both misstates the law and draws a fine line here, because it does not—and cannot—aver that these

services were in any way provided negligently, nor credibly aver that the services were provided by unlicensed personnel.[5]

The law Plaintiff cites only applies to "clinics," *see* M.G.L. c. 111, § 51 & § 52, but Plaintiff fails to acknowledge the massive exception to the definition of clinic in Massachusetts law: "'one or more practitioners engaged in a solo or group practice, whether conducted for profit or not for profit." *Id*. And Plaintiff does not credibly allege that the medical services are not being provided by a "solo or group practice" of licensed "practitioners." Obviously, most pregnancy centers— which are small nonprofits—necessarily rely on outside medical practitioners to provide free medical services. *See, e.g.*, "National Commitment of Care and Competence," National Institutes of Family and Life Advocates, https://membership.nifla.org/national-commitment-of-care.asp ("11. All services are provided in accordance with pertinent and applicable laws. Medical services are provided in accordance with medical standards, under the supervision and direction of a licensed physician (or advanced clinical provider as permitted by law)."); "Our Commitment of Care & Competence," Heartbeat International, https://www.heartbeatinternational.org/images/pdf/CCC.pdf ("Medical services are provided in accordance with all applicable laws, and in accordance with pertinent medical standards, under the supervision and direction of a licensed physician."). Plaintiff's claim of illegality must necessarily fail without a credible allegation that the medical services are not being provided by a "solo or group practice" of licensed "practitioners." Plaintiff has not properly alleged that Abundant Hope violated any Massachusetts law, and fails to explain how Choose Life could if Abundant Hope did not either.

---

[5] As noted above, in a lone paragraph, Plaintiff cites a single alleged instance of a physician reviewing an ultrasound, Levis Guzman, M.D., whose Massachusetts license allegedly was or is not current. Dkt. 59 at ¶ 166.

Further, Plaintiff exhausts many paragraphs describing Choose Life's successful strategies for placing ads informing abortion-minded women of the services available at Attleboro. Dkt. 59 at ¶ 62, 66-72. But Plaintiff never identifies a single ad promoting a service which is not available at Attleboro. Instead, it only avers that various ads for information and services Attleboro does provide appear in response to certain Google searches. *Id*. at ¶ 19. Plaintiff's allegations fall short of Rule 9(b)'s particularity requirement because Rule 9(b) mandates "specifics about the time, place, and content of the alleged false representations." *Juárez v. Select Portfolio Servicing, Inc*., 708 F.3d 269, 279–80 (1st Cir.2013). Plaintiff meets none of these mandates. It does not specify when or where these ads were posted, or what they contained, when Defendants supposedly stole its business. In fact, Plaintiff's only declarant has no memory of ever seeing them. Dkt. 59-5 at ¶ 18. Nor does Plaintiff allege that Choose Life ran ads falsely stating abortions were provided at Attleboro, or ads telling women they would receive abortion referrals at Attleboro, or ads promoting general obstetric care at Attleboro. The gravamen of Plaintiff's allegations is that Choose Life's ad placement strategies reached more abortion-minded women than its own. Choose Life is alleged to have accomplished this not through illegal means (Plaintiff's overheated first complaint notwithstanding), but rather commonplace methods of search engine optimization, microtargeting, and geofencing. Dkt. 59 at ¶ 66.

Plaintiff's lamentations against the Attleboro website are equally unavailing. Plaintiff alleges that, at most, Choose Life published language on a website, but only after Abundant Hope had already approved it. Dkt. 59 at ¶ 75. Even so, the Attleboro site does not mislead women into thinking they can obtain an abortion through Abundant Hope. Plaintiff itself acknowledges that the site states that abortions and abortion referrals are not offered. Dkt. 59 at ¶ 118. And the page titled "Services" lists pregnancy testing, ultrasounds, pregnancy consultation, and STD testing.

Dkt. 59-1 at 2-3. "Abortion" is conspicuously absent. The most Plaintiff can muster is that an entirely separate page of "Options" lists "Abortion." But its contention is unserious: the same page also lists "Adoption" and "Parenting," and Plaintiff does not allege that Attleboro offers those. Dkt. 59-1 at 6.

Plaintiff also complains that Choose Life relayed information that potential clients entered on the website to Abundant Hope. *Id.* at ¶ 77. This is no different than Plaintiff's own actions: as Plaintiff described in its first complaint, it uses a company called Klara Technologies to perform similar services. Dkt. 1 at ¶ 94.

Finally, Plaintiff attacks the name used on the website. But even Plaintiff characterizes the name as "anodyne." Dkt. 59 at ¶ 6. Abundant Hope did not appropriate Plaintiff's name, or any of its trade or service marks, in the Attleboro name, nor did it use the word "abortion" or even "clinic." There is no deception here.

Even if Plaintiff's claims against Abundant Hope could survive on these facts (they cannot), Choose Life does not bear liability under § 11 for running a truthful (and apparently successful) ad campaign and website on Abundant Hope's behalf, because "Chapter . . . 93A [does] not explicitly enumerate a private 'aiding and abetting' liability." *In re TelexFree Sec. Litig.*, 358 F. Supp. 3d 98, 103 (D. Mass. 2019).

### b.  Plaintiff has only alleged speculative harm.

Plaintiff complains of a purported regulatory violation by Abundant Hope. *See, e.g.,* Dkt. 59 at ¶ 194-200. Other Defendants with knowledge have denied those allegations, Dkt. 63, and it goes without saying that Choose Life, an out-of-state advertising agency, cannot violate these regulations. Even so, "to meet the injury requirement under Chapter 93A, a plaintiff must have suffered a separate, identifiable harm arising from the regulatory violation that is distinct from the

14

claimed unfair or deceptive conduct itself." *Shaulis v. Nordstrom, Inc*., 865 F.3d 1, 9 (1st Cir. 2017) (cleaned up).

Plaintiff attempts to link the supposed regulatory violation to a "manipulat[ion of] the healthcare marketplace." Dkt. 59 at ¶ 190. This is nothing other than "a purported loss of 'market share'" which is "intangible" and "not compensable under G.L.c. 93A, § 11." *IDT Telecom, Inc. v. Voice Distributors, Inc*., 2008 WL 1800102, at *1 (Mass. Super. Apr. 11, 2008) (cited with approval in *AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc*., 2014 WL 4656608 (D. Mass. Sept. 12, 2014)). This rule makes sense, because by its own terms § 11 only allows recovery for "loss of money or property." "'Money' means money, not time, and 'property' means the kind of property that is purchased or leased." *Arthur D. Little, Inc. v. Dooyang Corp*., 147 F.3d 47, 56 (1st Cir. 1998) (cleaned up).

Here, Plaintiff has no identified (or identifiable) losses of money or property. Plaintiff alleges nothing more than speculative harm to its market size—a crass claim of "lost profits" because of the individual decisions of pregnant women to decide to parent their children after seeing a free ultrasound at Attleboro, rather than paying Plaintiff to abort those children. But Plaintiff fails to provide a single declaration from a woman who did so. Plaintiff offers instead its imagination of a "prospective patient[], perhaps aware" of its facility (Dkt. 59 at ¶ 124), who instead enters Abundant Hope and decides to parent her child or is "*perhaps* . . . prevented from accessing Four Women" (*id.* ¶ 177). This fairytale is no more than "speculation concerning still inchoate harm" which "does not establish the distinct injury that is an essential predicate for recovery under Chapter 93A." *Shaulis v. Nordstrom, Inc*., 865 F.3d 1, 10 (1st Cir. 2017) (cleaned up). Plaintiff's hypothetical market reduction does suffice for an injury under Ch. 93A.

### c.  Choose Life did not proximately cause the alleged (speculative) harm.

15

Plaintiff does not allege any causal connection between Choose Life and its speculative losses, let alone a proximate one. *See Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) ("A plaintiff's failure to establish both factual causation and proximate causation is fatal to her Chapter 93A claim."). It does not point to a single instance when advertisements allegedly placed by Choose Life, or the website allegedly maintained by Choose Life, caused a woman to refuse Plaintiff's services—which it must under Rule 9(b)'s heightened pleading standards. In fact, Plaintiff's own declaration contradicts its theory: Jane Doe 5 confirmed "I ultimately received the reproductive healthcare services I sought from Four Women." Dkt. 59-5 at ¶ 22.

Four Women must prove that Choose Life's actions proximately caused its alleged injuries, a requirement clarified by the Supreme Court and applied consistently in the First Circuit. In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Supreme Court held that under the Lanham Act, a plaintiff must demonstrate that the defendant's deception directly caused the plaintiff's harm, rejecting claims based on attenuated or speculative causation. *Id.* at 133 (plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff"). Here, the Amended Complaint alleges that some women were confused or delayed in seeking Four Women's services, but it fails to connect this harm specifically to the Attleboro website and Google ads. Instead, the complaint suggests a web of factors—including Abundant Hope's physical location and in-person interactions—that could have influenced consumer behavior. Absent allegations isolating Choose Life's content as the direct cause of customer diversion, proximate causation is not established under *Lexmark*, and the claims against Choose Life must be dismissed.

### V.    Defendants' Speech Is Not "Commercial Advertising or Promotion" Under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

16

Plaintiffs bring this action under 15 U.S.C. § 1125(a)(1)(B), alleging that Defendants have engaged in false and misleading advertising about their own services and about reproductive healthcare. However, Plaintiffs have failed to sufficiently plead that the alleged misrepresentations occurred in the context of "commercial advertising or promotion," a *sine qua non* for a Lanham Act claim.

As the First Circuit has adopted from other circuits, in order to meet the bar for actionable "commercial advertising or promotion," "a representation must (a) constitute commercial speech (b) made with the intent of influencing potential customers to purchase the speaker's goods or services (c) by a speaker who is a competitor of the plaintiff in some line of trade or commerce and (d) disseminated to the consuming public in such a way as to constitute 'advertising' or 'promotion.'" *Podiatrist Ass'n v. La Cruz Azul de P.R., Inc*., 332 F.3d 6, 19 (1st Cir. 2003). As discussed in further detail below, Plaintiff falls short on at least the first three of these factors, and its entire claim must be dismissed.

### a. Defendants' Statements Are Not "Commercial Speech"

The complaint must allege not only that statements made by defendants were deceptive or misleading, but that they constituted "commercial speech." Commercial speech is "speech which does 'no more than propose a commercial transaction.'" *Bolger v. Youngs Drug Prods. Corp*., 463 U.S. 60, 66 (1983) (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc*., 425 U.S. 748, 762 (1976) (further citations omitted)).

As noted above, the speech in question here does not "propose" a commercial transaction at all: there is absolutely nothing commercial about the advocacy of and free services provided at Attleboro. *See, e.g., Nat'l Inst. of Fam. & Life Advocs. v. Raoul*, 685 F. Supp. 3d 688, 705 (N.D. Ill. 2023) ("Centers are not compensated by the individuals they speak to, provide pregnancy tests

for, or give baby supplies to. The same is true for sidewalk counselors. There is no renumeration of any kind and there is no economic motivation of any kind. In short, there is no commercial transaction in these interactions.").

While the Plaintiffs are claiming the statements made by Defendants were designed to influence consumer purchasing decisions, promoting free pregnancy-related services in Massachusetts is not "commercial" in nature, as the *Planned Parenthood* Court already recognized. *See* 398 Mass. at 493. Attleboro provides ultrasounds and consultations free of charge. The information provided by Attleboro is provided free of charge. The Complaint states that "Abundant Hope works with Choose Life solely to promote the so-called 'medical' services provided under the 'Attleboro Women's Health Center' name." Dkt. 59 at ¶81. This service is advertising non-commercial, non-paid medical services.

### b. The Speech Is Not Made For the Purpose of Influencing Consumers to Buy the Defendant's Goods or Services

Here, the representations must be made for the purpose of influencing consumers to buy the defendant's goods or services. The intent behind the Defendants' advertisements and statements must be to persuade potential customers to *purchase* their services over those of Four Women. If the primary purpose of the statements is not to influence consumer purchasing decisions, this element is not satisfied. The First Circuit has implicitly recognized that, absent a "commercial advertising or promotion" aspect to the complaint, a violation of the Lanham Act cannot be met. *See Podiatrist Ass'n v. La Cruz Azul de P.R., Inc.*, 332 F.3d 6, 20 (1st Cir. 2003). The purpose of the marketing was not to influence *purchasing* decisions, but decisions of a vastly different, constitutional nature: the decision to exercise the (state and federal) constitutional right to parent one's child or the (state) constitutional right to abort. In an utterly charitable, nonprofit manner, Attleboro advocates for the former choice, and offers assistance to pregnant women in

18

need. (Dkt. 59 at ¶62). Because Attleboro provides its services at no cost, any decision by a woman to eschew abortion and parent her child is not the type of consumer behavior the Lanham Act covers.

### c.  The Parties Are Not in Commercial Competition

Courts have defined commercial competition, for the purposes of an action under 15 U.S.C. 1125(a)(1)(B), as direct competitors selling similar goods or services in the same channel of trade. S*ee, e.g., Eastern Airlines, Inc. v. New York Airlines, Inc*., 559 F. Supp. 1270 (S.D.N.Y. 1983) (airline competitor with another airline.) "The fact that the moving defendants and the plaintiffs hold opposing views does not and cannot make them into commercial competitors." *Gentle Wind Project v. Garvey*, No. 04-103-P-C, 2004 U.S. Dist. LEXIS 17645, at *18 (D. Me. Sep. 2, 2004). As noted above, the Plaintiff is in the for-profit business of abortion, while Abundant Hope is a public charity, advocating against abortion and providing free assistance for pregnant women in need. And even where two organizations do provide the same service, but one is free of charge and one is not, there is no commercial competition, for there is no service that can be bought or sold in competition with the plaintiff's services. *See Gordon and Breach Science Publishers S.A. v. American Institute of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994) (disparaging statements made in scientific journals not advertising or promotion). As the Defendants are not commercial competitors of Four Women, their statements thus do not meet the criterion that defendants must be in commercial competition with the plaintiff. *See San Juan Star Co. v. Casiano Communs.*, 85 F. Supp. 2d 89, 94 (D.P.R. 2000).

### VI.  Plaintiff has Failed to Allege that Defendant's Statements are Material, as Both the Lanham Act and Ch. 93A Require.

Defendants dispute that their speech was false or misleading, let alone commercial. But even so, Plaintiff's Lanham Act claim fails because it has not advanced well-pleaded facts showing

that that the alleged deceptive act was "material, in that it is likely to influence the purchasing decision," *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 33 n.6 (1st Cir. 2000). Ch. 93A claimants must also prove that "the representation, omission, or practice is material." *Godines v. EF Explore Am., Inc.*, 2021 Mass. Super. LEXIS 533, *18 (quoting *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 394-95, 813 N.E.2d 476 (2004)).

Here, Plaintiff alleges that the website and ads might have implied that Abundant Hope was itself a licensed clinic, despite having an "anodyne" name that omits all of the words the Massachusetts legislature has concluded are indicative of a "clinic." *See* Mass. Gen. Laws Ann. Ch. 111, § 52 (stating that an entity using a name which includes the word "clinic", "dispensary", or "institute"—but not "health" or "center"—qualifies as a "clinic"). And Plaintiff has not alleged how or why the mere use of the words "health" and "center" online by Attleboro—a center offering only free services and not abortions—necessarily will "influence [the] purchasing decision" for women seeking to procure abortions at Four Women.

Additionally, Plaintiff makes no allegations showing how the licensing status of Attleboro, even if a woman misunderstood it, would materially influence her decision to obtain an abortion at Four Women. Plaintiff provides no plausible factual allegations suggesting that clients would have made different purchasing decisions had Attleboro explicitly disclosed online that it was not licensed as a medical facility. In fact, Plaintiff did not identify even a single woman who said that she decided against paying for any of Plaintiff's services because she thought that Abundant Hope was licensed. If anything, Defendants' statements had a salutary effect for Plaintiff: had any women been deceived—and Plaintiff provides no more than conclusory speculation that there were—those women would have been *more likely* to learn about Plaintiff's clinic when they visited Abundant Hope's site just next door, *because of* Abundant Hope's web presence.

"Materiality focuses on whether the false or misleading statement is likely to make a difference to purchasers." *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 312 (1st Cir. 2002). In showing materiality, "[t]he plaintiff must show how consumers have actually reacted to the challenged advertisement, rather than merely demonstrating how they could have reacted." *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 487 (1st Cir. 2022). Plaintiff has failed to allege a link between any purported false or deceptive statements online and an actual woman's reaction of not paying for an abortion. Plaintiff has not sufficiently alleged that the website and Google ads are "material" to purchasing decisions, and thus its claims must be dismissed.

## VII.    Four Women's Claims are Barred by the First Amendment.

Even assuming, *arguendo*, that M.G.L. c. 93A and the Lanham Act apply, Four Women's claims target expression squarely protected by the First Amendment, which "can serve as a defense in state tort suits" and other private actions. *Snyder v. Phelps*, 562 U.S. 443, 451 (2011); *see also Shelley v. Kraemer*, 334 U.S. 1, 18 (1948) (judicial actions in private suits must abide the Constitution). Indeed, Four Women seeks to enjoin—and thus censor—Defendants' pro-life viewpoint when speaking about abortion, a subject of utmost public concern with protected competing views on both sides. And it seeks to suppress allegedly false website and advertising speech based on content, rather than on any legally cognizable harm, again in violation of the First Amendment. Accordingly, most of Four Women's claims (and all of them against Choose Life) must be dismissed for this separate reason alone.

### a.    Four Women's claims seek to hijack protected speech on a matter of public concern.

The Supreme Court has provided that "speech on public issues occupies the highest rung on the hierarchy of First Amendment values, and is entitled to special protection." *Snyder*, 562 U.S. at 451-52. Abortion is plainly one of those issues, having been the subject "of a rancorous

national controversy" for more than 50 years now. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 292 (2022). Yet, Four Women's lawsuit effectively asks this Court to silence one side of that controversy as per se "unfair" and "deceptive," while Four Women remains free to promote its own (highly disputed) views on the same topic. *See, e.g., Four Women Health Services*, www.fourwomen.com/about-us (deeming its abortion services—including surgical abortions that may require fetal dismemberment—"gentle," "safe," and legitimate "health care"). It is difficult to imagine a more brazen attempt at viewpoint discrimination.

To be sure, the First Amendment squarely protects the pro-life speech of pregnancy resource centers like Abundant Hope. *See Nat'l Inst. of Family and Life Advocs. v. Becerra*, 585 U.S. 755 (2018). That's because "regulating the content of professionals' speech poses the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information." *Id*. at 771 (cleaned up). Enjoining pregnancy centers' speech "can fail to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." *Id*. (cleaned up). But that's exactly what Four Women seeks to achieve in this lawsuit, while at the same time continuing to engage in its own biased (and actually deceptive) characterization of the abortion "care" it provides "four/for" women. "Such [u]nderinclusiveness raises serious doubts about whether [Four Women, and its requested judicial relief] is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *NIFLA*, 585 U.S. at 774 (alteration in original, internal quotes omitted).

Also notably, for reasons already discussed, Defendants are not engaged in commercial speech. But even if they were, restricting commercial speech based on content or speaker still requires heightened scrutiny, because even in "[t]he commercial marketplace . . . the general rule

is that the speaker and the audience, not the government, assess the value of the information pro-vided." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566, 579 (2011). Four Women's claims easily trigger—and fail—this scrutiny, let alone the strict scrutiny required for content-based restrictions on non-commercial speech.

For starters, Four Women alleges actionable deception in Abundant Hope's practice of not prominently disclosing up front that it does not perform abortions. But courts have already rejected similar attempts to mandate precisely such disclosures: "A requirement that pregnancy centers address abortion . . . at the beginning of their contact with potential clients alters the centers' po-litical speech by mandating the manner in which the discussion of these issues begins." *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 249 (2d Cir. 2014) (citing *Riley v. Nat'l Fed. of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988)); *see also Greater Balt. Ctr. for Pregnancy Concerns v. Mayor & City Council of Balt.*, 879 F.3d 101, 112 (4th Cir. 2018) (similar). Instead, Abundant Hope "must be free to formulate [its] own address" on such a "controversial political topic[]." *Evergreen*, 740 F.3d at 250.

Four Women also complains that the Attleboro Website promotes "misinformation" by stating that abortion is dangerous (including as a solution for ectopic pregnancies), and that "stud-ies show that abortion increases a woman's risk of breast cancer" (when "[r]esearchers" allegedly have found flaws in those studies). Dkt. 59 at ¶¶106-110. But it "is difficult, if not impossible" for courts to "[d]raw a line between what is true and what is settled by scientific consensus," especially where "scientific conclusions" about controversial topics "have been hotly contested." *Hoeg v. Newsom*, 652 F. Supp. 3d 1172, 1188, 1190 (E.D. Cal. 2023) (preliminarily enjoining bar on phy-sicians from disseminating "misinformation" about COVID-19); *accord ONY, Inc. v. Cornerstone*

*Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013) ("[T]o the extent a speaker . . . draws conclusions from non-fraudulent data, based on accurate descriptions of the data and methodology underlying those conclusions, on subjects about which there is legitimate ongoing scientific disagreement, those statements are not grounds for a claim of false advertising"—because "courts are ill-equipped to . . . referee such controversies").

So too here. The link between abortion and breast cancer will remain vigorously debated. *See, e.g.*, Angela Lanfranchi, M.D., FACS, "Abortion And Breast Cancer: The Link That Won't Go Away," Secretariat For Pro-Life Activities, United States Conference of Catholic Bishops (2007).[6] And it is widely understood that the chemical abortion pill regime is not the solution for an ectopic pregnancy, which instead requires urgent medical intervention not available at abortion clinics. *See, e.g.*, FDA, Questions and Answers on Mifepristone…, Question 3 (stating women with ectopic pregnancies should not take the abortion pill regime).[7] The First Amendment restricts courts from saying otherwise.

The same is true of Four Women's claims based on Attleboro website statements that an ultrasound is "necessary" before an abortion and that it's "critical" to determine "pregnancy" viability beforehand. The website nowhere indicates these services are required by Massachusetts law, as Four Women indicates—and Four Woman's own site states that before an abortion, "you will have an ultrasound to verify that the pregnancy is in the uterus and to determine gestational dating."[8]

---

[6] https://www.usccb.org/about/pro-life-activities/respect-life-program/upload/Abortion-and-Breast-Cancer.pdf.

[7] https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/questions-and-answers-mifepristone-medical-termination-pregnancy-through-ten-weeks-gestation.

[8] https://www.fourwomen.com/surgical-abortion/.

Four Women again runs afoul of the First Amendment in challenging alleged "obstruct[ion]" by "[i]ndividuals acting on behalf of Abundant Hope," who allegedly "pac[e] with placards" at the parties' shared driveway entrance, and then approach women "to give them literature and other information." Dkt. 59 at ¶147. Of course, this allegation does not implicate any of Choose Life's actions. More to it, speech protection is at its zenith for leafleting and advocating on issues of public concern in traditional public fora—including public driveways. *See McCullen v. Coakley*, 573 U.S. 464, 476, 487 (2014) (First Amendment violation where pro-life individuals were "push[ed] . . . well back from the clinics'. . . driveways"). While actual traffic obstruction is not protected, merely "pacing" across a public driveway (without any allegations the pro-life individuals actually blocked, or refused to safely move out of the way for, passing vehicles) is not cognizable obstruction. The First Circuit has already recognized the constitutional rights of panhandlers to stand and solicit money at busy street medians. *See Cutting v. City of Portland, Maine*, 802 F.3d 79 (1st Cir. 2015). There is no indication that alleged pacing across an empty public driveway to engage in pro-life advocacy is any more obstructive or dangerous—and thus any less protected—in this Circuit.

As for the Google ads (including with use of search engine optimization ("SEO") for women seeking abortion), Four Women likewise complains only about true—and thus protected—speech. Four Women admits the Attleboro ad provides links to abortion-related "Info," consistent with Attleboro's mission to inform and talk with women about abortion and other options. Dkt. 59 at ¶¶121-22. Four Women alleges the ads are designed and published without a no-abortion disclaimer. But Google itself makes clear that for advertisements promoting pro-life pregnancy centers, "Google will automatically generate . . . the following in-ad disclosure[] for your abortion

product or service ads: . . . 'Does not provide abortions.'"[9] Additionally, the fact Defendants' ads are targeted at women considering abortion (and that some women allegedly scheduled abortion appointments with Attleboro as a result) hardly vitiates their constitutional protection. *See, e.g., Students Engaged in Advancing Texas v. Paxton*, 2025 WL 455463, at *11, *14 (W.D. Tex Feb. 7, 2025) (enjoining state restrictions on, inter alia, targeted educational ads to minors about sex trafficking, substance abuse and other topics, which involve "editorial choices about how to display speech") (cleaned up); *see also infra* (discussing absence of legally cognizable harm). Although Four Women complains about positive Attleboro client testimonials and women not showing up for their Four Women appointments, the content- and viewpoint-based focus of its claims "seeks to avoid [ ] the type of harm that is not only legally non-cognizable but legally protected: that arising out of true speech on a matter of public concern." *Animal Legal Defense Fund v. Kelly*, 9 F.4th 1219, 1235 (10th Cir. 2021); *see also Sorrell*, 564 U.S. at 576 ("[T]he fear that speech might persuade [generally] provides no lawful basis for quieting it."). Four Women's claims based on these allegations should be dismissed outright.

**b. Four Women seeks to restrict Defendants' otherwise allegedly "false" speech based on content, not on legally cognizable harm.**

Four Women's claims arising out of other alleged falsities are impermissibly based on the alleged falsity alone, rather than on any legally cognizable harm. Accordingly, these claims also run afoul of the First Amendment.

Restricting speech based on its alleged falsity is content-based and thus subject to heightened scrutiny. *United States v. Alvarez*, 567 U.S. 709, 717-18 (2012) (plurality); *see also id.* at

---

[9] Google, About abortion certification and disclosures, https://support.google.com/adspolicy/answer/9274988?hl=en#:~:text=Depending%20on%20how%20you're,these%20ads%20transparently%20provide%20basic (last visited March 13, 2025).

730-32 (Breyer, J., concurring). Indeed, "falsity alone" does not "bring the speech outside the First Amendment." *Id.* at 719 (plurality). Instead, false speech may be restricted only insofar as it is associated with a "legally cognizable harm," such as "effect[ing] a fraud or secur[ing] moneys." *Id.* at 720, 23 (plurality). And in consumer-fraud cases, the Court has required "exacting proof requirements"—including a showing that defendants *knew* the representations were false and acted "with the *intent to mislead* the listener, *and succeeded* in doing so"—in order "to provide sufficient breathing room for protected speech." *Illinois ex. rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 620-21 (2003) (emphasis added); *see Alvarez*, 567 U.S. at 719 (plurality) (citing *Madigan*). Four Women makes no attempt to meet these requirements, especially as to Choose Life.

Four Women alleges that Attleboro's very name, and its advertisements stating it provides "medical" services, are inherently false because Attleboro allegedly has failed to comply with Massachusetts's licensure requirements for "clinics," and thus has falsely implied it "provides licensed, lawful medical services." Dkt. 59 at ¶ 87-95. But Four Women does not dispute that Attleboro has *actually* provided ultrasounds and pregnancy tests. And Four Women admits that Jane Doe 1 received an ultrasound from "a self-identified ultrasound technician and [a] self-identified Registered Nurse"—i.e., licensed, lawful *providers*. Dkt. 59 at ¶160. To the extent Attleboro's references to "health" and "medical" services implies compliance with state law, Attleboro *was* in compliance for the reasons discussed above; and regardless, Four Women cannot show its claims arising from this speech are based on associated legally cognizable harms, rather than the alleged falsity itself.

Indeed, with respect to Choose Life in particular (a Missouri company that works with pro-life pregnancy nationwide), the allegations do not indicate it *knowingly or recklessly* promoted Attleboro's health services, regardless of any alleged failure by Attleboro to comply with state

27

regulatory law. Nor does Four Women allege that Choose Life's ads and website communications were "made to effect a fraud or secure moneys or other valuable considerations," or otherwise "to gain a material advantage." *Alvarez*, 567 U.S. at 723 (plurality). Nor has it pled "specific harm to identifiable victims," or that "the prohibited lies [were] particularly likely to produce harm"— where, as here, Attleboro actually provided the services it promoted via credentialed and licensed healthcare officials, without any allegations of physical injury or "specific harm" to women from allegedly delayed abortions. *Id.* at 734 (Breyer, J., concurring). Notably, Four Women has not brought a tortious-interference-with-business claim, and no individual has alleged "intentional in-fliction of emotional distress," which "concern[s] falsehoods that tend to cause [tangible] harm to a specific victim." *Id.*

The "political context" of Attleboro and Choose Life's speech is also salient. *Id.* at 736; *see Evergreen*, 740 F.3d at 250 (recognizing the "political nature" of pregnancy centers' speech). Although "lies are more likely to cause harm" "in political contexts," "the risk of censorious se-lectivity by prosecutors" (and ideological opponents) "is also high." *Alvarez*, 567 U.S. at 736. "*[M]ens rea* requirements" help prevent such censorship (*id.*) yet Four Women has failed to allege them. Any belated attempt to do so would be entirely speculative on the currently pled facts.[10]

While Four Women alleges it "reasonably believes" Defendants' "conduct and misrepre-sentations"—i.e., speech—"have prevented [ ] access to Four Women altogether" (Dkt. 59 at

---

[10] The First Amendment also applies to Abundant Hope's alleged "vest"-wearers who allegedly appear as Four Women volunteers on the public ways outside the respective facilities. While *mens rea* allegedly exists in these instances, the allegation that women are confused and visit Attleboro as a result is not the kind of "material gain" or "specific harm" contemplated by the Supreme Court in *Alvarez*. This is all the more true given the political context of the speech—raising the specter of viewpoint censorship—and the reality that "a false statement may be deemed to make a valuable contribution to public debate." *Alvarez*, 567 U.S. at 733 (Breyer, J., concurring) (internal quotes omitted).

¶178), it bears repeating that speech may not be prohibited because it "might persuade." *Sorrell*, 564 U.S. at 576. But Four Women's claims—by focusing on the *content* and *viewpoint* of Defendants' speech—raise precisely that danger.

Put simply, Four Women targets the content of Defendants' speech itself, without passing the strictures of heightened scrutiny. Four Women's claims should be dismissed for this reason alone.

## **CONCLUSION**

For the reasons set forth herein, the Court should dismiss the complaint.

## **REQUEST FOR ORAL ARGUMENT**

Plaintiffs request that the Court grant oral argument on this motion because Plaintiffs believe oral argument will aid the Court in determining the issues presented herein.

Respectfully submitted, this 14th day of March, 2025.

/s/ Peter Breen
Peter Breen†
Martin Cannon†
Michael McHale†
Nathan Loyd†
Thomas More Society
309 W. Washington Street
Suite 1250
Chicago, IL 60606
Telephone: (312) 782-1680
Fax: (336) 900-6533
pbreen@thomasmoresociety.org
mcannon@thomasmoresociety.org
mmchale@thomasmoresociety.org
nloyd@thomasmoresociety.org
† *pro hac vice* forthcoming

/s/ Ryan P. McLane
Ryan P. McLane
(BBO# 697464)
McLane & McLane, LLC
269 South Westfield Street

Feeding Hills, MA 01030
(413) 789-7771
ryan@mclanelaw.com

*Attorneys for Defendant Choose Life Marketing LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2025, I served a copy of the foregoing document upon

the following counsel of record via CM/ECF:

Matthew D. Patton (BBO No. 703798)
Law Office of Nicholas F. Ortiz, P.C.
One Boston Place, Suite 2600
Boston, MA 02108
(617) 338-9400
mdp@mass-legal.com

Martha Coakley (BBO # 87300)
Emily J. Nash (BBO #696460)
Caroline Holliday (BBO #707301)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
mcoakley@foleyhoag.com
enash@foleyhoag.com

Brenna Rosen (pro hac vice)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, New York 10019
brosen@foleyhoag.com

*Attorneys for Plaintiff*

Thomas M. Harvey
Law Office of Thomas M. Harvey
22 Mill Street, Suite 408
Arlington, MA 02476
Tel: 617-710-3616; Fax 781-643-1126
tharveyesq@aol.com

*Attorney for Defendants Abundant Hope Pregnancy Resource Center, d/b/a Attleboro Women's Health Center, Catherine Roman, Nicole Carges, and Darlene Howard*

Dated: <u>March 14, 2025</u>                     <u>/s/ Ryan P. McLane</u>
                                              Ryan P. McLane
                                              (BBO# 697464)

31

McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
(413) 789-7771
ryan@mclanelaw.com