## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FOUR WOMEN HEALTH SERVICES, LLC,

Plaintiff,

v.

ABUNDANT HOPE PREGNANCY RESOURCE
CENTER INC., d/b/a ATTLEBORO WOMEN'S
HEALTH CENTER,
CATHERINE ROMAN, NICOLE CARGES,
DARLENE HOWARD, and CHOOSE LIFE
MARKETING, LLC,

Defendants.

Civil Action No: 1:24-cv-12283-JEK

*Leave to file granted on April 18, 2025*

## PLAINTIFF'S OPPOSITION TO DEFENDANT
## <u>CHOOSE LIFE MARKETING'S MOTION TO DISMISS</u>

Plaintiff Four Women Health Services, LLC ("Four Women") submits this opposition to Defendant Choose Life Marketing, LLC's ("CLM") Motion to Dismiss, ECF 64. Four Women has plausibly alleged that CLM, along with Defendants Abundant Hope Pregnancy Resource Center Inc. d/b/a Attleboro Women's Health Center ("Abundant Hope"), Catherine Roman, Nicole Carges, and Darlene Howard (collectively, "Defendants"), engaged in unfair and deceptive business practices in violation of the Massachusetts Consumer Protection Act, M.G.L. ch. 93A ("Chapter 93A"), and false advertising in violation of Section 43(a) of the Lanham Act., 15 U.S.C. § 1125(a). CLM's motion to dismiss should therefore be denied.

CLM is a for-profit marketing agency hired by Abundant Hope to create and disseminate advertising on Abundant Hope's behalf. Specifically, CLM was paid to advertise Abundant Hope's so-called "medical arm," an unlicensed, fake clinic called "Attleboro Women's Health Center." In an attempt to interfere with women seeking reproductive healthcare services at Four Women, CLM wrote, published, and managed false and deceptive statements online promoting the purported medical services provided by "Attleboro Women's Health Center," targeting its advertising toward potential Four Women patients.

CLM now describes this speech as "noncommercial advocacy," but the facts belie this characterization. While Defendants may share strongly held ideological beliefs and an anti-abortion agenda, these views are not the subject of the advertising at issue in this lawsuit, nor even reflected therein. Instead, CLM advertises "Attleboro Women's Health Center" as an unbiased, neutral clinic that provides a range of specific "medical services" to "women considering abortion." CLM's speech is classic promotional advertising designed to attract clients seeking reproductive healthcare services in a commercial marketplace in which Four Women offers those same services. It thus falls squarely within the reach of Chapter 93A and the Lanham Act.

CLM argues that it cannot be liable for this conduct because its client, Abundant Hope, is a nonprofit. CLM cannot evade liability on this basis under either claim. First, CLM cannot claim Abundant Hope's status as its own. CLM is a for-profit entity, receiving payment for its advertising work, and it was paid by Abundant Hope for creating the advertisements at issue here. Regardless, contrary to CLM's suggestion, neither Chapter 93A nor the Lanham Act provides a categorical exemption for nonprofits, and for good reason—the mere fact that an organization does not charge fees for its services does not give it free rein to engage in deceptive solicitations.

CLM's remaining arguments depend on a factual narrative that is divorced from the allegations in the Amended Complaint. For example, CLM repeatedly characterizes Abundant Hope as a provider of counseling and a "public charity, advocating against abortion," but these statements find no support in the pleadings—or the actual online advertising at issue. Rather, as alleged, Abundant Hope hired and paid CLM to promote its so-called "medical" services and facilitate women making appointments for those services. CLM's answers to many of the questions it asks this Court to resolve—for example, whether CLM engages in commercial speech; what CLM's motivations are; and what the relevant market is—rely on CLM's distorted narrative. The Court should not indulge further deception from CLM, and more importantly, cannot resolve such fact-intensive inquiries at this stage.

## FACTS

Four Women is a licensed healthcare clinic in Attleboro, Massachusetts that provides reproductive healthcare, including abortion care, to its patients. ECF 59 ¶¶ 33-37. It is one of only three clinics that provide abortion care in southeastern Massachusetts and the only one offering surgical abortion services. *Id*. ¶ 36. Four Women also offers birth control information and prescriptions, ultrasounds, and pregnancy diagnoses, among other services. *Id*. ¶ 37.

Abundant Hope, a so-called crisis pregnancy center ("CPC"), is a nonprofit entity whose

mission is to reach abortion-minded women and prevent them from obtaining the abortion care they seek. *Id.* ¶¶ 10, 23, 82. In 2018, Abundant Hope moved its physical location to across the parking lot from Four Women, operating under the name "Attleboro Women's Health Center" ("AWHC"). *Id.* ¶¶ 6, 42. Abundant Hope calls AWHC its "medical arm," through which it purports to provide medical services, such as diagnosing pregnancies and performing ultrasounds. *Id.* ¶¶ 43, 50; *see also* ECF 63 ¶¶ 43, 50. But in fact, AWHC is not a separate corporate entity from Abundant Hope, nor is it a licensed medical provider. ECF 59 ¶ 7; ECF 63 ¶ 7.

Abundant Hope created a separate website for AWHC, awhc.net (the "AWHC Website"). ECF 59 ¶¶ 44-45. It hired CLM to develop and manage the content of this website as well as develop and disseminate advertisements elsewhere on the internet to divert abortion-minded women to AWHC. *Id.* ¶¶ 10, 60-61. CLM is a for-profit marketing agency that shares Abundant Hope's goal to divert abortion-minded women from obtaining services at abortion care providers. *Id.* ¶¶ 10, 61. CLM employs various strategies to ensure that CPCs like Abundant Hope (under the AWHC name) appear "in the first few search engine results when women in [their] area are looking for information on abortion or unplanned pregnancy," with the goal of using "conversion-optimized landing pages to successfully guide women to click on [their] ad and make an appointment." *Id.* ¶ 67. Here, CLM drafted the content of the AWHC Website, which was approved by Abundant Hope, and purchased and placed Google advertisements for AWHC. *Id.* ¶¶ 73-75. Abundant Hope pays substantial sums to CLM for its services. *Id.* ¶¶ 63-65.

Through the AWHC Website and other advertising, Defendants developed a scheme of deceptive advertising to steer women away from Four Women and the reproductive healthcare they desire. *Id.* ¶¶ 5, 60-81. To effectuate this scheme, CLM drafted and disseminated internet content that  contains statements that are false, misleading, and otherwise deceptive.

A.    <u>Advertising For "Medical" Services</u>

The AWHC Website and other advertising promote a variety of medical services that Abundant Hope has never been able to lawfully provide, including ultrasounds, pregnancy diagnoses, and "medical care" more broadly.  *Id.* ¶ 94.  These services are ambulatory medical services.  *Id.* ¶ 52.  Massachusetts law requires clinics providing ambulatory medical services to be licensed by the Department of Public Health ("DPH").  *Id.* ¶ 58.  Neither Abundant Hope nor the fictional entity AWHC is exempt from these legal requirements, and neither has ever been licensed by DPH to provide medical care.  *Id.* ¶ 59.  Abundant Hope does not have a licensed doctor or Advanced Practice Registered Nurse that works on premises.  *Id.* ¶ 55; ECF 63 ¶ 55.

Yet, Defendants advertise, including through paid Google advertising, that AWHC provides these medical services, including pregnancy testing, ultrasounds, and "viability" determinations through a team of "physicians, nurses, and ultrasonographers."  *Id.* ¶¶ 87-95; ECF 59-1.  The AWHC website directs women to make appointments to "confirm that your pregnancy is viable (growing inside the uterus with a detectable heartbeat) with an ultrasound"—that is, receive a pregnancy diagnosis.  ECF 59 ¶ 101.  On the "Three Things Needed Before Abortion" webpage, Abundant Hope recommends talking to a "qualified medical team"—referring to itself—and provides a link to schedule an appointment.  ECF 59-1.  Abundant Hope proclaims that it provided hundreds of "medical" tests and appointments in 2023.  ECF 59 ¶ 90.  It touts these medical "services" in connection with fundraising efforts and specifically references its successful diversion of potential Four Women patients to influence potential donors.  *Id.* ¶ 95.

B.    <u>Advertising for Abortion Care</u>

Defendants mislead women through AWHC's website and targeted Google advertisements to believe that Abundant Hope provides abortion care.  *Id.* ¶ 113.  For example, the AWHC Website contains a page titled "Abortion," which lists questions women may have "about the

abortion pill and other abortion procedures," and directs women who are "thinking about abortion" to make an appointment with a prominent button, stating "MAKE AN APPOINTMENT." *Id.* ¶ 115. On the same page, a banner containing an alleged testimonial appears as well, stating that "Attleboro Women's Health Center" is a "[g]reat place for women considering abortion." *Id.* ¶116.

The CLM-created content directs women to make appointments with AWHC in connection with an intended abortion procedure, stating that such an appointment is "critical," leading women to make appointments under the misperception that the appointment is either for the abortion itself or is a necessary prerequisite to an abortion. *Id.* ¶¶ 101, 115, 117. Neither is true.

CLM's advertisements on Google and other websites for AWHC perpetuate this deception. A search for "abortion near me attleboro ma," for example, yields the AWHC Website as among the first results. *Id.* ¶ 121. That Google hit states, without qualifier: "Attleboro Women's Health – Schedule an Appointment Today" and contains links to "Abortion Cost," "Abortion Pill Info," "Abortion Clinic Info," and "Abortion Info." *Id.* ¶¶ 121-22.

Moreover, by operating under the fictional name "Attleboro Women's Health Center"— and its corresponding website—Defendants mask their intentions to prevent consumers from anticipating their anti-abortion agenda. The AWHC Website makes no mention of its anti-abortion convictions and does not reference Abundant Hope. Abundant Hope attests that AWHC is its "medical arm," yet a visitor to the AWHC Website would be unaware of such affiliation. Rather, the AWHC Website references "talk[ing] to someone" about "options," using neutral language to prevent women from realizing AWHC is a CPC with an anti-abortion agenda. ECF 59-1.

C.    Diversion of Four Women Patients

It is this false and deceptive advertising that led Jane Doe 1 to believe AWHC was the Attleboro clinic that provided abortions—*i.e.,* that it was Four Women. *Id.* ¶ 153. Jane Doe 1 was seeking a medication abortion for which she intended to pay. *Id.* ¶¶ 152, 155. It was only after

proceeding with the appointment that Jane Doe 1 was made aware that she could not receive abortion care at AWHC.  *See id.* ¶¶ 154, 159, 163, 168.

Defendants' deceptive and targeted advertising also misled Jane Does 5 and 9.  Jane Doe 5 submitted an online inquiry form in pursuit of abortion care, and this form resulted in an email from CLM to Abundant Hope with her name and contact information as a "new lead" for AWHC. *Id.* ¶ 135.  Jane Doe 5 has no recollection of visiting the AWHC Website and was unaware that Abundant Hope would receive her information.  *Id.* ¶¶ 140, 153.  Jane Doe 5 believed she provided her information only to abortion providers.  *Id.* ¶¶ 134-37.  Jane Doe 9 found "Attleboro Women's Health Center" through an Internet search for abortion care.  *Id.* ¶ 176.  She was only told that she could not receive abortion care when she was already sitting for an ultrasound.  *Id.*

These examples of the impact of Defendants' deception are just the tip of the iceberg.  In just over a year there were at least 591 women whom Defendants contacted who sought services at Four Women; this includes Jane Does 5 and 8 who, until this lawsuit, never knew they submitted information to Defendants.  *Id.* ¶¶ 128, 140.  Regularly, women who have scheduled appointments with Four Women do not show up for their appointments.  *Id.* ¶ 178.

## ARGUMENT

### I.    Applicable Legal Standards

#### A.    Motion to Dismiss

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," with "enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 11-12 (1st Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The allegations in the complaint must "be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even

if doubtful in fact)." *Twombly*, 550 U.S. at 555. In assessing whether a complaint meets this standard, the court "must accept as true all well-pleaded facts indulging all reasonable inferences in [the plaintiff's] favor." *Fantini v. Salem State Coll.*, 557 F.3d 22, 26 (1st Cir. 2009) (quotation marks omitted). Dismissal is only appropriate when the complaint fails to allege a plausible entitlement to relief. *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007).

At the motion to dismiss phase, the record is limited to the "four corners of the plaintiff's complaint." *Young v. Lepone*, 305 F.3d 1, 10-11 (1st Cir. 2002). CLM makes numerous factual assertions that cannot be found within the Amended Complaint—and indeed contradict the facts as pled. As such, they are outside the scope of this motion.

B.    Heightened Pleading

Contrary to CLM's assertions, Four Women's claims are not subject to Rule 9(b)'s heightened pleading standard. Rule 9(b) is a "limited exception to the notice pleading requirement," *Timmins Software Corp. v. EMC Corp.*, 502 F. Supp. 3d 595, 604 (D. Mass. 2020), and is not "intended to apply, willy-nilly, to every statutory tort that includes a false statement." *John P. Villano, Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997).

Courts in this Circuit have repeatedly declined to apply a heightened pleading standard to Lanham Act claims. *See, e.g.*, *Ferring Pharms., Inc. v. Braintree Labs., Inc.*, 38 F. Supp. 3d 169, 177 (D. Mass. 2014); *McGrath & Co., LLC v. PCM Consulting, Inc.*, U.S. Dist. LEXIS 18584, at *19 n.1 (D. Mass. Feb. 15, 2012). There are "persuasive reasons why Lanham Act claims should not be subject to any pleading with particularity rule." *MMM Healthcare, Inc. v. MCS Health Mgmt. Options*, 818 F. Supp. 2d 439, 447 (D.P.R. 2011) (citing *Villano*, 176 F.R.D. at 131). Namely, a fraud claim requires specific intent to harm and defraud of money or property, whereas Lanham Act claims have no willfulness requirement, let alone fraudulent intent requirement. *Villano*, 176 F.R.D. at 131. Rule 9(b) is thus inappropriate here.

Likewise, Rule 9(b) does not apply to Four Women's Chapter 93A claim. Rule (b) applies only where "the core allegations effectively charge fraud." *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21-22 (1st Cir. 2017). Where a Chapter 93A claim is predicated "purely" on allegations beyond intentional and false statements, Rule 9(b) applies. *See Timmins*, 502 F. Supp. 3d at 605. Here, however, Four Women's allegations are broader, including publishing misleading advertising, manipulating advertising to misdirect women seeking services from Four Women to AWHC, and developing access points on other websites resulting in "new leads" to Abundant Hope, without women contacting Abundant Hope directly.

In any event, the Court need not decide whether Rule 9(b) applies because Four Women's complaint satisfies the Rule 9(b) standard. *See Pegasystems, Inc. v. Appian Corp.*, 424 F. Supp. 3d 214, 221 (D. Mass. 2019) (declining to decide whether Rule 9(b) applied where complaint satisfied standard). Rule 9(b) requires a plaintiff to plead "with particularity" the "time, place, and content of the alleged misrepresentation with specificity." *U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 731 (1st Cir. 2007). Four Women has sufficiently alleged the "who, what, where, and when" of the false and misleading statements here: Defendants wrote and published false and misleading statements regarding the services Abundant Hope provides on the AWHC Website and other advertisements on a continual basis up to at least mid-September 2024. *See, e.g., Pegasystems*, 424 F. Supp. 3d at 221 (finding Rule 9(b) satisfied where plaintiff pled "'who' (Appian and BPM.com), 'what' (survey results and associated statements), 'where' (in the Report and the web pages promoting it), and 'when' (continuously) of the allegedly fraudulent statements"); *MMM Healthcare*, 818 F. Supp. 2d at 447-48 (finding standard met by pleadings). CLM's attempts to use Rule 9(b) to bar Four Women's claims are thus unavailing.

## II.    CLM Is Subject to Liability Under Chapter 93A.

Four Women's Chapter 93A claim asserts that CLM engaged in unfair and deceptive

business practices by deploying a marketing strategy on Abundant Hope's behalf predicated on false and misleading statements and misdirection of patients away from the medical care they seek. CLM, a for-profit marketing company, wrote and disseminated online content that advertises that Abundant Hope provides medical care it cannot lawfully provide and directs women seeking abortion services to make appointments with Abundant Hope, where they cannot receive the services they seek. CLM's marketing strategy also provides Abundant Hope with "new leads"—contact information for women seeking abortion services—sourced from websites other than the AWHC Website and without patients' knowledge of connection to Abundant Hope.

Against this backdrop, CLM seeks to evade liability under Chapter 93A not by arguing that CLM did not engage in unfair or deceptive acts, but rather on the argument that it did not engage in trade or commerce under Chapter 93A. CLM raises two theories: first, that because Abundant Hope is a nonprofit organization, and its advertising serves its mission, neither Abundant Hope nor CLM can be liable under Chapter 93A under the Supreme Judicial Court's 1986 decision in *Planned Parenthood Federation of America, Inc. v. Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480 (1986); and second, that there is no commercial relationship between CLM and Four Women. Both arguments misapply Massachusetts precedent. CLM cannot evade liability for Four Women's well-pled Chapter 93A claim on either basis.

A.  *Planned Parenthood* Does Not Foreclose Liability for CPCs, Let Alone Their Marketing Agencies.

CLM relies on *Planned Parenthood* to argue that Chapter 93A per se does not apply to actions by "nonprofits advancing their mission." ECF 68 at 6-7. As an initial matter, CLM's argument about Abundant Hope's nonprofit status does not affect Plaintiff's claims against CLM, a for-profit marketing company. CLM cannot deny it "exchange[s] [services] for some consideration," ECF 68 at 8 (quoting *Planned Parenthood*, 398 Mass. at 493). *See* ECF 59 ¶¶ 64-

65.  To the extent Abundant Hope's nonprofit status exempts it from Chapter 93A liability—which it does not—CLM cites no case law extending this exemption to a for-profit marketing agency, and there is no basis to do so here.

1.  *Planned Parenthood* Does Not Establish a Per Se Exemption from Chapter 93A Liability for Nonprofits.

"An entity's 'status as a 'charitable' corporation is not, in and of itself, dispositive of the issue whether c. 93A applies.'"  *Linkage Corp. v. Trs. of Bos. Univ.*, 425 Mass. 1, 23 (1997) (quoting *Planned Parenthood*, 398 Mass. at 492-93).  Rather, "[n]onprofit corporations have sued and been sued under [Chapter] 93A, and have been held liable under the statute."  *Id.* at 23 n.34 (collecting cases); *see, e.g.*, *27th Lancers Drum & Bugle Corps., Inc. v. 27th Lancers Found., Inc.*, 100 Mass. App. Ct. 1116, at *3 (2021) (rejecting argument "that the actions of a charitable corporation can never constitute trade or commerce for c. 93A purposes"); *Graham v. Just A Start Corp.*, 2011 Mass. Super. LEXIS 139, at *28 (Aug. 4, 2011) (explaining defendant's nonprofit status "alone is not dispositive of the trade or commerce inquiry").  Indeed, Abundant Hope itself previously recognized it is governed by Chapter 93A by threatening Four Women with a Chapter 93A action in 2022.  *See* ECF 59 ¶ 179; ECF 59-6.

Recently, in  *Doe v. Clearway Clinic*, a Massachusetts Superior Court rejected the argument CLM espouses here.  No. 23-cv-708 (Super. Ct. Jan. 24, 2024), Dkt. 10.[1]  In *Clearway*, the plaintiff alleged that a CPC's deceptive advertising and website statements lured women into its facility under the guise of diagnosing pregnancies through ultrasounds.  *Id.*, Dkt. 1 ¶¶ 2, 3, 8-9 (attached hereto as **Exhibit 2**).  The CPC moved for dismissal, arguing that under *Planned*

---

[1] As the rulings in *Clearway* have not been published on legal databases like Lexis or Westlaw, Plaintiff attaches this Order hereto as **Exhibit 1** for the convenience of the parties and the Court.

*Parenthood*, "[a]ctions taken by a non-profit entity in furtherance of its charitable mission fall outside of Chapter 93A." *Id.*, Dkt. 7.1 at 5 (attached hereto as **Exhibit 3**). The *Clearway* court summarily rejected this argument, explaining that the services alleged "could reasonably be found to have been provided in a business context" and that "[a] finding to the contrary . . . requires a fact specific analysis into the business practices and motivations of the defendant which cannot be done at this stage of the litigation." Ex. 1 at 2. Likewise, here, Abundant Hope's status as a nonprofit CPC does not exempt it from Chapter 93A liability.

Further, CLM's argument that "[t]here is no daylight between the Court's holding in *Planned Parenthood* and Plaintiff's doomed claims," ECF 68 at 8, fails to appreciate two key distinguishing factors. First, *Planned Parenthood* did not involve false and deceptive advertising; it was a trademark infringement case. 398 Mass. at 481. In contrast, this false advertising case alleges that Defendants use websites and paid advertisements on Google to promote medical services they cannot lawfully provide. ECF 59 ¶¶ 41, 43. Second, unlike the defendant in *Planned Parenthood*, which provided only pregnancy tests and counseling, 398 Mass. at 493, Abundant Hope purports to provide ambulatory medical services, and CLM's advertising promotes these services. ECF 59 ¶ 52. CLM now argues Abundant Hope simply offered counseling services to women, but that contradicts not only the allegations in the complaint—and Abundant Hope's Answer, which admits it purports to provide medical services through AWHC, ECF 63 ¶¶ 41, 43—but also CLM's own advertising on Abundant Hope's behalf for years. Thus, to the extent "counseling" is Abundant Hope's "core mission"—which Four Women does not concede—the unlawful medical services and Defendants' advertisements fall outside this supposed "core mission." *See Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 952 F. Supp. 884, 890 n.4 (D. Mass. 1997), *aff'd*, 142 F.3d 26 (1st Cir. 1998) ("[I]f the nonprofit goes beyond its ordinary

business and behaves instead in a 'business context,' it can be found liable under c. 93A").[2]  CLM's

arguments that *Planned Parenthood* forecloses liability are thus unavailing.

### 2.    Chapter 93A Applies When Entities Operate in a "Business Context."

Chapter 93A prohibits unfair or deceptive acts or practices in the conduct of any "trade or

commerce," defined as "those acts or practices which are perpetrated in a business context."

*Lantner v. Carson*, 374 Mass. 606, 611 (1978).  *Planned Parenthood* has been repeatedly cited for

the notion that whether the conduct alleged "takes place in a business context" is a fact-intensive

inquiry.  *Planned Parenthood*, 398 Mass. at 492-93; *Graham*, 2011 Mass. Super. LEXIS 139, at

*28-30 (denying summary judgment for nonprofit defendant based on "fact-specific nature of the

inquiry"); Ex. 1 at 2.  Courts evaluate a variety of factors, including defendant's "motivations, in

combination with the nature of the transaction and the activities of the parties" to determine

whether they "ha[ve] inserted [themselves] into the marketplace in a way that makes it only proper

that [they] be subject to rules of ethical behavior and fair play."  *Kunelius v. Town of Stow*, 588

F.3d 1, 18 (1st Cir. 2009).  Providing services generally offered by for-profit entities may also

indicate that an entity was operating in a "business context."  *See Graham*, 2011 Mass. Super.

LEXIS 139, at *29-30.  Four Women has met these pleading standards.

*First*, Defendants' motivations—the pinnacle of a factual question not resolvable at this

early juncture—show they operated in a "business context."  An entity "operate[s] in a 'business

context' where it engages in competitive marketplace 'activities . . . designed to damage or destroy

its competitor.'"  *Linkage*, 425 Mass. at 26 (quoting *Planned Parenthood*, 398 Mass. at 499

(Abrams, J. concurring and dissenting)).  In *27th Lancers*, the Appeals Court affirmed the finding

---

[2] In any event, "[a] charitable entity can engage in activities that are in service of its core charitable mission and still fall under the governance of G.L. c. 93A."  *Linkage*, 425 Mass. at 28 n.37.

that the defendant charity acted in a business context because its deceptive advertising designed to divert attendance at musical events from its competitor manipulated the marketplace. 100 Mass. App. Ct. at *3. Similarly, Defendants here engage in deceptive advertising to manipulate the healthcare marketplace to divert woman away from Abundant Hope's (for-profit) competitors. ECF 59 ¶¶ 7-8. Defendants' motivation in entering the marketplace is to damage and destroy other legitimate healthcare providers by misleading potential patients and interfering with their care. *See id.* ¶¶ 82-86. To the extent CLM articulates an alternative motivation, it is not derived from or consistent with the allegations in the complaint and thus cannot be considered in this motion. But even if there were a dispute over this alleged motivation, resolving this dispute would be inappropriate at this juncture. *See, e.g.*, *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 314-15 (D. Mass. 2022) ("[F]actual dispute[s] cannot be resolved on a motion to dismiss at which stage the Court must treat all non-conclusory factual allegations in the complaint as true.").

**Second**, Defendants' advertising and services compete with for-profit medical providers in the same market. Massachusetts courts have recognized that the "provision of no-fee pregnancy-related services falls under G.L. c. 93A, § 1's definition of trade and commerce as 'distribution of services.'" *Graham*, 2011 Mass. Super. LEXIS 139, at *29 (quoting *Planned Parenthood*, 398 Mass. at 496 (Abrams, J., concurring and dissenting)). In *Graham*, the court found "sufficient factors present" to indicate the defendant—a nonprofit community development organization— acted in a business context by competing with for-profit general contractors. *Id.* The court further noted that the services at issue required expertise in home contracting—and likely licensure that the defendants failed to obtain. *Id.* at *29 & *30 n.18. Likewise, Abundant Hope's provision of putative "medical services" including pregnancy viability diagnoses by ultrasound, requires

expertise and licensure (which Abundant Hope did not obtain),[3] and "constitute[] the core function of" AWHC's activities, *see id.* at *29. This conclusion is only strengthened when focusing on advertising—the heart of Four Women's claim against CLM, a for-profit marketing agency drafting and distributing deceptive advertising on behalf of its client.

**Third**, Plaintiffs have plausibly alleged a monetary motivation for CLM's actions: CLM was paid to carry out the work at issue here. *See* ECF 59 ¶¶ 64-65. But even if Abundant Hope's motivation were somehow relevant, Abundant Hope, too, benefits financially from its unfair practices. *Id.* ¶ 95. First, CLM's assertions that Abundant Hope's putative "medical" services were free, ECF 68 at 8, are not grounded in allegations in the complaint, which recognizes only that AWHC's services are *advertised* as such. ECF 59 ¶¶ 12, 122, 125; *see also id.* ¶ 155 (alleging that Abundant Hope informed Jane Doe 1 it accepted health insurance). Regardless, there does not need to be a charge for services to profit from the services provided. Courts have found that even when anti-reproductive healthcare activists do not charge fees, their advertising is driven by "an economic motivation for advertising their services" because "the solicitation of a non-paying client base directly relates to [the] ability to fundraise." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1273 (9th Cir. 2017); *see also Fargo Women's Health Org., Inc. v. Larson*, 381 N.W.2d 176, 180-81 (N.D. 1986). Here, Defendants tout purported medical services provided in connection with fundraising efforts. ECF 59 ¶ 95.

Because, at this early stage, Plaintiff has plausibly alleged that Defendants' conduct falls within the ambit of Chapter 93A, the Court should deny CLM's motion to dismiss.

---

[3] CLM appears to argue that Abundant Hope was acting as a "solo or group practice" and that Plaintiff has not alleged a violation of a statute or regulation. ECF 68 at 12. This argument is divorced from Four Women's complaint, which does not contain allegations supporting CLM's argument about Abundant Hope's status and instead cites multiple regulations violated by Abundant Hope. ECF 59 ¶ 54.

3.    <u>Courts Have Recognized That CPCs Act in a Business Context.</u>

Courts across the country have found that advertising by CPCs is subject to consumer protection laws even if the CPCs do not charge fees for their services. *See, e.g.*, *Mother & Unborn Baby Care of N. Texas, Inc. v. State*, 749 S.W.2d 533, 536 (Tex. App. Ct. 1988); *cf. First Resort*, 860 F.3d at 1273 ("Because [CPCs] utilize advertising to maintain a patient base, which in turn can generate income, we conclude that [CPC]s have an economic motivation for advertising their services."); *Fargo*, 381 N.W.2d at 181 (holding that CPC's provision of free services was not dispositive of liability under consumer protection laws because its "advertisements constitute promotional advertising of services through which patronage of the clinic is solicited, and in that respect constitute classic examples of commercial speech").

*Mother & Unborn Baby Care of North Texas* is instructive. There, the Texas Court of Appeals held that an entity holding itself out through advertising as a healthcare provider was subject to Texas's consumer protection laws despite not charging a fee for its services. 749 S.W.2d 537-38.[4] The court recognized that the CPC's "advertising was sought and obtained with . . . the objective . . . to draw in women seeking or considering an abortion." *Id.* at 537. The court rejected the argument that the CPC was immune to liability under the consumer protection law simply because it did not charge for services, holding that "[i]t is immaterial whether appellants provided a service in exchange for money; the statute as a whole supports the conclusion that transfer of valuable consideration is not necessary." *Id.* at 538. Rather, "[i]f in the context of a transaction

---

[4] The Texas consumer protection statute "resemble[s] c. 93A." *Cassano v. Gogos*, 20 Mass. App. Ct. 348, 352 (1985). In fact, the statutes' definitions of trade and commerce are almost identical. *Compare* Tex. Bus & Com. Code sec. 17.45(6) (defining "trade and commerce," as including "advertising, offering for sale . . . or distribution of any good or service . . . or thing of value"), *with* Mass. Gen. Laws c. 93A (defining "trade and commerce" to include "the advertising . . . or distribution of any services . . . directly or indirectly affecting the people of this commonwealth.'").

in goods or services, any person engages in an unconscionable course of action which adversely affects a consumer, that person is subject to liability under the" consumer protection law. *Id.*

Likewise, Abundant Hope and CLM are subject to suit under Massachusetts's consumer protection statute when they engage in unconscionable actions to interfere with the business of lawful healthcare providers like Four Women simply because they disagree with the services provided there. *See generally Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 693 (1975) ("[T]he statutory words '(u)nfair and deceptive practices' (in G.L. c. 93A, § 2) are not limited by traditional tort and contract law requirements.").

B.    CLM Is Liable Under Chapter 93A for Interfering With Trade or Commerce.

In an attempt to evade liability, CLM incorrectly argues that Section 11 of Chapter 93A requires a commercial transaction or direct commercial relationship between CLM and Four Women. ECF 68 at 9-11. But Chapter 93A does not articulate such a requirement, *see* M.G.L. c. 93A, § 11 (permitting an action by "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss . . . as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice"), and Massachusetts courts have rejected this argument, finding "no merit to [the] assertion that [a party] cannot be held liable under c. 93A because it had no direct commercial relationship with [an opposing party]," *Gillette Co. v. Provost*, 2017 Mass. Super. LEXIS 38, at *22 (Apr. 18, 2017).

Instead, a plaintiff "can prove that a defendant's malfeasance took place in a business context, and thus implicates c. 93A, by showing **either** 'that the defendant had a commercial relationship with the plaintiffs **or** that the defendant's actions interfered with 'trade or commerce' in some other way." *Gillette*, 2017 Mass. Super. LEXIS 38, at *22 (emphasis added) (quoting *First Enters., Ltd. v. Cooper*, 425 Mass. 344, 347 (1997)). Privity between the parties is not

16

required.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 192-93 (1st Cir. 2009).  Defendants may be liable for "inject[ing] themselves into the trade and commerce" between third-party buyers and sellers.  *Id.* (quoting *First Enters.*, 425 Mass. at 348); *see Gillette*, 2017 Mass. Super. LEXIS 38, at *22-23 (holding a reasonable factfinder could conclude Gillette acted in business context when it "brought a baseless lawsuit in an attempt to keep [a competitor] from entering the wet-shaving market").  CLM interferes with trade or commerce by injecting itself into the reproductive healthcare marketplace and making false and deceptive representations to women about medical services they wish to purchase.  ECF 59 ¶¶ 133-37, 152-55.

## III.    CLM Is Subject to Liability Under the Lanham Act.

Four Women has also brought a claim of false advertising against CLM under Section 43(a) of the Lanham Act., 15 U.S.C. § 1125(a).  To state a false advertising claim, a plaintiff must demonstrate that (1) the defendant made a false or misleading representation of fact in a commercial advertisement about its own or another's product; (2) the misrepresentation is material, in that it is likely to influence the customer's purchasing decision; (3) the misrepresentation deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, by direct diversion of sales or by a lessening of goodwill.  *See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir. 2002).  Four Women satisfies each of these elements here.

CLM's motion takes aim at just two of these elements, arguing (i) that Defendants' speech is not "commercial advertising or promotion" under the Lanham Act and (ii) that Defendants' statements are not material, as required under the Lanham Act.  ECF 68 at 17-21.  CLM does not seek dismissal based on the remaining elements, thus conceding they have been sufficiently pled. Four Women addresses each of CLM's arguments in turn.

A.    CLM's False Advertising of Abundant Hope's Medical Services Constitutes "Commercial Advertising or Promotion" Under the Lanham Act.

To constitute "commercial advertising or promotion," the "representation must (a) constitute commercial speech (b) made with the intent of influencing potential customers to purchase the speaker's goods or services (c) by a speaker who is a competitor of the plaintiff in some line of trade or commerce and (d) disseminated to the consuming public in such a way as to constitute 'advertising' or 'promotion.'" *Podiatrist Ass'n v. La Cruz Azul de P.R., Inc.*, 332 F.3d 6, 19 (1st Cir. 2003). Commercial speech "does no more than propose a commercial transaction." *Allscripts Healthcare, LLC v. DR/Decision Res., LLC*, 440 F. Supp. 3d 71, 76 (D. Mass. 2020) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)) (denying motion to dismiss Lanham Act claim). To state a claim, a plaintiff must "at the very least . . . identify some medium or means through which the defendant disseminated information to a particular class of consumers." *McGrath*, 2012 U.S. Dist. LEXIS 18584, at *10 (quoting *Podiatrist*, 332 F.3d at 20) (denying motion to dismiss Lanham Act claim).

Given CLM's heavy focus on the first element—whether its speech is "commercial"— Four Women focuses on that element and then addresses the remaining elements together.

1.    CLM's False Advertising for Abundant Hope's Medical Services Constitutes "Commercial Speech."

The "commercial speech" analysis is fact-driven, due to the inherent "difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419 (1993). Four Women alleges that CLM wrote and published false and deceptive statements on the AWHC Website and in other advertisements to promote the purported medical services of AWHC to those seeking reproductive healthcare services in a commercial marketplace. Four Women thus plausibly alleges "commercial speech."

CLM argues its speech on Abundant Hope's behalf *cannot be* commercial because

Abundant Hope is a nonprofit that does not charge money for its services.  *See* ECF 68 at 17-18.
But, as with Chapter 93A, nonprofit status does not exempt Abundant Hope from the Lanham
Act's false advertising strictures, let alone CLM—a for-profit actor—for its advertising on
Abundant Hope's behalf.  The Lanham Act provides no exemption from "commercial speech" for
nonprofits by virtue of their status as a nonprofit, and for good reason—the mere fact that
organization does not charge fees for its services does not give it free rein to engage in deceptive
solicitations.  *See, e.g.*, *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F.
App'x 251, 259 (4th Cir. 2017) ("[The] identity of the speaker does not categorically determine
whether a speaker is economically motivated."); *Gordon & Breach Sci. Publ'rs S.A. v. Am. Inst.
of Physics*, 859 F. Supp. 1521, 1534-35 (S.D.N.Y. 1994) (noting that "commercial advertising or
promotion" in the Lanham Act "covers misrepresentations by non-profit and for-profit
organizations alike").  Where a nonprofit's statements are made in a commercial context and
directed toward the promotion of services rather than the exchange of ideas, such statements may
constitute "commercial speech."  *See Handsome Brook*, 700 F. App'x at 258; *Fargo*, 381 N.W.2d
at 181; *Cf. Pellegrini v. Northeastern Univ.*, 2013 U.S. Dist. LEXIS 150447, at *17-18 (D. Mass.
Aug. 23, 2013) (finding Northeastern University's posting of scientific paper on website was *not*
commercial speech, as it was academic and did not pertain to a particular product or service).

    Multiple courts have recognized that nonprofit CPCs' promotion of their services
constitutes commercial speech.  In *First Resort, Inc. v. Herrera*, for example, the Ninth Circuit
held that a CPC's advertising of medical services for which it did not charge money was a "classic
example[] of commercial speech," as it related to the medical services offered by the CPC, and not
the exchange of ideas.  860 F.3d at 1276; *see also Fargo*, 381 N.W.2d at 180-81 ("[T]he degree,
if any, that monies are received by the [CPC] from its clients . . . is [not] dispositive of our

determination that the communication involved is commercial speech.").

Likewise, CLM's speech here is promotional advertising designed to attract clients seeking reproductive healthcare services in a commercial marketplace. On the AWHC Website, for example, Defendants advertise that they provide specific medical services to women including ultrasounds, pregnancy diagnoses, and testing for sexually transmitted diseases. *See, e.g.*, ECF 59 ¶¶ 87-95. Defendants further promote the ultrasound services they offer by falsely representing that ultrasounds and viability determinations are required before a woman can obtain an abortion. *Id.* ¶¶ 96-105. The AWHC website and targeted Google advertisements further mislead women by conveying that Abundant Hope provides abortions. *Id.* ¶¶ 113-22. The statements at issue are thus clearly directed toward the promotion of services rather than toward the exchange of ideas.

Moreover, while Abundant Hope is a nonprofit, its speech is nonetheless economically motivated. In *First Resort*, in concluding the nonprofit CPC's speech was commercial, the Ninth Circuit noted that the CPC had an economic motivation for advertising its services, explaining that "the solicitation of a non-paying client base directly relates to a [CPC's] ability to fundraise and, in turn, to buy more advertisements." 860 F.3d at 1273. Abundant Hope's economic motivation is similarly clear, as it touts the medical services it provides and specifically its diversion of potential Four Women patients in its fundraising messaging to donors. ECF 59 ¶ 95. And again, as with Chapter 93A, CLM cannot claim Abundant Hope's nonprofit status here; CLM is a for-profit organization and derives a direct economic benefit from Defendants' speech, receiving money from Abundant Hope for creating and promoting the advertisements at issue. *Id.* ¶¶ 63-65.

CLM seeks to evade liability by relying on cases that had nothing to do with advertising or the Lanham Act. *See* ECF 68 at 18 (citing *Nat'l Inst. of Fam. & Life Advocs. v. Raoul*, 685 F. Supp. 3d 688 (N.D. Ill. 2023)). In *Raoul*, the plaintiff challenged an Illinois law designed to

prevent centers that do not provide abortions from interfering with access to abortion providers. 685 F. Supp. 3d at 695-97. The court focused on the speech of "sidewalk counselors" outside abortion provider facilities, noting: "Nobody is confused as to who sidewalk counselors are or what their goal is. Indeed, a sidewalk counselor wears a pro-life shirt and sometimes has a depiction of the Virgin Mary holding Baby Jesus with his arms outstretched." *Id.* at 700. The court found that this speech—which has nothing to do with services provided or advertised at competing clinics or CPCs—was not commercial. *See id.* at 705. Unlike the plaintiff in *Raoul*, Four Women has brought a Lanham Act claim, focused on online websites and advertisements. CLM wrote and disseminated advertisements for putative medical services by an unlicensed, fake clinic called "Attleboro Women's Health Center." CLM is hardly a sidewalk counselor here.

2.    <u>CLM's False Advertising for Abundant Hope's Medical Services Is Not Protected by the First Amendment.</u>

CLM's nine-page lecture about the First Amendment is therefore misguided—Four Women has not targeted any protected speech or conduct of any Defendant in this case. Contrary to Defendants' view, Four Women does not seek to "restrict[] commercial speech based on content or speaker." ECF 68 at 23. Rather, Four Women brings this suit to stop Defendants from engaging in false and deceptive advertising. "Misleading or deceptive advertising is not protected by the First Amendment." *In re Willis Furniture Co*., 1992 U.S. App. LEXIS 32373, at *2 (1st Cir. Dec. 11, 1992); *see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980); *Mass. Ass'n of Priv. Career Sch. v. Healey*, 159 F. Supp. 3d 173, 190 (D. Mass. 2016). Defendants cannot circumvent this core principle simply because Abundant Hope is a "pregnancy resource center" that opposes abortion care. ECF 68 at 22.

Defendants' anti-abortion views may be protected, but that is not the speech Four Women identifies here. This suit is about Defendants' false advertising of the services Abundant Hope

purports to provide.  CLM—which wrote and disseminated advertising on Abundant Hope's behalf—now seeks to rewrite its own copy.  The AWHC website and other advertisements do not simply promote counseling services, as CLM argues, nor do they express Abundant Hope's ideological views: the statements made on the AWHC Website and via Google advertisements do not reference Defendants' ideological mission or pro-life stance.  *See* ECF 59-1.  Rather, CLM misleadingly presents these services as neutral and medical (reinforced by the name Attleboro Women's Health Center).  That this false advertising is consistent with Abundant Hope's anti-abortion ideology does not alter this analysis and does not grant Defendants the unbridled right to enter the marketplace as alleged service providers and engage in deceptive solicitations.

Nor does Four Women seek to "restrict" speech based on "falsity alone."  ECF 68 at 27.  As described above, Defendants' speech is not merely "false"; it is false *advertising*.  And Four Women's complaint describes in detail the harm to its patients as a result of such false advertising.  *See infra* Section V.  Finally, to the extent CLM suggests the Lanham Act requires a showing that it *knew* the representations were false for liability to attach, ECF 68 at 27, that is not so.  *See In Nestlé Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, 2015 U.S. Dist. LEXIS 51273, at *13-16 (E.D. Mo. Apr. 20, 2015) (reasoning that, as Congress expressly removed the "knowing" element from the Lanham Act in 1988, the current version of the Lanham Act did not impose a silent "knowing" requirement for claims against advertising agencies).

        3.    <u>CLM's False Advertising for Abundant Hope's Medical Services Satisfies the Remaining Elements of "Commercial Advertising or Promotion" Under the Lanham Act.</u>

CLM's arguments as to the other elements of "commercial advertising or promotion" again hinge on the fact that Abundant Hope is a nonprofit that does not charge money for its services.  *See* ECF 68 at 18-20.  The cases described above refute this notion, and CLM's speech easily satisfies the remaining elements of "commercial advertising or promotion" under the Lanham Act.

*First*, CLM's speech is made with the intent of influencing potential customers to solicit Abundant Hope's services.  CLM implies that *Podiatrist*, 332 F.3d at 20, held that the Lanham Act does not apply where the targeted customers are not "purchasing" the services.  *See* ECF 68 at 18-19 (italicizing "purchase" and "purchasing").  The cited passage in *Podiatrist*, however, does not distinguish between free and paid services, as Defendants suggest.  Rather, it simply notes the Lanham Act's requirement that a plaintiff must identify some advertising or promotional medium through which the defendant disseminated information to a particular class of consumers. *Podiatrist*, 332 F.3d at 19-20.  There can be no dispute Four Women has done so here by promoting its services to women seeking reproductive healthcare in the Attleboro, Massachusetts area.

*Second*, Defendants compete with Four Women in the reproductive healthcare marketplace.  Courts recognize that entities offering comparable services directed toward the same customer base are competitors.  *See, e.g.*, *McGrath*, 2012 U.S. Dist. LEXIS 18584, at *14 (finding parties that "offer[ed] nearly identical project management services for companies engaged in major construction projects" competitors); *see also Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc*., 586 F.3d 500, 512 (7th Cir. 2009) ("The purpose of the false-advertising provisions of the Lanham Act is to protect sellers from having their customers lured away from them by deceptive ads (or labels, or other promotional materials).").  Defendants explicitly advertise that AWHC provides many of the same services Four Women provides.  On the AWHC website, for example, Defendants advertise that AWHC provides ultrasounds, pregnancy diagnosis, and testing for sexually transmitted diseases.  *See, e.g.*, ECF 59 ¶¶ 87-95.  Four Women provides all these same services.  *See id.* ¶¶ 33-38.  The AWHC website even misinforms customers that its services are a prerequisite for receiving abortion care, in an attempt to capture potential patients of Four Women.  *Id.* ¶¶ 98, 100-01.  The AWHC website and targeted Google

advertisements further mislead women into believing Abundant Hope provides abortions, another service Four Women provides. *Id.* ¶¶ 113-22.  Further, Defendants use Abundant Hope's location (next to Four Women) in its online advertising to capture potential Four Women patients. *Id.* ¶¶ 17, 121 (noting Google search for "abortion near me attleboro ma," yields an advertisement for "Attleboro Women's Health Center" that is among the first hits).  It is this very advertising that led Jane Doe 1 to schedule an appointment with Abundant Hope under the belief she was going to have an abortion. *Id.* ¶¶ 152, 153, 155.  Thus, Four Women and Defendants are competitors not because they "hold opposing views," as CLM argues, ECF 68 at 19, but because Abundant Hope purports to provide many of the same reproductive healthcare services that Four Women provides in the exact same marketplace, vying for the same customer base.

*Third*, Defendants sufficiently disseminate their speech to the consuming public, given the availability of the AWHC Website and Google online to the public. *See, e.g.*, *McGrath*, 2012 U.S. Dist. LEXIS 18584, at *10 (finding false and misleading statements promoting defendant's services on its website "to any consumer who views it" satisfied this element).

B.    Four Women Has Adequately Alleged that CLM's False and Misleading Statements Are Material.

Four Women has sufficiently pled that Defendants' numerous false and misleading statements were material.  Materiality can be shown by demonstrating that the statements either relate to an "inherent quality or characteristic" of the product or service or are "likely to influence the purchasing decision" of the consumer. *Cashmere*, 284 F.3d at 311-12 (holding that overstatement of cashmere content in blazer and failure to disclose use of recycled fibers were material, as statements related to inherent characteristic of garment sold, "as well as the market in which it [was] sold") (citations omitted).  Four Women's allegations satisfy both standards.

Four Women has adequately alleged that CLM's false and misleading statements pertain

to the inherent characteristics of Abundant Hope's services—specifically, what "Attleboro Women's Health Center" is and what services it provides. As CLM would now have it, AWHC is a center that provides anti-abortion counseling. But that is not what its website or advertisements say. Instead, those publications advertise "medical services" by "medical professionals" for women seeking abortions, describing services women "must" receive before obtaining abortions. ECF 59 ¶ 18. These false statements misstate inherent qualities of AWHC and Abundant Hope.

Four Women has also established that Defendants' false and misleading advertising was "likely to make a difference" to potential customers. *Cashmere*, 284 F.3d at 312 n.10. Defendants' false statement that AWHC is a licensed medical facility and its misleading online statements is likely to influence women's decisions. In fact, Four Women has pled specific examples of women being misled by CLM's false advertising, beyond what is required for pleading this element. *See id.* at 313 (explaining plaintiffs are "not required to present evidence that defendants' misrepresentation *actually influenced* consumers' purchasing decision, but that it was *likely* to influence them" (emphasis added)). Still, Four Women has alleged that specific women inadvertently contacted AWHC when they meant to reach Four Women as a result of Defendants' false and misleading statements. Jane Doe 9, for example, found AWHC through an online search and scheduled an abortion there, only to learn during her ultrasound that Abundant Hope does not actually provide abortions. ECF 59 ¶ 176. Other women had no idea they ever contacted Abundant Hope for appointments. *Id.* ¶¶ 131-32. Jane Does 5 and 8 were misled into submitting online inquiry forms to Defendants without knowing they were providing their contact information to a CPC and not Four Women. *Id.* ¶ 140. Four Women has therefore adequately alleged that Defendants' conduct likely influenced these women to contact AWHC or attend appointments

there instead of making the appointment they sought at Four Women.[5]

## IV. Four Women Has Plausibly Alleged CLM Engaged in Unfair and Deceptive Acts.

CLM argues that Four Women has not sufficiently alleged that CLM engaged in unfair or deceptive acts as required by Chapter 93A. ECF 68 at 11-14. Not so. To the extent CLM complains that some of Four Women's allegations concern statements that are misleading, rather than literally false, that is no barrier to liability under Chapter 93A. *See Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312, 320 (2018) (citing *Aspinall v. Phillip Morris Cos.*, 442 Mass. 381 (2004)) (holding that advertising need not be false to violate the law, it can "even . . . be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information"). As discussed throughout this brief, Four Women alleges that CLM wrote, published, and managed false and deceptive statements online promoting the purported medical services of Abundant Hope's unlicensed, fake clinic called "Attleboro Women's Health Center" to interfere with women seeking abortion care services at Four Women. ECF 59 ¶¶ 10, 60-61.

CLM takes further aim at Four Women's allegations that Defendants' liability may arise from its violation of DPH's authorizing statute requiring a provider of ambulatory medical services to be licensed. ECF 68 at 11-13; *see* 940 Mass. Code Regs. 3.16(3) (providing a Chapter 93A violation arises from a "fail[ure] to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare"). Four Women easily meets the applicable pleading standards here, as it alleges Defendants purport to provide ambulatory medical

---

[5] CLM argues Four Women fails to sufficiently plead materiality in connection with both claims. Materiality under Chapter 93A requires a showing that the statements are "likely to affect consumers' conduct or decision with regard to a product." *In Spite Telecom, LLC v. Rosciti Constr. Co.*, 2024 U.S. Dist. LEXIS 185307, at *20 (D. Mass. Oct. 9, 2024). As explained above in the context of the Lanham Act, Four Women has met this standard.

services without the proper license and under the guise that they are properly licensed.  *See, e.g.*, ECF 59 ¶¶ 12, 52-59, 93-94, 112.  CLM argues that Abundant Hope does not violate this regulation because it is a "solo or group practice."  ECF 68 at 12.  Abundant Hope is not a "solo or group practice," under Massachusetts regulation, and there are no allegations in the Amended Complaint supporting this assertion.  To the extent Defendants seek to raise this argument as a defense, they may do so with the benefit of discovery, but this defense is not a basis for a motion to dismiss.

## V.    Four Women Has Sufficiently Pled Harm.

Finally, Four Women's allegations plausibly allege harm as required by Chapter 93A.[6] Four Women extrapolates two arguments from CLM's discussion of harm: that the harm Four Women has alleged is (i) merely speculative and (ii) not caused by CLM.  These arguments fail and do not support dismissal on this basis.

Four Women has alleged harm that is beyond "hypothetical," ECF 68 at 16.  Chapter 93A requires a plaintiff to allege "an 'identifiable harm' caused by the unfair or deceptive act that is separate from the violation itself."  *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017).  "The harm alleged may be economic or noneconomic and need not be quantifiable."  *Ortiz v. Eversource Energy*, 2025 Mass. Super. LEXIS 19, at *7 (Feb. 19, 2025); *see Chery v. Met. Prop. & Cas. Ins. Co.*, 79 Mass. App. Ct. 697, 700 (2011) ("A plaintiff seeking redress under c. 93A is not required to show a quantifiable amount of actual damages . . . . Rather, a plaintiff is required to show only that she suffered some loss caused by the defendant's allegedly unlawful conduct.").  Four Women has adequately pled both economic and noneconomic harm.  First, Four Women has alleged—

---

[6] CLM does not make this argument under the Lanham Act, thus conceding that element has been sufficiently pled.  Nonetheless, for the same reasons articulated below, Four Women has adequately pled harm under the Lanham Act.  *See Cashmere*, 284 F.3d at 311 (providing that a plaintiff may prove injury through loss of sales or goodwill).

through the content of Defendants' advertising, experiences of specific Jane Does, and data showing the number of overlapping customers, ECF 59 ¶¶ 128, 178—facts to support the inference that Defendants' actions resulted in loss of business to Four Women. *See IDT Telecom, Inc. v. Voice Distribs., Inc.*, 2008 Mass. Super. LEXIS 105, at \*5-6 (Apr. 11, 2008) (finding "a causal link between unfair competition and damages [to be] inferable" noting that even competing within the same market area of an existing competitor can establish this inference). Four Women has also suffered reputational harm, as patients seeking services from Four Women become subject to confusion, misdirection, and negative experiences through Defendants' interference.

Four Women has also adequately pled that CLM caused the alleged harm. "To establish causation, a plaintiff must prove the defendant's unfair or deceptive act caused an adverse consequence or loss." *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (internal quotation marks omitted). This standard is met here. The Amended Complaint identifies multiple Jane Does who were deceived by Defendants' advertising into engaging unknowingly with an unlicensed, fake clinic rather than with Four Women. ECF 59 ¶¶ 133, 138, 140, 153-54, 176. In just over a year, Defendants contacted at least 591 women who also sought services at Four Women. *Id.* ¶ 128. Additionally, women who have scheduled appointments with Four Women regularly do not show up. *Id.* ¶ 178. These allegations more than suffice for the Court—"indulging all reasonable inferences in [the plaintiff's] favor," *Fantini*, 557 F.3d at 26, as it must at this stage—to conclude that CLM's deliberate advertising campaign to "direct more abortion-minded" women from abortion care providers like Four Women into Abundant Hope's fake clinic next door has had its intended effect.

## **CONCLUSION**

For the foregoing reasons, Four Women respectfully requests that this Court deny Choose Life Marketing, LLC's Motion to Dismiss.

DATED: April 18, 2025

**Four Women Health Services, LLC**

By its attorneys,

/s/ *Matthew D. Patton*
Matthew D. Patton (BBO No. 703798)
**Law Office of Nicholas F. Ortiz, P.C.**
One Boston Place, Suite 2600
Boston, MA 02108
(617) 338-9400
mdp@mass-legal.com

s/ *Emily Nash*
Martha Coakley (BBO # 87300)
Emily J. Nash (BBO #696460)
Caroline Holliday (BBO #707301)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
mcoakley@foleyhoag.com
enash@foleyhoag.com

Brenna Rosen (*pro hac vice*)
**FOLEY HOAG LLP**
1301 Avenue of the Americas
New York, New York 10019
brosen@foleyhoag.com

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew D. Patton, certify that on April 18, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to defendants by electronically serving its counsel of record.

/s/ *Matthew Patton*
Matthew D. Patton