UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FOUR WOMEN HEALTH SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ABUNDANT HOPE PREGNANCY RESOURCE CENTER INC., d/b/a ATTLEBORO WOMEN'S HEALTH CENTER, CATHERINE ROMAN, NICOLE CARGES, DARLENE HOWARD, and CHOOSE LIFE MARKETING, LLC,<br><br>Defendants. | Civil Action No: 1:24-cv-12283-JEK<br><br>Leave to File Granted on<br>July 17, 2025, ECF 88 |

**PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO
DEFENDANT CHOOSE LIFE MARKETING, LLC'S MOTION TO DISMISS**

CLM's Reply, ECF 86, is an attempt to essentially rewrite its initial Memorandum in Support of its Motion to Dismiss. CLM has retreated from certain arguments, reframed its position, and raised arguments it failed to raise in its initial Memorandum.[1] Amid the needless insults CLM levies against Four Women throughout the brief, CLM cites almost 30 cases absent from prior briefing. Four Women submits this brief response to address four issues raised in CLM's Reply.

## I. *Planned Parenthood* did not give crisis pregnancy centers carte blanche to engage in unfair and deceptive business practices.

CLM now concedes there is no rule exempting a nonprofit organization from liability under Chapter 93A or the Lanham Act. *See* ECF 86 at 4, 18, 19. CLM nevertheless argues that its advertising for Abundant Hope's fictional "medical arm," however deceptive, still falls beyond the reach of Chapter 93A. CLM's revised argument is that the SJC, in *Planned Parenthood Federation of America v. Problem Pregnancy of Worcester*, "placed the free, charitable offering of [reproductive healthcare] services outside the reach of Ch. 93A." ECF 86 at 6. Put differently, CLM has abandoned its argument that all nonprofits are per se exempt from Chapter 93A; instead, according to CLM, only crisis pregnancy centers are. But the SJC held no such thing.

*Planned Parenthood* was decided on the facts before it. In *Planned Parenthood*, the SJC explained that to determine whether Chapter 93A applies, courts must "look at the *particular circumstances* to determine whether the acts complained of were committed within a 'business context.'"[2] 398 Mass. 480, 493 (1986) (citing *Begelfer v. Najarian*, 381 Mass. 177, 190 (1980))

---

[1] While Four Women addresses CLM's arguments here, any new arguments raised in CLM's Reply are waived. *See Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) (waiving argument raised in reply, noting "[t]he purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum.").

[2] CLM asserts that the Court need not address whether a business context exists because *Planned Parenthood* requires dismissal prior to that inquiry. ECF 86 at 6. There is no such threshold inquiry; to the extent *Planned Parenthood*

1

(emphasis added); *see also Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass 1, 24.  To guide the analysis, the Court cited the multi-factor framework it established in *Begelfer v. Najarian*, which includes: consideration of the "character of the parties," the "activities participated in," and "whether the transaction was motivated by business or personal reasons." *Planned Parenthood*, 398 Mass. at 491 (citing *Begelfer*, 381 Mass. at 190-91).[3]  Assessing the facts before it, the Court noted that (1) defendant PP, Inc. ("PP") was a charitable organization—though it also noted that nonprofit status alone was not dispositive; (2) the trial court's "sole finding in regard to the nature of PP's activities"—after trial—was that PP gave "pregnancy tests, pregnancy counseling advice and other services relative to pregnancy in the Worcester area"; and (3) PP's employees "were motivated in their work to advocate the pro-life position." *Id.* at 492-93.  Based on these facts, the SJC held that the defendant was not engaged in trade or commerce. *See id.*; *cf. Linkage*, 425 Mass. at 24-25 (distinguishing case involving nonprofit defendant from *Planned Parenthood* based on its facts).

The allegations here yield different results on all three factors.

First, CLM's role fundamentally changes the "character" of the parties in this case.  CLM was paid by Abundant Hope to develop and disseminate the advertising at issue.  *Planned Parenthood* did not involve a scheme between PP and a for-profit defendant disseminating advertisements on its behalf; it involved merely a misleading sign on a door. 398 Mass. at 482.

Second, the activity alleged here is markedly different from that found in *Planned*

---

weighs on this motion, it is in the "business context" analysis, which was the SJC's focus in that case. *See Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 24 (1997) (citing *Planned Parenthood* for "business context" analysis).

[3] The fourth *Begelfer* factor—the "nature of the transaction"—did not play a role in the Court's analysis in *Planned Parenthood*, which involved an unfair competition charge and not a commercial transaction. *See* 398 Mass. at 491 (providing caveat when introducing *Begelfer* to explain that the cases were distinct due to the absence of a commercial transaction).  Likewise, this factor does not inform the analysis here.

2

*Parenthood*. Abundant Hope does not simply offer pregnancy tests and counseling; it purports to administer ultrasounds and provide pregnancy diagnoses. ECF 59 ¶¶ 52; ECF 63 (Answer) ¶ 92. CLM makes light of this distinction, arguing ultrasounds are the 21st-century equivalent of pregnancy tests. ECF 86 at 5. CLM may believe that to be so, but Massachusetts law disagrees. It is the provision of ultrasounds and pregnancy diagnoses that requires clinical licensure in Massachusetts. ECF 59 ¶ 53, 58. CLM's dismissiveness of this distinction is remarkable given the centrality of the issue in this dispute. Additionally, the advertising itself—CLM's conduct—is distinct from that of PP. In *Planned Parenthood*, PP placed a misleading sign on its door. 425 Mass. at 482. Here, CLM's advertising makes misrepresentations about the actual services Abundant Hope provides and is pushed online to potential consumers through paid interactions between the parties and with external vendors like Google. This scheme is designed to reach women taking their initial steps to find an abortion care provider and prevent them from reaching Four Women.

Third, CLM's conduct was motivated by "business reasons." CLM seems to concede that as a for-profit marketing firm, its motive was profit-driven, but it seeks to avoid liability by standing in Abundant Hope's shoes. ECF 86 at 11 & 11n.8. But even if it could assume Abundant Hope's position, CLM's argument fails, as Abundant Hope's motivations also subject it to liability. In 1997, the SJC recognized a principle initially espoused in *Planned Parenthood*'s dissent: a charitable corporation may operate in a "business context" where it "engaged in competitive marketplace 'activities . . . designed to damage or destroy its competitor.'" *Linkage*, 425 Mass. at 26 (quoting *Planned Parenthood*, 398 Mass. at 499 (Abrams, J., concurring and dissenting)). The SJC further explained that a "profit" motivation may be found where the defendant "was motivated by a strong desire to benefit as much as possible from" the improper conduct. *Id.* at 25. Four

3

Women's allegations meet both standards, as the false advertising is motivated by a desire to destroy Four Women's business and support and fund Abundant Hope.

## II.     CLM's conduct directly interfered with trade or commerce.

CLM continues to assert Four Women's Chapter 93A claim fails because Four Women and CLM did not engage in a commercial transaction. ECF 86 at 7. But Massachusetts law is clear that "[p]arties need not be in privity for their actions to come within the reach of c. 93A." *Kattar v. Demoulas*, 433 Mass. 1, 14-15 (2000); *see, e.g.*, *Int'l Ass'n of Fire Fighters v. Nat'l Fire Prot. Ass'n, Inc.*, No. 2384CV02517-BLS2, 2024 Mass. Super. LEXIS 28, at *7 (Mar. 5, 2024) (declining to dismiss claim by union against trade association); *IDT Telecom v. Voice Distribs., Inc.*, No. 07-2465, 2008 Mass. Super. LEXIS 105, at *8 (2008) (citing cases) (denying motion to dismiss claim brought by prepaid calling card companies against competitors). CLM itself acknowledges that a defendant's injection into the marketplace or unfair competition may render a defendant liable under Chapter 93A. ECF 86 at 11-12. The facts alleged support CLM's liability under the injection theory and the unfair competition theory.

CLM's argument that it is not liable for unfair competition because it does not compete in the same "market" as Four Women, *see id.* at 12, 23, is unsupported by law and fact. First, the single case CLM cites does not support this proposition.[4] Second, CLM's bare assertions that Defendants and Four Women do not compete in the same "market" contradict not only the facts as pled, but also Defendants' own concessions that they target their advertisements toward women in the Attleboro area seeking abortion care. ECF 63 ¶¶ 23, 42, 49 (admitting location and

---

[4] CLM cites *Ray v. Ropes & Gray LLP*, 961 F. Supp. 2d 344, 361 (D. Mass. 2013), *aff'd*, 799 F.3d 99 (1st Cir. 2017), to aver that "[t]he First Circuit has held that parties serving different markets are not competitors." ECF 86 at 12. But *Ray* had nothing to do with an unfair competition claim by a competitor. The case was brought by a former employee, and the court explained that the plaintiff's claim was "foreclosed by the employee exception." 961 F. Supp. 2d at 361. On appeal, the First Circuit did not discuss Chapter 93A at all. *See* 799 F.3d 99.

4

operations in Attleboro); ECF 68 at 9, 13 (agreeing that targets of advertisements are "abortion-minded women").

CLM is subject to suit because its actions directly "interfere[s] with 'trade or commerce.'" *See First Enterprise, Ltd. v. Cooper*, 425 Mass. 344, 347 (1997). Contrary to CLM's arguments, ECF 86 at 11, Four Women has not brought an "aiding and abetting" claim against it. Liability inures where, as here, a defendant "engages, *through its own actions*, in a deceptive act or practice that causes harm to consumers." *See In re TelexFree Sec. Litig.*, 358 F. Supp. 3d 98, 102 (D. Mass. 2019) (emphasis in original). Four Women has asserted that CLM drafts and disseminates advertising that it knows or should know is false. This sort of conduct "crosse[s] the line . . . into active participation in trade or commerce." *Id. See also Kirkland Constr. Co. v. James*, 39 Mass. App. Ct. 559 (1995) (reversing dismissal of Chapter 93A claim against law firm by non-client where attorney relayed information to plaintiff he knew or should have known was false).

### III. Compelled speech jurisprudence has no bearing on this private advertising dispute.

While CLM's initial briefing discussed the First Amendment at length, its Reply asserts yet another First Amendment argument, this time arguing that CLM's advertising is not "commercial speech" under compelled speech case law. ECF 86 at 18-21 (citing *Nat'l Inst. Of Family & Life Advocs. v. Becerra*, 585 U.S. 755, 763 (2018) (involving a state statute requiring CPCs to "disseminate a government-drafted notice on site"), and *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 879 F.3d 101, 105 (4th Cir. 2018) (involving city ordinance requiring CPCs to hang certain notices in waiting rooms)). Compelled speech in the form of government-mandated notices is viewed as "content-based regulation of speech," through which a government "compel[s] individuals to speak a particular message." *Becerra*, 585 U.S. at 766. Compelled speech is subject to strict First Amendment scrutiny. *Id.* Neither *Becerra*

5

...

nor *Greater Baltimore* dealt with commercial speech, like advertising, let alone false or misleading commercial speech.

Contrary to CLM's assertions, the Supreme Court's *Becerra* decision was not a "repudiation of the Ninth Circuit's pregnancy center speech analysis" in *First Resort v. Herrera*, 860 F.3d 1263 (9th Cir. 2017), ECF 86 at 19. In *First Resort*, the Ninth Circuit addressed a city ordinance that did *not* compel speech at all (contrary to CLM's assertion, ECF 86 at 19), but rather prohibited false advertising by CPCs. 860 F.3d at 1273-74. The court held that the ordinance did not target speech protected by the First Amendment because it sought only to regulate "false or misleading commercial speech—a category of speech afforded no constitutional protection." *Id.* at 1274. In *Becerra*, by contrast, the Court did not review the contents of the crisis pregnancy center's own speech, let alone its advertising; it assessed only government-mandated notices. 585 U.S. at 755-65. *Becerra* thus does not alter *First Resort*'s analysis.[5]

The speech at issue here is similarly void of First Amendment protections. CLM's speech is both commercial—it is disseminated in advertising, references particular services, and is motivated by an economic incentive, *see Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983)—and false. CLM cannot transform its advertising into First Amendment protected speech simply because it markets to abortion-minded women or touches on reproductive healthcare.

### IV. CLM's contention that this case does not involve false statements ignores the facts.

Finally, CLM asserts Four Women "cannot point to any statement that was actually false." ECF 86 at 13. But Four Women has repeatedly alleged that Defendants made literally false

---

[5] Contrary to CLM's assertion that *First Resort* is an "abandoned, anomalous outlier," courts in the Ninth Circuit continue to cite to *First Resort*, even after *Becerra*, to support the principle that a nonprofit CPC's promotion of its services is commercial speech. *See, e.g., Culture of Life Fam. Servs. v. Bonta*, No. 3:24-cv-01338-GPC-KSC, 2025 U.S. Dist. LEXIS 114449, at *15 (S.D. Cal. June 13, 2025); *Nat'l Inst. of Fam. & Life Advocs. v. Bonta*, 769 F.Supp. 3d 1109, 1121 (C.D. Cal. 2025) (assessing abortion pill reversal advertisements and recognizing fundraising a "powerful economic motivation" for the speech because "it is through their members that Plaintiffs raise funds").

6

statements related to the medical services that the fictional "Attleboro Women's Health Center" purports to provide but cannot lawfully provide. "Whether an advertisement is literally false is a question of fact. A fact-finder must determine (1) what claim is conveyed by the advertisement and (2) whether that claim is false." *Ferring Pharms. Inc. v. Braintree Labs., Inc.*, 38 F. Supp. 3d 169, 177 (D. Mass. 2014) (citing *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 34 (1st Cir. 2000)). "Unless the speech at issue is such that a court can properly say that no reasonable person could be misled by the advertisement in question, it is not appropriate to resolve the issue of the truthfulness of the speech on a motion to dismiss." *Id.* at 177-79 (quoting *Genzyme Corp. v. Shire Human Genetic Therapies, Inc.*, 906 F. Supp. 2d 9, 17 (D. Mass. 2012)) (declining to resolve issues of truthfulness at the motion to dismiss stage). The advertisements promoting AWHC's purported status as a medical provider, provision of ultrasounds and pregnancy diagnoses, and involvement of certified medical personnel far exceed this threshold.

A variety of false statements by CLM about AWHC's purported "medical" services and personnel are before this Court.[6] For example:

- The AWHC Website (written by CLM) advises women "it's essential to get an ultrasound" before an abortion, which will provide a pregnancy's gestational age, location, and viability; it then urges women to "schedule a free ultrasound appointment" at AWHC. ECF 59-1 at 4; ECF 68-2 at 4. But Abundant Hope admits that it "is not and has never been licensed by the Massachusetts Department of Public Health to provide medical care." ECF 63 ¶ 59. It lacks the licensure to provide the ultrasound services it advertises. *See* ECF 59 ¶ 7; ECF 63 ¶ 7.

- The website states AWHC provides clients with a "Care Team" consisting of "physicians, nurses, and ultrasonographers," and describes its staff as "licensed medical professionals." *See* ECF 59-1 at 2, 8, 10-11; ECF 68-2 at 2, 7. But Abundant Hope does not have a licensed doctor or Advanced Practice Nurse on premises. ECF

---

[6] Four Women has submitted only a sample of the pages on the AWHC to the Court. To the extent the Court requires a comprehensive list of false statements on the website (relating to the services it provides and personnel providing it), Four Women respectfully requests the opportunity to further amend its complaint.

7

- 59 ¶ 55; ECF 63 ¶ 55. To the extent it has employed a physician, that physician was not consulted prior to conveying pregnancy diagnoses. ECF 59 ¶ 56.

- By its own admission, Abundant Hope denies that it "purports to provide ambulatory medical services, including diagnosing pregnancies and performing ultrasounds" at all, ECF 63 ¶ 52. Yet it admits to advertising for those same services. *Id*. ¶ 92.

These statements about AWHC's services and personnel are false. *See, e.g.*, *Welter v. Bd. of Registration in Med.,* 490 Mass. 718, 721-23 (2022) (affirming board suspension of license based on false and deceptive statements on website about licensure of physician and other staff).

CLM's briefing further illustrates its recklessness in describing Abundant Hope. Even now, where Abundant Hope's lack of licensure as a "clinic" is a key feature of Four Women's claims and CLM's initial Memorandum argued that AWHC was never a "clinic" but instead a "solo or group practice," ECF 68 at 11, CLM describes Abundant Hope as a "clinic" in its Reply. ECF 86 at 4 (describing this case as one where "an abortion clinic has sued a pro-life *clinic* for providing free pregnancy-related services, including medical services" (emphasis added)). These are not semantics; they implicate the health of Massachusetts residents and the healthcare standards set by the Commonwealth. CLM's ongoing carelessness with the words they use to describe Abundant Hope's enterprise only reinforces the appropriateness and necessity of this action.

## CONCLUSION

For the foregoing reasons, Four Women respectfully requests that this Court deny CLM's Motion to Dismiss.

8

DATED: July 17, 2025

          **Four Women Health Services, LLC**

By its attorneys,

| | |
|---|---|
| /s/ *Matthew D. Patton* <br> Matthew D. Patton (BBO No. 703798) <br> **Ortiz & Moeslinger, P.C.** <br> One Boston Place, Suite 2600 <br> Boston, MA 02108 <br> (617) 338-9400 <br> mdp@mass-legal.com | /s/ *Emily Nash* <br> Martha Coakley (BBO #87300) <br> Emily J. Nash (BBO #696460) <br> Caroline Holliday (BBO #707301) <br> **FOLEY HOAG LLP** <br> 155 Seaport Boulevard <br> Boston, MA 02210 <br> Telephone: (617) 832-1000 <br> Facsimile: (617) 832-7000 <br> mcoakley@foleyhoag.com <br> enash@foleyhoag.com <br> cholliday@foleyhoag.com <br><br> Brenna Rosen (*pro hac vice*) <br> **FOLEY HOAG LLP** <br> 1301 Avenue of the Americas <br> New York, New York 10019 <br> brosen@foleyhoag.com |

## **CERTIFICATE OF SERVICE**

      I, Emily Nash, certify that on July 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to defendants by electronically serving its counsel of record.

      /s/ *Emily Nash*
      Emily J. Nash