**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| FOUR WOMEN HEALTH SERVICES, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| ABUNDANT HOPE PREGNANCY RESOURCE CENTER, INC. d/b/a ATTLEBORO WOMEN'S HEALTH CENTER, CATHERINE ROMAN, NICOLE CARGES, DARLENE HOWARD, and CHOOSE LIFE MARKETING, LLC, | ) ) ) ) ) ) ) ) ) | No. 1:24-cv-12283-JEK |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT CHOOSE LIFE MARKETING, LLC'S MOTION TO DISMISS AND THE REMAINING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**KOBICK, J.**

Plaintiff Four Women Health Services, LLC is a licensed healthcare clinic that provides reproductive healthcare, including abortion care, to its patients. Defendant Abundant Hope Pregnancy Resource Center, Inc., doing business as Attleboro Women's Health Center, is a nonprofit crisis pregnancy center that opposes abortion. The organizations occupy neighboring buildings in Attleboro, Massachusetts. Four Women alleges in this lawsuit that Abundant Hope, three of its executive officers, and its marketing agency, defendant Choose Life Marketing, LLC ("CLM"), use false advertising to deceive and divert Four Women's patients who are seeking reproductive healthcare services. The amended complaint asserts that the defendants' false and deceptive advertising violates the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and M.G.L. c. 93A,

§ 11. Pending before the Court are CLM's motion to dismiss and a motion for judgment on the pleadings filed by Abundant Hope and its executive officers (together, the "Abundant Hope defendants").

For the reasons that follow, CLM's motion will be denied and the Abundant Hope defendants' motion will be granted with respect to the Chapter 93A claim but denied as to the Lanham Act claim. Four Women plausibly alleges a false advertising claim under the Lanham Act against all defendants. It also states a plausible Chapter 93A claim against CLM, a for-profit entity paid by Abundant Hope to make allegedly misleading advertisements about the services provided at the Attleboro Women's Health Center. The Chapter 93A claim cannot, however, be sustained against the other defendants, because Abundant Hope is a nonprofit that did not charge for its services, which advanced its pro-life mission, and its officers furthered that charitable mission.

## BACKGROUND

### I.      Factual Background.

The following facts, which are assumed true, are drawn from the amended complaint, documents fairly incorporated by reference in that pleading, and allegations admitted by the Abundant Hope defendants in their answer to the amended complaint. *See Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024) (Fed. R. Civ. P. 12(b)(6)); *Sevelitte v. Guardian Life Ins. Co. of Am.*, 55 F.4th 71, 76 (1st Cir. 2022) (Fed. R. Civ. P. 12(c)).

Four Women is a licensed clinic and ambulatory surgical center in Attleboro, Massachusetts that provides reproductive healthcare services, including birth control prescriptions, ultrasounds, and abortion care. ECF 59, ¶¶ 3, 33-37. Abundant Hope is a nonprofit crisis pregnancy center that seeks to dissuade women from obtaining abortions. *Id.* ¶¶ 4, 10, 23, 40. The three executive officer defendants—Abundant Hope's President Catherine Roman, Treasurer Nicole

Carges, and Executive Director Darlene Howard—execute that mission and fundraise for Abundant Hope. ECF 59, ¶¶ 24-27, 40; ECF 63, ¶¶ 24-26, 40. Abundant Hope's fundraising allegedly promotes its diversion of prospective patients from Four Women. ECF 59, ¶ 95.

In 2018, Abundant Hope relocated next door to Four Women and put the name "Attleboro Women's Health Center," or "AWHC" for short, on its office. *Id.* ¶¶ 6, 42, 143-44; ECF 63, ¶¶ 42, 143. Described as Abundant Hope's "medical arm," AWHC purports to furnish patients with free medical services, including ultrasounds and pregnancy consultation, testing, and diagnoses. ECF 59, ¶¶ 7, 40, 43, 52, 92; ECF 63, ¶¶ 7, 40, 43, 92. But, as the Abundant Hope defendants admit, AWHC "is not a separate corporate entity from Abundant Hope, nor is it a licensed medical provider." ECF 59, ¶ 7; ECF 63, ¶ 7.

Abundant Hope maintains a separate website for AWHC at awhc.net. ECF 59, ¶¶ 8, 44-45; ECF 63, ¶¶ 8, 44-45. It hired CLM, a for-profit marketing agency in Missouri, to manage that website and place advertisements on Google promoting AWHC to women seeking abortion care. ECF 59, ¶¶ 10, 28, 60-61, 76, 81. Like Abundant Hope, CLM aims to divert "abortion-minded women" from obtaining abortion services. *Id.* ¶¶ 10, 61. CLM drafted the language appearing on AWHC's website and in its advertisements, including those on Google. *Id.* ¶¶ 73-74; ECF 63, ¶¶ 73-74. Abundant Hope then approved the language drafted by CLM. ECF 59, ¶ 75; ECF 63, ¶ 75. In addition, CLM offers its clients various digital marketing services, including (1) paid searches that enable clients' advertisements to appear in the first few results when women in the relevant area are using a search engine to look for information on abortion or unplanned pregnancy; (2) search engine optimization, which drives internet traffic to clients' websites; (3) microtargeting of young women, single mothers, and low-income families based on their online data; and (4) geofencing, which allows clients to send targeted advertisements to women in a specific

3

geographic location. ECF 59, ¶¶ 66-72. CLM also provides Abundant Hope with the contact information of potential clients and describes the services that they are seeking based on forms that those "leads" completed on AWHC's website or elsewhere. *Id.* ¶¶ 77-80; ECF 63, ¶¶ 77-79. Since 2022, Abundant Hope has paid CLM "substantial sums" for these services. ECF 59, ¶¶ 63-65; ECF 63, ¶¶ 63-65.

Through AWHC's website and advertisements, the defendants have allegedly engaged in a false and deceptive advertising scheme designed to steer women who are seeking abortion care in the area away from Four Women. ECF 59, ¶¶ 5, 9, 82-85, 123-25. Four Women alleges three general categories of false and deceptive advertising. First, on its website and in Google advertisements, AWHC is advertised as a "Women's Health Center" that has performed hundreds of "medical" tests and appointments and that can furnish "medical services," including pregnancy testing and ultrasounds. *Id.* ¶¶ 88-92; ECF 63, ¶¶ 89-92. But AWHC does not employ an on-site licensed doctor or Advanced Practice Registered Nurse. ECF 59, ¶¶ 54-58; ECF 63, ¶¶ 54-55. Under Massachusetts law, such licensed medical professionals are required to diagnose the viability and location of a fetus. ECF 59, ¶¶ 54-58; ECF 63, ¶¶ 54-55; *see* M.G.L. c. 111, § 51; 105 Code Mass. Regs. 140.000. AWHC is not a licensed medical facility that can lawfully provide such ultrasounds or gynecological services. ECF 59, ¶¶ 7, 93-94; ECF 63, ¶¶ 7, 94.

Second, AWHC encourages women to access its services by falsely representing on its website that an ultrasound and a determination regarding viability are necessary to obtain an abortion. ECF 59, ¶¶ 96-105.

Third, AWHC's website misrepresents that AWHC provides abortion care by listing "abortion" first in the "Options" page and, on the "Abortion" page, urging women who are "thinking about abortion" to "MAKE AN APPOINTMENT." *Id.* ¶¶ 113-15; ECF 63, ¶ 115. The

4

website also includes a client testimonial describing AWHC as a "[g]reat place for women considering abortion." ECF 59, ¶ 116; ECF 63, ¶ 116. While other pages on AWHC's website include a small disclaimer at the bottom that AWHC does not perform abortions, these pages and its other advertising contain no such disclosure. ECF 59, ¶¶ 118-19; ECF 63, ¶ 119. Google advertising further implies that AWHC performs abortions because AWHC appears among the first Google search results for "abortion near me attleboro ma," with an advertisement for scheduling an appointment and links to "Abortion Cost," "Abortion Pill Info," "Abortion Clinic Info," and "Abortion Info." ECF 59, ¶¶ 121-22.

The defendants' efforts have diverted patients seeking abortion care from Four Women. *Id.* ¶¶ 86, 128, 178. Between January 2023 and August 2024, 591 patients called both AWHC and Four Women. *Id.* ¶ 128. Many women, like Jane Does 5 and 8, have unknowingly provided their contact information to Abundant Hope through AWHC's website or CLM's Google advertising. *Id.* ¶¶ 15, 140. Jane Doe 5 sought an appointment at Four Women on October 30, 2023 and, within minutes, received a call from AWHC to schedule a visit there instead. *Id.* ¶¶ 133-37; ECF 59-5, ¶¶ 2-18; ECF 63, ¶ 135. Jane Doe 8 similarly scheduled an appointment at Four Women for a medication abortion on May 6, 2024, and AWHC called her that day to persuade her to alternatively obtain its services. ECF 59, ¶¶ 138-39. AWHC also schedules appointments with callers, such as Jane Doe 1, without informing them that it does not furnish abortion care and, once on-site, offers them pamphlets falsely stating that abortion is "dangerous" in order to deter them from going to Four Women. *Id.* ¶¶ 129-30. Jane Doe 1 sought a medication abortion in March 2024 and only learned that AWHC could not perform that abortion after she attended her appointment there. *Id.* ¶¶ 152-55, 159, 162-63, 168. Jane Does 2, 3, 4, 9, and 10 had similar experiences. *Id.* ¶¶ 172-74, 176-77.

## II.    <u>Procedural History.</u>

In September 2024, Four Women brought this action against Abundant Hope, Roman, Carges, and Howard and moved for limited expedited discovery and a preliminary injunction. ECF 1, 3, 5. The initial complaint asserted violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count I); the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq*. (Count II); the Massachusetts Wiretap Act, M.G.L. c. 272, § 99 (Count III); and the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 11 (Count IV). ECF 1, ¶¶ 124-65. In October 2024, the Court permitted Four Women to conduct limited expedited discovery, including serving specific interrogatories and requests for documents and taking certain depositions. ECF 40. In December 2024, after the parties completed early discovery, the defendants moved for summary judgment. ECF 50. On January 13, 2025, Four Women filed, with leave of Court, an amended complaint. ECF 56, 59. That same day, the Court denied Four Women's motion for a preliminary injunction and the Abundant Hope defendants' motion for summary judgment. ECF 60.

The amended complaint named CLM as a new defendant and removed Four Women's prior claims under the Consumer Fraud and Abuse Act, Electronic Communications Privacy Act, and Massachusetts Wiretap Act. *See* ECF 56, 59. The operative complaint now claims that all defendants have violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count I), and M.G.L. c. 93A, § 11 (Count II). ECF 59, ¶¶ 181-201. The Abundant Hope defendants filed an answer to the amended complaint. ECF 63. CLM moved to dismiss the amended complaint for failure to state a claim. ECF 64. The Abundant Hope defendants thereafter filed a motion for judgment on the pleadings that largely adopted CLM's arguments. ECF 76. After Four Women opposed those motions and the parties submitted further briefing, the Court held a hearing and took both motions under advisement. ECF 81, 82, 86, 89, 91.

6

**STANDARD OF REVIEW**

At the outset, the parties dispute whether the defendants' motions should be reviewed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). Rule 9(b) requires parties who allege "fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." The rule applies only "where the core allegations effectively charge fraud." *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21-22 (1st Cir. 2017) (quotation marks omitted). In general, "fraud requires that the defendant made a knowingly false statement concerning a material matter that was intended to, and did in fact, induce the plaintiff's reliance and, through that reliance, created an injury." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 357 (1st Cir. 2013). But here, neither of Four Women's claims "sounds in fraud." *Lee v. Conagra Brands, Inc.*, 958 F.3d 70, 74 (1st Cir. 2020). The theory of this case is that *women* seeking reproductive healthcare allegedly relied upon the defendants' false and misleading advertisements when they mistakenly sought treatment at AWHC instead of Four Women. Four Women does not allege that *it* relied on the defendants' allegedly false and misleading statements to its detriment. Since the amended complaint's core allegations do not sound in fraud, Rule 9(b) is inapplicable, and the normal standard governing motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c) applies. *See McGrath & Co., LLC v. PCM Consulting, Inc.*, No. 11-cv-10930-DJC, 2012 WL 503629, at *7 n.1 (D. Mass. Feb. 15, 2012) (declining to apply Rule 9(b) to false advertising Lanham Act claims).

In evaluating CLM's motion to dismiss under Rule 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a

7

plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

Because the Abundant Hope defendants' motion for judgment on the pleadings under Rule 12(c) is treated "much like a Rule 12(b)(6) motion to dismiss," the Court similarly "accept[s] all of the non-moving party's well-pleaded facts as true and draw[s] all reasonable inferences in [its] favor." *Cintron v. Bibeault*, 148 F.4th 37, 46 (1st Cir. 2025) (quotation marks omitted). "[T]o survive a 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).

## DISCUSSION

The defendants seek dismissal of Four Women's claims under Chapter 93A and the Lanham Act. The Court addresses each claim in turn and then addresses the defendants' argument that the First Amendment shields them from liability on both claims.

## I.    Chapter 93A Claim.

Four Women asserts that the defendants willfully violated Chapter 93A by publishing false and misleading advertisements about AWHC's services. Section 11 of Chapter 93A prohibits "an unfair or deceptive act or practice" between those "engage[d] in the conduct of any trade or

commerce." M.G.L. c. 93A, § 11. The purpose of Chapter 93A is to "'encourage more equitable behavior in the marketplace and impose liability on persons seeking to profit from unfair practices.'" *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998) (quoting *Linkage Corp. v. Trs. of Bos. Univ.*, 425 Mass. 1, 25 (1997)). The Abundant Hope defendants argue that they cannot be liable under Chapter 93A because they are not engaged in "trade or commerce." CLM makes the same argument and further contends that Four Women fails to state a valid Chapter 93A claim against it.

A.      Abundant Hope and Its Officers.

The parties dispute whether Abundant Hope is engaged in "trade or commerce" under Chapter 93A. The terms "trade" and "commerce" are defined, in relevant part, to "include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services." M.G.L. c. 93A, §§ 1(b), 11. This language "indicates an intent that the services be distributed in exchange for some consideration or that there must be other strong indications that the services are distributed in a business context." *Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480, 493 (1986). While nonprofit organizations acting in pursuit of their charitable missions are not engaged in trade or commerce, a defendant's status as a nonprofit organization does not invariably remove it from the reach of Chapter 93A. *See Kunelius v. Town of Stow*, 588 F.3d 1, 17-18 (1st Cir. 2009); *Bos. Hous. Auth. v. Howard*, 427 Mass. 537, 539 (1998). Rather, to determine whether the challenged conduct took place in a business context, a court must consider "the nature of the transaction, the character of the parties involved, . . . the activities engaged in by the parties," and "whether the transaction [was] motivated by business or personal reasons." *Linkage*, 425 Mass. at 24 (quotation marks omitted).

The Supreme Judicial Court's ("SJC") decision in *Planned Parenthood* is directly on point. In that case, plaintiff Planned Parenthood of Massachusetts provided reproductive healthcare services, including abortions, to women in Massachusetts. 398 Mass. at 481-82. Defendant Problem Pregnancy of Worcester was a nonprofit that offered free alternatives to abortion, such as pregnancy testing and counseling, in support of its pro-life mission. *Id.* at 482, 493. Problem Pregnancy rented space on the same floor as Planned Parenthood so that people using the building's main entrance would have to pass by its office on their way to Planned Parenthood. *Id.* at 482. Intending to confuse women in order to divert them to its office, Problem Pregnancy used the initials "PP" on its front door. *Id.* at 481-83. Three women described mistakenly entering Problem Pregnancy instead of Planned Parenthood. *Id.* at 482. To challenge Problem Pregnancy's use of the "PP" initials, Planned Parenthood brought suit alleging trademark infringement under the Lanham Act, a violation of the Massachusetts antidilution statute, a common law service mark violation, and unfair and deceptive acts under Chapter 93A. *Id.* at 483. The SJC held that Problem Pregnancy's use of the letters "PP" constituted common law service mark infringement but not a Chapter 93A violation. *Id.* at 485, 493-94.[1] Because Problem Pregnancy was a nonprofit organization that did not charge for its services and its employees were pro-life advocates, the SJC reasoned, Problem Pregnancy was not engaged in "trade or commerce" under Chapter 93A. *Id.* at 493-94.

Under this controlling precedent, Abundant Hope is not engaged in "trade or commerce" and its conduct therefore falls beyond the scope of Chapter 93A. Like Problem Pregnancy, Abundant Hope opened an office next door to a reproductive healthcare facility to furnish free

---

[1] Having found common law infringement, the SJC did not reach Planned Parenthood's Lanham Act and antidilution claims. *Planned Parenthood*, 398 Mass. at 483-85 & n.6.

services, including pregnancy tests, pregnancy counseling advice, and related services. A nonprofit organization, Abundant Hope similarly has a pro-life mission and seeks "to prevent women from obtaining . . . abortion care." ECF 59, ¶ 4. According to the amended complaint, Abundant Hope effectuates this mission in part by endeavoring to divert Four Women's patients to its own office. And as in *Planned Parenthood*, Four Women asserts that its neighbor's efforts to confuse and redirect women seeking abortion care violates the Lanham Act and Chapter 93A—in this case, through alleged false advertising, in that case, through trademark infringement.

Four Women's efforts to distinguish *Planned Parenthood* are unpersuasive. While *Planned Parenthood* involved trademark infringement, not false advertising, both cases concern misleading advertisements. Problem Pregnancy was enjoined from using the letters "PP" on its door and in advertisements after the trial court found that its intent was "to confuse women" into entering its office to provide them information about abortion alternatives "in order to effectuate its [pro-life] purpose." *Planned Parenthood*, 398 Mass. at 483, 488. Here, too, the Abundant Hope defendants allegedly made false and misleading statements "designed to deceive and confuse women seeking abortion services from Four Women" in order to fulfill Abundant Hope's pro-life mission. ECF 59, ¶¶ 4, 84-85, 123. That Abundant Hope offers ultrasounds and pregnancy diagnoses, instead of simply pregnancy testing and counseling, is not a meaningful distinction between the cases. The SJC's analysis did not focus on the nature of the services provided but on the fact that Problem Pregnancy's services were furnished at no cost by its employees in pursuit of their charitable mission. *See Planned Parenthood*, 398 Mass. at 493-94; *Linkage*, 425 Mass. at 25 (citing *Planned Parenthood* for the proposition that "where employees and incorporators of [a] charitable entity were advocates for [a] pro-life position and [the] entity did not charge for its services, [the] trademark infringement claim was beyond scope of c. 93A").

Abundant Hope's use of a for-profit marketing agency does not change this calculus, because Abundant Hope contracted with CLM to carry out the organizations' shared mission. And "[i]n most circumstances, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission." *Linkage*, 425 Mass. at 26. This case is no exception. Four Women relatedly points to Abundant Hope's June 2022 letter threatening to pursue a claim under Chapter 93A as evidence that Abundant Hope is engaged in trade or commerce. ECF 59-6, at 2; ECF 59, ¶ 179. Nonprofit entities may, however, avail themselves of Chapter 93A as plaintiffs in a lawsuit even though, as in this case, they may not be subject to suit under the statute. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 192-94 (1st Cir. 2009). In any event, Abundant Hope's invocation of Chapter 93A in a letter, standing alone, is insufficient to place its activities within the reach of Chapter 93A, especially given the SJC's precedent in *Planned Parenthood*.

Four Women finally argues that because Abundant Hope "was motivated by a strong desire" to "'damage or destroy its competitor'" and then tout its successful diversion of patients from Four Women to support its fundraising efforts, it was acting in a business context. *Linkage*, 425 Mass. at 25-26 (quoting *Planned Parenthood*, 398 Mass. at 499 (Abrams, J., concurring in part and dissenting in part)). This contention relies on an argument made in Justice Abrams' partial dissent in *Planned Parenthood*. In her view, the SJC should have held that Problem Pregnancy was engaged in trade or commerce because its "distribution of services was purposefully designed to harm" Planned Parenthood's business by diverting Planned Parenthood's clients. 398 Mass. at 495-501 (Abrams, J., concurring in part and dissenting in part). But the majority in *Planned Parenthood* did not accept that view, and the SJC did not squarely adopt it in *Linkage*. Rather, *Linkage* endorsed the principle that a nonprofit organization's activities are generally beyond the scope of Chapter

12

93A when, as here, it does not charge for its services and its employees are acting as advocates for its core charitable mission. 425 Mass. at 25-26 (citing *Planned Parenthood*, 398 Mass. at 493-94); *see also Squeri v. Mount Ida College*, 954 F.3d 56, 73 (1st Cir. 2020) (citing *Planned Parenthood* as "determining that a charitable corporation, which had engaged in advertising of its services, was not engaged in trade or commerce").

Since Abundant Hope is not engaged in trade or commerce, the Chapter 93A claim against it must be dismissed. That claim must also be dismissed as to Roman, Carges, and Howard because they have allegedly controlled and directed Abundant Hope in furtherance of its charitable mission. ECF 59, ¶¶ 27, 40; *see Squeri*, 954 F.3d at 74 (affirming dismissal of Chapter 93A claims against a nonprofit and its officers where their activities furthered the nonprofit's mission); *Disabled Am. Veterans, Cape Cod Chapter 96 ex rel. Kooyman v. Trott*, No. 2011-cv-4677-BLS1, 2012 WL 3263925, at *5 (Mass. Super. May 30, 2012) (similar); *Birbiglia v. St. Vincent Hosp.*, No. CA911280, 1994 WL 878836, at *5 (Mass. Super. Dec. 29, 1994) (finding no Chapter 93A violation post-trial where defendant doctors "were full-time employees of the Hospital acting in furtherance of its primary charitable purpose"), *aff'd sub nom. Birbiglia v. St. Vincent Hosp., Inc.*, 427 Mass. 80 (1998). The Abundant Hope defendants' motion for judgment on the pleadings is accordingly granted as to Count II.

B.    Choose Life Marketing.

CLM separately seeks dismissal of the Chapter 93A claim against it. To bring a claim under Section 11, Four Women must allege that CLM is "engaged in trade or commerce" and that the parties' relationship involves an "interaction [that] is 'commercial' in nature." *Linkage*, 425 Mass. at 22-23. Four Women must also plausibly allege "(1) that [CLM] engaged in an unfair method of competition or committed an unfair or deceptive act or practice . . . ; (2) a loss of money or property

suffered as a result; and (3) a causal connection between the loss suffered and [CLM's] unfair or deceptive method, act, or practice." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014). CLM disputes each of these elements.

      1.   <u>Trade or Commerce.</u>

Like Abundant Hope, CLM argues that it is not engaged in "trade or commerce" as required by Chapter 93A. In its telling, in creating the advertisements and website content for AWHC that, as alleged, are false and misleading, CLM is merely acting to further Abundant Hope's charitable mission. But there is an obvious and important distinction between Abundant Hope and CLM: CLM is a for-profit entity that has been paid "substantial sums" by Abundant Hope to advertise AWHC's services, while Abundant Hope is a nonprofit entity that provides its services free of charge. ECF 59, ¶¶ 10, 28, 40, 61, 65; ECF 63, ¶¶ 40, 65. Recall that, as explained in *Planned Parenthood*, the definition of "trade or commerce" in Chapter 93A "indicates an intent that the services be distributed in exchange for some consideration or that there must be other strong indications that the services are distributed in a business context." 398 Mass. at 493. And here, there is no dispute that Abundant Hope paid CLM substantial consideration for its advertising and related services; Abundant Hope admitted as much in its answer. ECF 63, ¶¶ 63-65. CLM is therefore operating in a business context by receiving payment for its advertising services, and its activities fall squarely within the definition of "trade or commerce" under Chapter 93A. *See Wheatley v. Massachusetts Insurers Insolvency Fund*, 465 Mass. 297, 303 (2013) (business of "traditional, for-profit" insurer "clearly" constituted "trade or commerce").

CLM has two principal counterarguments. First, it contends that it cannot be subject to Chapter 93A liability because its advertisements were in furtherance of Abundant Hope's core mission. But the SJC has never held that for-profit entities are immunized from liability under

Chapter 93A whenever their profit-making activities can be said to further the core mission of a nonprofit organization. Such a position would unduly limit the reach of Chapter 93A liability, contravening the Legislature's intent to promote more equitable behavior in the marketplace by those acting in a business context. *See Linkage*, 425 Mass. at 25. Abundant Hope is not engaged in trade or commerce because, like Problem Pregnancy in *Planned Parenthood*, it is not paid for its services and its employees are acting pursuant to its charitable mission. CLM's employees may well share Abundant Hope's pro-life values, but CLM is paid for its advertising services. And CLM is named as a defendant because of its own allegedly deceptive conduct—namely, creating the content of the Google advertisements for AWHC and drafting the language for AWHC's website. ECF 59, ¶¶ 73-74; ECF 63, ¶¶ 73-74. When a profitmaking business inserts its own false and misleading advertisements into the marketplace in exchange for consideration, it is engaged in trade or commerce, even if it shares a charitable vision with a nonprofit organization.

Second, and relatedly, CLM argues that if the Court determines that it is engaged in trade or commerce when Abundant Hope is not, CLM would impermissibly be subject to something akin to aiding and abetting liability under Chapter 93A. But under Massachusetts law, one entity's participation in another's tortious conduct can lead to liability under Chapter 93A, even if the other entity is not subject to Chapter 93A liability. In *Hanover Insurance Company v. Sutton*, for example, the Appeals Court considered whether a business could be liable under Chapter 93A when its employee breached his fiduciary duty to his former employer. 46 Mass. App. Ct. 153, 172-74 (1999). The Court affirmed the trial court's conclusion that the business could be subject to liability for aiding and abetting its employee's fiduciary duty breach. *Id.* at 173. The fact that the employee could not be liable to his former employer under Chapter 93A was of no moment, because the business's participation in its employee's violation of his duty alone was sufficient to

bring it within the ambit of Chapter 93A. *Id.* at 173-74; *accord Augut, Inc. v. Aegis, Inc.*, 409 Mass. 165, 172 (1991); *Beninati v. Borghi*, 90 Mass. App. Ct. 556, 566-67 (2016); *see also Nova Assignments, Inc. v. Kunian*, 77 Mass. App. Ct. 34, 44 n.7 (2010) ("[A]n individual acts in a business context and is a proper defendant for c. 93A purposes if he works closely with and knowingly aids and abets a party in undertaking unfair and deceptive business practices." (quotation marks omitted)). CLM is, accordingly, engaged in trade or commerce in connection with its alleged conduct in this case.

### 2. Commercial Interaction.

CLM next contends that this case involves no interaction between it and Four Women that is commercial in nature. The "commercial interaction" inquiry is typically satisfied unless the underlying claims relate to "parties in a strictly private transaction, where the undertaking is not 'in the ordinary course of a trade or business.'" *Linkage*, 425 Mass. at 23 n.33 (quoting *Lantner v. Carson*, 374 Mass. 606, 608 (1978)); *see Kunelius*, 588 F.3d at 16 ("Chapter 93A does not 'reach strictly private transactions such as the isolated sale of a private home." (quoting *Begelfer v. Najarian*, 381 Mass. 177, 190 (1980))). Because claims alleging unfair trade practices apply to competitive commercial relationships as well as direct business transactions, "[p]arties need not be in privity for their actions to come within the reach of c. 93A." *Kattar v. Demoulas*, 433 Mass. 1, 14-15 (2000); *see In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d at 192-93 (privity between parties not required where "'the parties are engaged in more than a minor or insignificant business relationship'" (quoting *Standard Reg. Co. v. Bolton-Emerson Inc.*, 38 Mass. App. Ct. 545, 551 (1995))); *Cash Energy, Inc. v. Weiner*, 768 F. Supp. 892, 894 (D. Mass 1991) ("[T]he statutory phrase 'unfair method of competition' suggests a competitive relationship[.]" (quoting M.G.L. c. 93A, § 11)). Thus, "[t]he 'commercial transaction' threshold is passed" under

16

Chapter 93A "if the parties to the dispute are not parties in the same venture." *Linkage*, 425 Mass. at 28 n.37.

Under this precedent, the alleged interactions between Four Women and CLM constitute a commercial interaction. The entities' competitive marketplace relationship is not part of the same venture or "a strictly private transaction." *Id.* at 23 n.33. And their market relationship is more than that of minor or insignificant competitors. *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d at 192-94. CLM, a marketing agency, was paid to manage AWHC's website and draft advertising content that was later publicly disseminated. CLM would also provide "leads" to Abundant Hope of patients seeking abortions who were later contacted to set up appointments. This arrangement has lasted for several years and is central to Abundant Hope's mission of targeting women interested in abortion, counseling them on alternatives, and diverting them from abortion care at Four Women. Over this period, at least 591 women seeking Four Women's reproductive health services have allegedly been contacted by Abundant Hope likely in part because of CLM's leads. Taken together, the longevity of CLM's services for Abundant Hope, the significant sums spent on the advertisements in Massachusetts, and CLM's aim to divert women from Four Women's services plausibly suggest that CLM's injection of advertisements into the Massachusetts reproductive services market is commercial in nature under Chapter 93A.

### 3. Deceptive Acts or Practices.

CLM next contends that Four Women fails to allege any unfair or deceptive act. Conduct is unfair under M.G.L. c. 93A, § 2 if it is "(1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) cause[d] substantial injury to competitors or other business people." *Heller Fin. v. Ins. Co. of N. Am.*, 410 Mass. 400, 408 (1991). Regarding conduct targeted toward potential customers, "[a]n

act or practice is deceptive if it 'has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted.'" *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 71 (1st Cir. 2020) (quoting *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 396 (2004)). Thus, a party may violate Chapter 93A "through false or misleading advertising." *Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312, 320 (2018). Further, a Chapter 93A claim does not require proof that the defendant intended to deceive, *Swanson v. Bankers Life Co.*, 389 Mass. 345, 349 (1983), "or even knowledge on the part of the defendant that the representation was false," *Aspinall*, 442 Mass. at 394.

The amended complaint adequately alleges that CLM created false or misleading content for AWHC's website and Google advertisements published on Abundant Hope's behalf. Designed to steer women seeking abortions away from Four Women and into AWHC's office, CLM's advertisements allegedly misrepresented AWHC's ability to provide medical services like pregnancy testing and ultrasounds, because AWHC is not licensed as a clinic to perform such services and does not have staff on site able to perform those services. In drafting the content for AWHC's website and implementing its advertising campaign, CLM also allegedly represented, falsely, that women need an ultrasound and a determination regarding viability before obtaining an abortion. And by listing abortion as an "Option" on AWHC's website, describing AWHC as a "[g]reat place for women considering abortion," ECF 59, ¶ 116; ECF 63, ¶ 116, and omitting the disclaimer from certain webpages that AWHC does not perform abortions, CLM also allegedly misrepresented AWHC's ability to offer abortion care to patients seeking abortions. These allegations suggest that CLM engaged in deceptive advertising by seeking "to mislead consumers, acting reasonably under the circumstances." *Tomasella*, 962 F.3d at 71 (quotation marks omitted). At a minimum, CLM's deliberate targeting of women seeking abortions with advertisements

18

misrepresenting the services AWHC can provide plausibly "create[s] an over-all misleading impression through failure to disclose material information." *Aspinall*, 442 Mass. at 395.

CLM disputes Four Women's characterization of its advertisements as misrepresentations, claiming that all of the content it produced for Abundant Hope was literally true. Whether or not that is so, the truthfulness of a representation is not dispositive of Chapter 93A liability. Impermissibly deceptive "advertising may consist of a half truth, or even may be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information." *Id.*; *see also Mack v. Cultural Care Inc.*, No. 19-cv-11530-ADB, 2020 WL 4673522, at *8 (D. Mass. Aug. 12, 2020) (explaining that a business may violate Chapter 93A "through an omission" and collecting cases). Four Women's allegations of deceptive advertising easily clear the bar for dismissal.

4.  Harm and Causation.

CLM finally asserts that Four Women has not shown that it was harmed by CLM's actions or that CLM's allegedly deceptive advertising was causally related to any harm. To state a viable claim under Chapter 93A, the plaintiff must allege "a 'separate, identifiable harm arising from the" defendant's conduct "that is distinct 'from the claimed unfair or deceptive conduct itself.'" *Bellermann v. Fitchburg Gas & Elec. Light Co.*, 475 Mass. 67, 73 (2016) (quoting *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 503 (2013)). The plaintiff must identify real damages, not mere speculative harm. *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017).

Viewed in the light most favorable to Four Women, the amended complaint adequately alleges that Four Women was harmed by CLM's deceptive conduct. That pleading asserts that the defendants, including CLM, have "misled and diverted patients attempting to receive services at Four Women," "likely diverted countless other women seeking reproductive healthcare at Four

Women," and "harm[ed] Four Women through diverting its patients." ECF 59, ¶¶ 14, 178-79. Four Women alleges that 591 women who contacted it between January 2023 and August 2024 were separately messaged by Abundant Hope, that CLM's services include "lead" generation for Abundant Hope, and that "[o]n a regular basis, women who have scheduled appointments with Four Women do not show up for their appointments." *Id.* ¶¶ 77, 128, 178. Four Women bolsters its claim of patient diversion through deception with allegations about multiple women who sought abortion care at Four Women but, as a result of confusion, ended up at AWHC. *Id.* ¶¶ 86, 133-40, 152-55. And Four Women further alleges that its reputation has been damaged by the defendants' misrepresentations. *Id.* ¶¶ 90, 187. At the pleading stage, these allegations collectively give rise to the plausible inference that Four Women has suffered identifiable harm from CLM's deceptive advertising on behalf of Abundant Hope. *See Aspinall*, 442 Mass. at 402 (finding viable Chapter 93A claim of deceptive advertising where defendant "falsely labeled or, at least, created the over-all misleading impression that all smokers would receive 'lowered tar and nicotine'"). The Court will, accordingly, deny CLM's motion to dismiss the Chapter 93A claim.

## II.   Lanham Act Claim.

Four Women also claims that the defendants violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by engaging in false advertising. The statute prohibits any person, "in commercial advertising or promotion," from making a "false or misleading description" or "representation of fact" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To state a false advertising claim under the Lanham Act, Four Women must allege that "(1) the defendant[s] made a false or misleading description of fact or representation of fact in a commercial advertisement about [their] own or another's product; (2) the misrepresentation is material, in that

20

it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant[s] placed the false or misleading statement in interstate commerce; and (5) [Four Women] has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir. 2002). The defendants contend that Four Women's claim falters at the first and second elements, but do not seek dismissal on the basis of the remaining three elements.

>    A.    Commercial Advertising or Promotion.

To satisfy the first element of "commercial advertising or promotion," the "representation must (a) constitute commercial speech (b) made with the intent of influencing potential customers to purchase the speaker's goods or services (c) by a speaker who is a competitor of the plaintiff in some line of trade or commerce and (d) disseminated to the consuming public in such a way as to constitute 'advertising' or 'promotion.'" *Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir. 2003). In the defendants' view, the first three factors are not met.

Commercial speech is "usually defined as speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). But whether such speech qualifies as commercial speech involves "a multi-factor analysis." *Clemente Props., Inc. v. Pierluisi-Urrutia*, 165 F.4th 1, 30 (1st Cir. 2026) (citing *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115-18 (9th Cir. 2021)). That analysis considers whether: (1) the speech is an advertisement, (2) the speech refers to a specific product or service, and (3) the speaker has an economic motivation. *Ariix*, 985 F.3d at 1116. Each factor need not be present to find commercial speech, but the combination of all three factors "provides strong support" for such a finding. *Bolger*

21

*v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 & n.14 (1983). The defendants dispute only the "economic motivation" prong.

The amended complaint adequately alleges that the defendants had an economic motive and thus engaged in commercial speech. As the defendants see it, their speech is not commercial because Abundant Hope is a nonprofit organization that provides free services at AWHC. But, as a for-profit business, CLM has a clear economic incentive and is paid to promote AWHC's services, including through Google advertisements. As for Abundant Hope, AWHC's provision of free services and its status as a nonprofit organization are not dispositive. The Ninth Circuit, for example, has concluded that commercial speech is not limited to circumstances where clients pay for services, because a nonprofit organization's promotional advertising of services can directly relate to its "ability to fundraise and, in turn, to buy more advertisements." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1273 (9th Cir. 2017). Its analysis relied heavily on *Fargo Women's Health Organization, Inc. v. Larson*, a case in which the North Dakota Supreme Court concluded that a nonprofit pregnancy center's communications constituted commercial speech because its advertisements were "placed in a commercial context and [we]re directed at the providing of services rather than toward an exchange of ideas." 381 N.W.2d 176, 181 (N.D. 1986). The center's "advertisements constitute[d] promotional advertising of services through which patronage" was solicited, the *Larson* Court reasoned, "and in that respect constitute[d] classic examples of commercial speech." *Id.*

The Court finds the reasoning of these cases persuasive. Here, Abundant Hope has paid CLM to advertise AWHC as a "Women's Health Center" that can perform medical services, including pregnancy testing and ultrasounds, even though it is not licensed as a medical facility and allegedly lacks the requisite medical professionals to do so. Abundant Hope's paid promotion

of those services included $38,846, or nearly 17% of its total functional expenses, in 2022 alone. ECF 59, ¶ 64; ECF 63, ¶ 64. To further divert patients from Four Women, Abundant Hope also allegedly misrepresents that AWHC provides abortion care and that an ultrasound and a viability determination are needed for an abortion. And Abundant Hope promotes its diversion of patients from Four Women and AWHC's provision of free services in its fundraising. As alleged, Abundant Hope thus uses its advertising to drive fundraising, allowing for more advertising, more diversion of Four Women's patients, and new clients. Because Abundant Hope "has a direct economic stake in the provision of its . . . service[s]" and advertises those services "in the hopes of realizing an economic gain" through fundraising "rather than merely informing the public or pursuing its ideological views, it may reasonably be viewed as economically motivated." *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 259 (4th Cir. 2017). The Court therefore concludes that CLM and Abundant Hope's advertisements constitute commercial speech. *Compare First Resort*, 860 F.3d at 1276 (advertisements for free medical services were commercial speech because, to provide such "services for free, [plaintiff] engage[d] in fundraising efforts which [were] furthered, at least in part, by [its] ability to attract new clients"), *with Nat'l Inst. of Fam. & Life Advocs. v. James*, 160 F.4th 360, 377 (2d Cir. 2025) (finding noncommercial speech where plaintiffs did not "gain other types of economic benefits by engaging in this speech, such as . . . a capital increase through fundraising").

Four Women also adequately alleges that the defendants' representations were made with the intent of influencing potential customers to purchase the services offered at AWHC. The defendants contend that their speech was not intended to influence customers to *purchase* AWHC's services because those services were furnished for free. They do not, however, cite any case law to support the proposition that "to purchase" requires a monetary exchange. *Podiatrist*, 332 F.3d

23

at 19. Nor has the First Circuit distinguished between free and paid services. Other courts have, as explained, found that the cost of services is not determinative. *See First Resort*, 860 F.3d at 1273; *Larson*, 381 N.W.2d at 180-81.

Finally, the amended complaint plausibly alleges that Four Women and the defendants are commercial competitors.[2] Located next door to each other, Four Women and Abundant Hope both allegedly provide ultrasounds and pregnancy testing and thus compete for the same patients seeking reproductive healthcare. *See McGrath & Co.*, 2012 WL 503629, at *5 (finding competitors where parties "offer[ed] nearly identical project management services for companies engaged in major construction projects"). The fact that Abundant Hope furnishes those services for free is not dispositive. As discussed, Abundant Hope, through CLM, allegedly uses microtargeting and other marketing techniques to promote patronage at AWHC, and its fundraising touts its successful diversion of women seeking abortions. *See First Resort*, 860 F.3d at 1273. With respect to CLM, the amended complaint alleges that CLM and Abundant Hope share a "central mission" of "targeting women to prevent them from receiving abortion and abortion-related care." ECF 59, ¶¶ 10, 84. And in exchange for payment from Abundant Hope, CLM executes that mission by creating advertisements and website content that aims to divert women seeking abortion care in Massachusetts away from Four Women. These allegations plausibly suggest that Four Women and the defendants are competitors in the market for reproductive healthcare services. Four Women has, accordingly, adequately alleged the first element of its Lanham Act claim.

---

[2] The First Circuit recently noted that the Supreme Court "*may* have abrogated any requirement that the defendant be a competitor of the plaintiffs." *Clemente Props.*, 165 F.4th at 30 n.28; *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 123 n.1 (2014). Since Four Women makes no such argument, the Court assumes, without deciding, that this factor is required.

24

B.      Materiality.

To satisfy the second element, materiality, a plaintiff must plausibly allege that a defendant's statement is either "literally false" or "true or ambiguous yet misleading." *Cashmere*, 284 F.3d at 311. Whether the statement is literally false or misleading "is typically for the factfinder to determine." *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 486-87 (1st Cir. 2022). "[M]ateriality focuses on whether the false or misleading statement is likely to make a difference to purchasers." *Cashmere*, 284 F.3d at 312 n.10. A literally false statement does not "require proof of confusion." *Clemente Props.*, 165 F.4th at 14. In contrast, for a misleading statement, the plaintiff must also allege that the statement "is likely to mislead and confuse consumers into believing a false . . . representation of fact" and "show how consumers have actually reacted to the challenged advertisement, rather than merely demonstrating how they could have reacted." *Azurity Pharms.*, 45 F.4th at 487 (quotation marks omitted).

As discussed in connection with the Chapter 93A claim, Four Women alleges three categories of statements of the defendants that are, at a minimum, misleading. Abundant Hope and the individual defendants admit that AWHC is not "a licensed medical provider" or "facility" and "has never been licensed by the Massachusetts Department of Public Health to provide medical care." ECF 59, ¶¶ 7, 59, 94, 198; ECF 63, ¶¶ 7, 59, 94, 198. They further admit that they identify AWHC as Abundant Hope's "medical" arm that furnishes "medical" services; promote AWHC as providing "medical appointments and medical tests" on its website; and advertise elsewhere, including on Abundant Hope's website, that AWHC provides "medical" services to women, including pregnancy testing and ultrasounds. ECF 59, ¶¶ 7, 50, 89, 92; ECF 63, ¶¶ 7, 50, 89, 92. These statements give the mistaken impression that AWHC is a medical provider that lawfully performs the identified medical procedures. Likewise, as alleged, AWHC's website misleadingly

25

suggests that an ultrasound and a determination regarding viability are necessary preconditions to obtaining an abortion, and misleadingly suggests that AWHC provides abortion care. For the same reasons these alleged representations are plausibly deceptive under Chapter 93A, they are plausibly misleading under the Lanham Act. *See Azurity Pharms.*, 45 F.4th at 487 ("The elements of a Chapter 93A claim overlap with those of a Lanham Act false advertising claim." (quotation marks omitted)).

The amended complaint also alleges how women have "actually reacted to the challenged advertisement[s]." *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 33 (1st Cir. 2000). Jane Doe 9, for instance, went to AWHC for an abortion and only learned that it does not provide abortion care while she was receiving an ultrasound there. ECF 59, ¶ 176. After viewing AWHC's online advertising, Jane Doe 1 also thought that AWHC was the Attleboro clinic that provided abortions and therefore scheduled an appointment there. *Id.* ¶¶ 152-54. These allegations, among others, give rise to the inference that the defendants' misrepresentations were material, as they likely influenced women to contact AWHC instead of Four Women. *See Cashmere*, 284 F.3d at 313 ("[P]laintiffs are not required to present evidence that defendants' misrepresentation actually influenced consumers' purchasing decisions, but that it was *likely* to influence them."). In addition, Four Women alleges that the defendants' advertisements are "designed to deceive" women seeking abortion care and other reproductive healthcare services, and that this "deception is calculated to deceive women seeking abortion care to delay them beyond the recommended time for a medication abortion." ECF 59, ¶¶ 11, 105, 123. For example, once at AWHC, Jane Doe 1 allegedly received medically inaccurate information about abortions and was told, incorrectly, that she was ineligible for a medication abortion. *Id.* ¶¶ 155-71. These allegations, among others, suggest that "the defendant[s] acted with an intention to deceive." *Am. Bd. of*

26

*Internal Med. v. Salas Rushford*, 114 F.4th 42, 66 (1st Cir. 2024).[3] Accordingly, Four Women states a valid claim against Abundant Hope and CLM under the Lanham Act.

C.    Individual Defendants' Liability.

Roman, Carges, and Howard separately argue that Four Women fails to allege that they specifically violated the Lanham Act. This argument is belied by the factual allegations in the amended complaint and their own admissions. Together with Abundant Hope and CLM, the individual defendants have allegedly developed a false and deceptive advertising scheme to divert patients from Four Women. ECF 59, ¶ 5. These defendants have also admitted to advertising on Google that AWHC provides "medical" services even though it is an unlicensed facility. *Id.* ¶¶ 41, 59, 91-92, 94, 198; ECF 63, ¶¶ 41, 59, 91-92, 94, 198. Given their role in the advertising scheme, the individual defendants may be held personally liable under the Lanham Act. *See Am. Bd. of Internal Med.*, 114 F.4th at 65-66 (affirming dismissal of Lanham Act false advertising claim against corporate officers where plaintiff did not allege a false or misleading statement).

Beyond these allegations and admissions, the individual defendants may also be held liable as officers of Abundant Hope. The parties agree that "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the [illegal] activity is personally liable" for violating the Lanham Act. *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1161 (11th Cir.

---

[3] The defendants argue that Four Women needed to allege that they knowingly or recklessly made these false or misleading statements. But neither the Lanham Act nor the First Circuit imposes that requirement. *See Cashmere*, 284 F.3d at 310-11; 15 U.S.C. § 1125(a)(1)(B). The Second, Third, Eighth, and Eleventh Circuits have also recognized that "no proof of intent or willfulness is required to establish a violation of [the] Lanham Act . . . for false advertising." *Vector Prods., Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1319 (11th Cir. 2005) (collecting cases); *accord AMCO Ins. Co. v. Inspired Techs., Inc.*, 648 F.3d 875, 882 (8th Cir. 2011); *see also Nestlé Purina PetCare Co. v. Blue Buffalo Co.*, No. 14-cv-859-RWS, 2015 WL 1782661, at *5-6 (E.D. Mo. Apr. 20, 2015) (explaining that the Lanham Act was amended to remove a "knowing" element). In any event, Four Women alleges that the defendants made false and misleading statements in a manner "calculated to deceive women seeking abortion care." ECF 59, ¶ 105.

2022) (quotation marks omitted); *see* ECF 76-1, at 5; ECF 82, at 15; *cf. Marks v. Polaroid Corp.*, 237 F.2d 428, 435 (1st Cir. 1956) (individual liable where he "was the moving, active conscious force behind [the patent] infringement"). As alleged, "Roman, Carges, and Howard have controlled and directed the actions of Abundant Hope," and each of them "play[s] a leadership role in developing and executing Abundant Hope's mission." ECF 59, ¶¶ 27, 40. These allegations are sufficient to plausibly claim that Roman, Carges, and Howard "actively participated as a moving force in the decision to engage in the [false advertising], or otherwise caused the [false advertising] as a whole to occur." *Edmondson*, 43 F.4th at 1164 (quotation marks omitted). The Lanham Act claim will not be dismissed as to Roman, Carges, and Howard.

### III.   <u>First Amendment Protection.</u>

Finally, the defendants argue that Four Women's claims are barred by the First Amendment. Though the First Amendment provides broad protection to speech, "'commercial speech' is entitled to . . . protection somewhat less extensive than that afforded to 'noncommercial speech.'" *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 637 (1985). And it is well settled that the First Amendment does not protect misleading commercial speech or deceptive commercial advertising. *See, e.g.*, *Bates v. State Bar of Arizona*, 433 U.S. 350, 383 (1977) ("Advertising that is false, deceptive, or misleading of course is subject to restraint."); *Fanning v. Fed. Trade Comm'n*, 821 F.3d 164, 174 (1st Cir. 2016) (same); *In re Willis Furniture Co.*, 980 F.2d 721, at *1 (1st Cir. 1992) (per curiam) (same). In *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York*, for example, the Supreme Court explained that because of the informational function of advertising in commercial speech, "[t]he government may ban forms of communication more likely to deceive the public than to inform it." 447 U.S. 557, 563 (1980); *see also Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,*

28

*Inc.*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake.").

The defendants contend that the First Amendment shields them from liability on Four Women's Chapter 93A and Lanham Act claims because, as they see it, those claims improperly seek to suppress their pro-life viewpoint. This is a mischaracterization of the amended complaint. Four Women's claims do not target any speech the defendants wish to make, or have made, about their pro-life viewpoint or any of their views about the propriety of abortion. Rather, the claims are narrowly addressed to AWHC's advertisements and website content that, as alleged, contain false or misleading information and divert women seeking abortion care from Four Women. Where, as here, a plaintiff plausibly alleges that the defendant engaged in commercial speech through false or misleading advertisements, the First Amendment does not provide refuge from claims under the Lanham Act or Chapter 93A. *See First Resort*, 860 F.3d at 1272-74 (city ordinance regulating false or misleading advertising by crisis pregnancy centers was facially valid because such advertising is "afforded no constitutional protection"); *Commonwealth v. Source One Assocs., Inc.*, 436 Mass. 118, 127 n.11 (2002) ("[E]ven if the sale of private financial information was protected by commercial free speech, the defendants would not be entitled to protection under the First Amendment to the United States Constitution, because they used deceptive and unlawful conduct to obtain this information."); *Planned Parenthood*, 398 Mass. at 494-95 (citing via *cf. Larson*, 381 N.W.2d at 181).[4]

---

[4] The defendants' reliance on cases involving government-compelled speech is misplaced, because Four Women is not a government entity and it challenges only false or misleading advertising. *See, e.g.*, *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 761, 766, 778 (2018) (California statute requiring pro-life pregnancy centers to communicate information about abortion accessibility likely abridged their First Amendment rights because it constituted a content-based command that they "speak a particular message" to which they were opposed).

## CONCLUSIONS AND ORDERS

For the foregoing reasons, CLM's motion to dismiss, ECF 64, is DENIED. The Abundant

Hope defendants' motion for judgment on the pleadings, ECF 76, is GRANTED with respect to

Count II but DENIED as to Count I.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: March 26, 2026

30