**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| FOUR WOMEN HEALTH SERVICES, LLC,<br><br>            Plaintiff,<br><br>v.<br><br>ABUNDANT HOPE PREGNANCY RESOURCE CENTER INC., d/b/a ATTLEBORO WOMEN'S HEALTH CENTER, CATHERINE ROMAN, NICOLE CARGES, DARLENE HOWARD, and CHOOSE LIFE MARKETING, LLC,<br><br>            Defendants. | Civil Action No: 1:24-cv-12283-JEK |

**PLAINTIFF'S OPPOSITION TO DEFENDANT
<u>CHOOSE LIFE MARKETING'S MOTION FOR RECONSIDERATION</u>**

Defendant Choose Life Marketing, LLC ("CLM") moves on two grounds for reconsideration of this Court's March 26, 2026 Order (the "Order") (ECF 94) denying CLM's motion to dismiss Four Women Health Services, LLC's ("Four Women") lawsuit in its entirety. CLM's motion should be denied, as neither of its arguments satisfies the demanding standard for reconsideration.

First, CLM asserts that the U.S. Supreme Court's March 31, 2026 decision in *Chiles v. Salazar*, 146 S. Ct. 1010 (2026), constitutes an intervening change in controlling law. That argument is predicated on mischaracterization and misapplication of *Chiles*. In *Chiles*, the Court addressed the First Amendment protections applicable to a licensed medical professional's talk therapy. *Chiles* did not concern advertising or commercial speech, much less false and deceptive advertising. Nor did *Chiles* purport to alter the law governing false and deceptive advertising on which this Court's Order soundly rests, let alone rewrite the Lanham Act and Chapter 93A entirely, as CLM's motion would require.

*Chiles* simply has no bearing on Four Women's case, which targets Defendants' false and deceptive advertising that misleads women into believing that Abundant Hope Pregnancy Resource Center Inc. ("Abundant Hope") provides services it does not and cannot lawfully provide. This case is not about talk therapy. CLM is a paid advertising firm, and Four Women's claims against it arise from its false and deceptive advertising. *Chiles* is simply inapposite.

Second, CLM claims that this Court committed a "manifest error" by purportedly "overlooking" its arguments that claims relating to the abortion-breast cancer link and danger in ectopic pregnancies must be dismissed. This argument, too, falls flat. CLM merely reiterates its failed arguments; neither of which is sufficiently material to warrant the extraordinary remedy of reconsideration.

1

## RELEVANT PROCEDURAL HISTORY

Four Women's claims against CLM, a for-profit advertising agency, arise from CLM's paid role in advertising purported "medical services" provided by "Attleboro Women's Health Center" ("AWHC"), an unlicensed, fake clinic and the so-called "medical arm" of Abundant Hope. ECF 59.  Four Women asserted claims under the Lanham Act and Chapter 93A for CLM's false and misleading statements in online advertising indicating that Abundant Hope provides certain medical services that Abundant Hope does not or cannot lawfully provide.  *Id.*  On March 14, 2025, CLM moved to dismiss Four Women's claims against it, arguing those claims were barred by the First Amendment, citing Abundant Hope's anti-abortion mission.  *See* ECF 64, 68 at 20-28.

On March 26, 2026, following extensive briefing and argument, this Court disagreed and issued a 30-page order denying CLM's motion in its entirety.  ECF 94.  The Court's Order contains three conclusions relevant to CLM's instant motion.

First, this Court concluded that "CLM and Abundant Hope's advertisements constitute commercial speech."  *Id.* at 23.  The Court explained that "Abundant Hope has paid CLM to advertise AWHC as a 'Women's Health Center' that can perform medical services, including pregnancy testing and ultrasounds, even though it is not licensed as a medical facility and allegedly lacks the requisite medical professionals to do so."  *Id.* at 22.  With CLM in particular, the question was not a close one, as "CLM has a clear economic incentive and is paid to promote AWHC's services."  *Id.*

Second, the Court concluded that Four Women had "adequately allege[d] that CLM created false or misleading content for AWHC's website and Google advertisements published on Abundant Hope's behalf."  *Id.* at 18.  Four Women identified multiple categories of statements in such advertising that plausibly constituted false or misleading content.  *See id.* at 18, 25-26.  For example, the Court noted that CLM's advertisements (1) "misrepresent[] AWHC's ability to

2

provide medical services like pregnancy testing and ultrasounds, because AWHC is not licensed as a clinic to perform such services and does not have staff on site able to perform those services," *id.* at 18; *see id.* at 25; and (2) "misleadingly suggest[] that AWHC provides abortion care," which, no one disputes, it does not provide, *id.* at 26; *see id.* at 18.  These false statements undergird both of Four Women's claims against CLM.

Finally, this Court specifically rejected CLM's argument that the First Amendment "shields them from liability on Four Women's Chapter 93A and Lanham Act claims because, as [CLM] see[s] it, those claims improperly seek to suppress their pro-life viewpoint." *Id*. at 29.  The Court explained:

> This is a mischaracterization of the amended complaint.  Four Women's claims do not target any speech the defendants wish to make, or have made, about their pro-life viewpoint or any of their views about the propriety of abortion.  Rather, the claims are narrowly addressed to AWHC's advertisements and website content that, as alleged, contain false or misleading information and divert women seeking abortion care from Four Women.

*Id.*

On April 23, 2026, CLM filed both the instant motion, pursuant to Fed. R. Civ. P. 59(e), to reconsider the Court's Order, ECF 97, and its Answer and Counterclaim, ECF 98.

CLM's Answer reinforces the Court's conclusions in its Order.  CLM admits it is a for-profit marketing agency that was paid by Abundant Hope for the marketing and advertising services it provided to promote AWHC.  ECF 98 ¶¶ 60-61, 63-65.  CLM admits it creates, drafts content for, and maintains AWHC's website and Google advertisements, *id.* ¶¶ 60, 73-76, and that the AWHC Website advertises that AWHC "provides medical appointment and medical tests," including ultrasounds, *id.* ¶¶ 89, 92, even though Abundant Hope itself has admitted that it is not a licensed medical clinic, nor is its fictional "medical" arm, AWHC, ECF 63 ¶¶ 7, 59, 94.  CLM further admits that:

3

Abundant Hope works with Choose Life Marketing *solely* to promote the so-called "medical" services provided under the "Attleboro Women's Health Center" name. It has not engaged Choose Life Marketing to create content for the Abundant Hope website or promote any other activity Abundant Hope provides, like diaper banks, through Google advertisements.

ECF 98 ¶ 81 (emphasis added).

Despite these admissions, CLM seeks this Court's reconsideration of its Order.

## ARGUMENT

A motion for reconsideration "is an extraordinary remedy which should be used sparingly." *Cruz-Cedeño v. Vega-Moral*, 150 F.4th 1, 9 (1st Cir. 2025) (quoting *City of Miami Firefighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 36 (1st Cir. 2022)). "Indeed, the Supreme Court has advised, 'courts should be loathe to [reconsider orders] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" *Courtemanche v. Motorola Sols., Inc.*, 793 F. Supp. 3d 279, 283 (D. Mass. 2025) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).[1] Such a motion is not a "vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). "Mere disagreement with the reasoning or outcome of a prior order is not an adequate basis for reconsideration and a motion to reconsider a non-final order cannot be used simply to advance arguments that could have . . . been presented to the district court previously." *Mazza v. City of*

---

[1] CLM's invocation of Rule 59(e) in this motion is improper. Although the Court has discretion to entertain CLM's motion under its "inherent power to reconsider its interlocutory orders," *Fernandez-Vargas v. Pfizer*, 522 F.3d 55, 61 n.2 (1st Cir. 2008), it is "well established" that reconsideration under Rule 59(e) is not available where a court denies a motion to dismiss, as that rule applies only to final judgments. *See Nieves-Luciano v. Hernandez-Torres*, 397 F.3d 1, 4 (1st Cir. 2005) ("Rule 59(e) does not apply to motions for reconsideration of interlocutory orders.").

*Bos.*, 780 F. Supp. 3d 325, 330 (D. Mass. 2025) (internal quotation marks and citation omitted).

Rather, to prevail on a motion for reconsideration of a non-final order, the moving party must present "newly discovered evidence," identify an "intervening change in applicable law," or demonstrate that the original decision was based on "a manifest error of law" or was "clearly unjust." *Id.* (quoting *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009)) (denying motion for reconsideration of court's ruling on motion to dismiss).

CLM asserts two grounds for its motion: that the Supreme Court's decision in *Chiles v. Salazar* constitutes an intervening change in controlling law; and that this Court committed a "manifest error" by purportedly "overlooking" certain of Defendants' arguments. CLM is wrong on both counts. CLM's attempt to apply *Chiles* to this case depends on deliberate mischaracterization of both *Chiles* and this case, and its arguments about "manifest error" are mere repetition of arguments that the Court already rejected. Neither justifies the Court's reconsideration of its Order.

## I. *Chiles v. Salazar* Does Not Constitute an Intervening Change in the Law Applicable to This Case.

CLM's motion rests principally on the claim that *Chiles* constitutes an intervening change in controlling law that requires this Court to apply heightened First Amendment scrutiny to Four Women's claims. To determine if a case qualifies as "an intervening change in the law," courts consider whether the facts are "on point" and whether the underpinning conclusions are "implicated." *See Kenyon v. Cedeno-Rivera*, 47 F.4th 12, 28-29 (1st Cir. 2022).

Here, the facts of *Chiles* are not on point, nor are its underlying conclusions implicated. *Chiles* concerned neither false nor commercial speech and addressed an entirely different legal context: a state law that, as applied to the plaintiff, censored talk therapy expressing a particular viewpoint. Its reasoning has no bearing on Four Women's false advertising claims brought under

the Lanham Act and Chapter 93A. Four Women's case is not about counseling or even "medical speech"; it concerns false advertising: misstatements designed to mislead women into believing that an entity provides services it does not provide. And Defendants' anti-abortion viewpoint is not at issue here, except insofar as it relates to their motive to destroy Four Women's business.

A.    The U.S. Supreme Court's Decision in *Chiles*.

Given the centrality of *Chiles* to CLM's motion, and CLM's mischaracterization of the decision, a more thorough discussion of *Chiles* is warranted.

In *Chiles*, the Supreme Court addressed whether Colorado's statutory ban on "conversion therapy" for minors, as applied to a licensed counselor's talk therapy, regulated speech based on viewpoint in violation of the First Amendment. *Chiles*, 146 S. Ct. at 1024. The plaintiff, Kaley Chiles, was a licensed mental health counselor in Colorado whose practice consisted of exclusively talk therapy. *Id.* at 1017. The Colorado statute at issue prohibited "any practice or treatment . . . that attempts . . . to change an individual's sexual orientation or gender identity," as well as any effort to change "behaviors or gender expressions" or to "eliminate or reduce sexual or romantic attractions toward individuals of the same sex." *Id.* at 1018. Chiles brought a narrow First Amendment challenge to the law as applied only to her talk therapy. *Id.* at 1020. She did not, for example, take issue with Colorado's effort to ban what she herself called "long-abandoned, aversive" physical interventions. *Id.*

The Supreme Court took care to explain that "[t]he question before us is a narrow one." *Id.* at 1020. Chiles's therapy involved "only the spoken word," and not any medications or physical techniques. *Id.* at 1018. The speech at issue did not involve any statements made in any advertisements or promotion of Chiles's services or practice; rather, it was confined to "voluntary counseling conversations" with Chiles's clients. *Id.* at 1020. There was no discussion of

6

advertising in *Chiles*, let alone false advertising.[2]

The Court held that, as applied narrowly to Chiles's talk therapy, Colorado's law "regulates speech based on viewpoint" because it permits licensed counselors to express acceptance and support for clients exploring their identity or undergoing gender transition but forbids them from counseling attempting to change a client's sexual orientation or gender identity. *Id.* at 1024.[3] The Court did not agree with Colorado's characterization of Chiles's speech as "conduct," noting that "[a]s a talk therapist, all Ms. Chiles does is speak with clients." *Id.* at 1023. The Court further held that First Amendment protections extend to licensed professionals in the same manner as to everyone else, rejecting the notion that "professional speech" constitutes a separate category subject to diminished constitutional protection. *Id.* at 1024. Finally, the Court concluded that Colorado failed to establish any historically grounded tradition of permissible content regulation that could justify lesser scrutiny, finding the State's analogies to medical licensing, informed-consent laws, and malpractice actions unavailing. *Id.* at 1027-29.

B.      This Case.

Four Women's case is distinct on every basis. While *Chiles* concerned regulation of talk

---

[2] CLM argues that the speech in *Chiles* is "commercial" because the plaintiff was a "for-profit" provider. ECF 99 at 5, 6 n.4. Not so. Commercial speech is a category legally distinct from talk therapy. As this Court explained in its Order, commercial speech is speech that "does no more than propose a commercial transaction." ECF 94 at 21 (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)). Promotional advertising, like CLM's speech here, is quintessential commercial speech. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980). Counseling is not commercial speech, and no part of the Court's opinion in *Chiles* characterized it as such.

[3] CLM attempts to downplay the significance of the Court's determination that the Colorado statute was viewpoint discriminatory in support of its expansive reading of the case, ECF 99 n.2, but this determination was central to the Court's holding and analysis, as Justice Kagan's concurrence makes a point to emphasize, *Chiles*, 146 S. Ct. at 1030 (Kagan, J., concurring) ("Colorado's law, as applied to talk therapy, regulates based on viewpoint.").

therapy, Four Women's case concerns advertising of services. *Chiles* addressed restrictions based on viewpoint, while this case concerns false and deceptive statements in advertising. *Chiles* dealt with the speech of a licensed medical provider; CLM is an advertising firm, and its only speech is advertising.[4]  As this Court recognized, Four Women has not asked this Court to censor CLM's anti-abortion views or advocacy. *See* ECF 94 at 29.  Rather, Four Women seeks to hold CLM accountable for disseminating advertising that contains false and misleading statements promoting unlicensed medical services that Abundant Hope does not provide.  Given these distinctions, *Chiles* does not govern: the facts of *Chiles* are not "on point," nor are the conclusions in *Chiles* implicated. *See Kenyon*, 47 F.4th at 28-29.

C.      *Chiles* Did Not Alter the Law Governing False and Deceptive Advertising.

In a stunning mischaracterization of the law, CLM argues that *any* attempt to regulate "speech precisely based on its alleged falsity . . . is quintessentially content-based" and that "content-based restrictions on allegedly 'false' speech trigger heightened scrutiny."  ECF 99 at 4. That does not come close to anything the Court held in *Chiles*, which did not concern speech alleged to be false.  Indeed, if taken as true, CLM's incorrect assessment that *any* restriction of false speech is inherently "content-based" would eviscerate the Lanham Act, as well as defamation law and consumer protection laws across the country.

---

[4] CLM's attempt to recharacterize its speech as "medical speech" to fall within *Chiles*'s ambit turns Four Women's Amended Complaint on its head.  Even if CLM's expansive interpretation of *Chiles* is right—that the Court "recognized that *medical counseling* is a core part of the 'free marketplace of ideas,'" ECF 99 at 6—no speech by CLM, a for-profit advertising firm, could plausibly qualify as "medical counseling."  Nor could Abundant Hope's, for that matter, given Abundant Hope's express admission that it is not "a licensed medical provider" or "facility" and "has never been licensed by the Massachusetts Department of Public Health to provide medical care."  ECF 63 ¶¶ 7, 59, 94.  Regardless, the counseling that Abundant Hope employees provide onsite is not at issue in this case.

To be clear, Four Women does not dispute that government restrictions on speech may implicate the First Amendment. But that principle does not immunize false commercial advertising from regulation or liability. The Supreme Court has long held that "[u]ntruthful speech, commercial or otherwise, has never been protected for its own sake." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771 (1976). Accordingly, in the commercial speech context, "[t]he government may ban forms of communication more likely to deceive the public than to inform it." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980); *see Virginia*, 425 U.S. at 771-72 ("The First Amendment, as we construe it today, does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely."). The Lanham Act and Chapter 93A provide precisely such limits, and applying them to CLM's false advertising is fully consistent with the First Amendment.

Far from sweeping away the traditional First Amendment framework governing false advertising, *Chiles* expressly reaffirmed the "few historic and traditional categories of expression"—including "fraud" and "defamation"—where content-based restrictions do not automatically trigger strict scrutiny. 146 S. Ct. at 1021. Four Women's claims fall squarely within these well-established exceptions. The Lanham Act and Chapter 93A target false and deceptive commercial advertising—a form of speech long subject to regulation without triggering heightened scrutiny. *See Central Hudson*, 447 U.S. at 563; *Virginia*, 425 U.S. at 771-72; *see also Fanning v. FTC*, 821 F.3d 164, 174 (1st Cir. 2016) ("The First Amendment . . . does not protect misleading commercial speech."). *Chiles* did not alter this settled principle.

CLM's suggestion that *United States v. Alvarez*, 567 U.S. 709 (2012), somehow now bears greater weight on this case after *Chiles*, ECF 99 at 4, is wrong. In *Chiles*, the Court cited *Alvarez* for the proposition that the nation's "long tradition" of allowing prohibitions on "fraud and

9

defamation" does not thereby permit "content-based restrictions on 'any false statements.'" *Chiles*, 146 S. Ct. at 1027.  In *Alvarez*, the Supreme Court held that a federal statute criminalizing false claims of military honors violated the First Amendment.   567 U.S. at 715-16, 729-30. Explaining its holding, the Court expressly recognized the well-established exceptions to presumptive First Amendment protection discussed above—indeed, the Court's references to other statutes that constitute "regulations on false speech" that do not raise First Amendment concerns included a federal statute criminalizing false advertising.  *Id.* at 721 (citing 18 U.S.C § 709).  The key difference, the Court explained, is that these statutes "do not regulate 'pure speech' for speech's sake."  *United States v. Malik*, 2024 U.S. App. LEXIS 6076, at *11 (6th Cir. Mar. 12, 2024) (quoting *Alvarez*, 567 U.S. at 717) (holding prosecution based on statute criminalizing impersonation of a federal officer did not violate First Amendment).  In *Alvarez*, the Court declined to create a new exception, just as the Court did in *Chiles*, but these rulings do not alter the longstanding recognition of fraud and statutes regulating fraudulent speech—especially in the commercial speech and consumer protection context—and the compatibility of such laws with the First Amendment.  In short, CLM's invocation of *Alvarez* is no more persuasive now than in its motion to dismiss briefing, and it certainly does not provide grounds for reconsideration.

The Lanham Act and Chapter 93A do not prohibit "false statements" in the abstract; they target false and deceptive advertising that causes cognizable harm to competitors in the marketplace—precisely the kind of fraud-adjacent regulation that is permissible under the First Amendment.  Indeed, likely for this reason, false advertising cases have proceeded in the 14 years since *Alvarez* without change.  *See, e.g.*, *Pegasystems Inc. v. Appian Corp.*, 633 F. Supp. 3d 456, 476 (D. Mass. 2022) ("[F]alse commercial speech is not entitled to First Amendment protection."); *P.R. Coffee Roasters LLC v. Pan Am Gran Mfg. Co.*, No. 3:15-cv-02088, 2015 U.S. Dist. LEXIS

10

166585, at *25-26 (D. P.R. Dec. 11, 2015) (denying motion to dismiss false advertising claims under Lanham Act, rejecting argument that "the First Amendment erects a categorical bar against . . . false-advertising claims" and noting that "[u]ntruthful speech, commercial or otherwise, has never been protected for its own sake" (internal citation omitted)).

Additionally, contrary to CLM's arguments, ECF 99 at 9-10, *Chiles* did not announce a new standard of "exacting proof requirements" applicable to false advertising claims. On the contrary, the Court's discussion of "exacting proof requirements" arose only in evaluating Colorado's argument that its statute could be analogized to traditional tort malpractice claims. *Chiles*, 146 S. Ct. at 1028. The Court rejected Colorado's analogy, citing safeguards in malpractice law (including "exacting proof requirements") not present in Colorado's statutory scheme. *See id.* But this is not a "traditional tort malpractice claim," and the Court did not announce a new standard governing all tort claims affecting speech that would extend to false advertising claims. Four Women has plausibly alleged sufficient *mens rea* and harm[5] under the claims it asserts: violation of the Lanham Act and Chapter 93A.

Nor does *Chiles* diminish the Ninth Circuit's holding in *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1272-74 (9th Cir. 2017) that a crisis pregnancy center's false or misleading advertising

---

[5] CLM's contention that Four Women "does not even allege that any of Choose Life's targeted communications have caused actual tortious 'injury,'" ECF 99 at 10, ignores the Amended Complaint's detailed allegations of harm, which the Court specifically cited in its Order. ECF 94 at 19-20 (noting Four Women's allegations regarding the 591 patients who interacted with both Four Women and AWHC via telephone in just over a year, specific Jane Does deceived by CLM's advertising into engaging unknowingly with AWHC, and women who have scheduled appointments with Four Women and regularly do not show up, and harm to Four Women's reputation). These allegations more than satisfy the pleading standard at this stage. *See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002). CLM cannot use a motion for reconsideration to impose a heightened injury standard that neither the Lanham Act nor Chapter 93A requires.

is "afforded no constitutional" protection.  CLM argues that *First Resort* is now "outdated."[6]  ECF 99 at 6-7.  But *First Resort* dealt with speech in advertising, and false speech at that.  As this Court has explained, Four Women's claims "are narrowly addressed to AWHC's advertisements and website content that, as alleged, contain false or misleading information and divert women seeking abortion care from Four Women."  ECF 94 at 29.  Four Women's claims "do not target any speech the defendants wish to make, or have made, about their pro-life viewpoint or any of their views about the propriety of abortion."  *Id.*  Just as in *First Resort*, the false and misleading advertisements at issue here have no refuge under the First Amendment.

Finally, CLM's argument that *NIFLA v. Becerra*, 585 U.S. 761 (2018) "(as clarified by *Chiles*) restricts attempts to *censor—*not just compel—speech based on content," ECF 99 at 3, misses the mark.  As this Court has already recognized, *NIFLA* was inapplicable to Four Women's claims not only because *NIFLA* involved only "government-compelled speech," but also because Four Women "challenges only false or misleading advertising."  ECF 94 at 29 n.4.  That distinction was dispositive when CLM first presented this argument to the Court in its motion to dismiss, and it is no less significant after *Chiles.*

## II.    There Is No Manifest Error or Injustice Warranting Reconsideration.

CLM also seeks reconsideration on the ground that the Order "overlooks" its arguments concerning Defendants' website statements about abortion and breast cancer and about ectopic pregnancies.  ECF 99 at 11-13.  This is simply a request to relitigate arguments this Court has already considered—which is precisely what the standards governing motions for reconsideration

---

[6] Notably, CLM contends that *First Resort* is "outdated" but does not argue that *First Resort* is no longer good law—nor can it, as *Chiles* did not address *First Resort*, analogous facts, or its underlying jurisprudence.

are designed to avoid. *See Palmer*, 465 F.3d at 30.

To succeed on a theory of "manifest error" or injustice, "[t]he movant must identify authority or facts 'overlooked' by the court that would reasonably be expected to change the outcome." *In re Spaulding*, No. 25-CV-12069-AK, 2026 U.S. Dist. LEXIS 12589, at *3 (D. Mass. Jan. 23, 2026) (quoting *Palmer*, 465 F.3d at 30). A "manifest error" is "plain and indisputable" and "amounts to a complete disregard of the controlling law." *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004) (quoting Black's Law Dictionary 563 (7th ed. 1999)). Likewise, a "finding of manifest injustice requires, at a bare minimum, a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong, and resulted in prejudice." *United States v. Moran*, 393 F.3d 1, 8 (1st Cir. 2004) (internal quotation marks and citation omitted).

CLM identifies no such "manifest error" or injustice. CLM's arguments regarding the breast cancer and ectopic pregnancy claims were raised in its initial motion to dismiss and reiterated by counsel for CLM at the July 29, 2025 hearing. *See* ECF 68 at 22-23; ECF 92 at 26:22-27:11. CLM cannot now repackage these previously considered arguments as the basis for a "manifest error" simply because the Court ruled against it. To the extent CLM suggests that *Chiles* somehow renders the breast-cancer and ectopic-pregnancy statements "matters of disputed science" or constitutionally protected "opinion," ECF 99 at 11-13, that is simply a regurgitation of the same "disputed science" theory CLM advanced in its motion to dismiss. *See* ECF 68 at 22-23. *Chiles* did nothing to transform the Court's ruling on CLM's "previously advanced and rejected" argument into a "manifest error." *See Palmer*, 465 F.3d at 30.

Nor can CLM prove these facts "would reasonably be expected to change the outcome." *In re Spaulding*, 2026 U.S. Dist. LEXIS 12589, at *3. The Court's Order rests on several

13

categories of misleading statements that are distinct from the allegations CLM identifies. *See* ECF 94 at 25-27. Each category independently supports the Court's conclusion that Four Women plausibly alleged false or misleading commercial advertising in violation of the Lanham Act. *See id.* Moreover, Four Women's allegations regarding Defendants' statements about breast cancer and ectopic pregnancies are directly related to Defendants' course of conduct in deceptively holding AWHC out as a medical provider qualified to give medical advice when it cannot. Defendants' literature on these topics, along with misrepresentations about AWHC's services, create the overall misleading impression that AWHC is a licensed medical provider. CLM's repackaged disagreement with the Court's treatment of these statements therefore fails to demonstrate "manifest error" or warrant the "extraordinary remedy" of reconsideration. *Cruz-Cedeño*, 150 F.4th at 9.

## CONCLUSION

For the foregoing reasons, Four Women respectfully requests that this Court deny Choose Life Marketing's Motion for Reconsideration.

14

Dated:  May 7, 2026

**Four Women Health Services, LLC**

By its attorneys,

/s/ *Matthew Patton*
Matthew D. Patton (BBO #703798)
**Ortiz & Moeslinger, P.C.**
One Boston Place, Suite 2600
Boston, MA 02108
(617) 338-9400
mdp@mass-legal.com

/s/ *Caroline Holliday*
Emily J. Nash (BBO #696460)
Caroline Holliday (BBO #707301)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
enash@foleyhoag.com
cholliday@foleyhoag.com

/s/ *Martha Coakley*
Martha Coakley (BBO #87300)
**Zucker Law Group LLP**
33 Arch St., 25th Floor
Boston, MA 02110
(617) 865-8967
mcoakley@zuckerlawgroup.com

Brenna Rosen (*pro hac vice*)
**FOLEY HOAG LLP**
1301 Avenue of the Americas
New York, New York 10019
brosen@foleyhoag.com

15

## <u>CERTIFICATE OF SERVICE</u>

I, Caroline Holliday, certify that on May 7, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to defendants by electronically serving its counsel of record.

/s/ *Caroline Holliday*
Caroline Holliday