**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FOUR WOMEN HEALTH SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ABUNDANT HOPE PREGNANCY RESOURCE CENTER INC. D/B/A ATTLEBORO WOMEN'S HEALTH CENTER, CATHERINE ROMAN, NICOLE CARGES, DARLENE HOWARD, AND CHOOSE LIFE MARKETING, LLC, <br><br> Defendants. | Case No. 1:24-cv-12283-JEK <br><br><br> The Hon. Julia E. Kobick <br> U.S. District Judge <br><br><br> *Leave to file granted May 19, 2026* |

## CHOOSE LIFE MARKETING, LLC'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION

Plaintiff frames Choose Life's motion as an effort to immunize false commercial advertising. But the question at bar is antecedent: whether the challenged pregnancy-center speech may be placed, at the threshold, in the narrow category of unprotected false commercial advertising in the first place. The Supreme Court's *Chiles* decision, building on *NIFLA v. Becerra*, makes clear it cannot, given the sensitive First Amendment context at issue here and a complete absence of culpable *mens rea* by Choose Life or legally cognizable harm.[1]

## I.      *Chiles* remains on point and dispositive.

### A.      *NIFLA*'s reasoning applies to content-based prohibitions of allegedly "false" speech.

Plaintiff claims that Choose Life "*mischaracteriz[es]*" *Chiles v. Salazar*, 146 S. Ct. 1010 (March 31, 2026). But Plaintiff treats Choose Life's central observation as an afterthought: namely, that *Chiles* unquestionably confirms *NIFLA v. Becerra*, 585 U.S. 755 (2018), applies to content-based *prohibitions* on pregnancy center speech, not merely to compelled speech (Choose Life's Memo at 3-5), contrary to this Court's order (Doc. 94 at 29 n.4). Indeed, *Chiles* plainly involved a content-based *prohibition* on speech, which the Supreme Court found subject to strict scrutiny based on repeated citations to *NIFLA*. *See Chiles*, 146 S. Ct. at 1021-22, 1024-29 (citing *NIFLA*).

Plaintiff's response addresses *NIFLA* in a single, abbreviated paragraph near the end of its brief, arguing this Court's order distinguished *NIFLA* not only because it allegedly involved compelled speech, but also because it did not involve a challenge to "false or misleading advertising." (Opp. at 12 (citing Doc. 94 at 29 n.4).) That distinction does not survive *Chiles*.

---

[1] Contrary to Plaintiff's claim that Choose Life Marketing's (Choose Life's) mere "invocation of Rule 59(e) is improper," (Opp. at 4 n.1), Choose Life reiterates that Rule 59(e)'s "*legal standards are commonly applied to motions for reconsideration*" even of "interlocutory orders," which this Court has "substantial discretion" to reconsider. *Stonecrest Managers, Inc. v. Schreffler*, No. 1:22-cv-11167-PGL, 2023 WL 11826595, at *1 (D. Mass. 2023) (emphasis added).

The Supreme Court's clarification that *NIFLA* applies to content-based *prohibitions* on speech—which Plaintiff no longer disputes—means that *NIFLA*'s principles necessarily apply to content-based restrictions on alleged false commercial speech by pregnancy centers. Indeed, *NIFLA* observed that regulating pregnancy centers' *advertisements* based on content "can fail to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." *NIFLA*, 585 U.S. at 771 (cleaned up); *see also id.* at 764 (case involved licensed *and* "unlicensed" pregnancy centers' "*advertising* materials") (emphasis added).

Plaintiff protests that Choose Life's advertising-related speech is allegedly "false"—but that changes nothing. *NIFLA* expressly recognized that "regulating the content of" pregnancy centers' *advertising* "poses the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information," *id.* (cleaned up), triggering heightened scrutiny.[2] After *Chiles*, that principle clearly applies whether the government is *compelling* pregnancy centers' advertising speech or *censoring* the same based on content. *See Chiles*, 146 S. Ct. at 1024 (citing *NIFLA*, 585 U.S. at 767).

**B.    *Chiles* is not confined to "talk therapy" or viewpoint discrimination.**

Plaintiff highlights that the speech in *Chiles* was "talk therapy," not alleged "false and deceptive statements in advertising." (Opp. at 8.) But *Chiles* rests on the principle that "regulating speech based on its . . . 'communicative content' [is] presumptively unconstitutional," 146 S. Ct. at 1021, and that the "Court has recognized [only] a 'few historic and traditional categories of expression'" exempted from such protection, including "fraud, defamation, and 'fighting words,'" *id.* at 1022 (quoting *United States v. Alvarez*, 567 U.S. 709,

---

[2] Plaintiff nowhere disputes that restricting speech based on content *via a judicial order* is subject to the same First Amendment strictures as content-based regulations by other branches of government.

717 (2012) (plurality)). By targeting Choose Life's alleged "false" advertising, Plaintiff's suit

seeks to censor Choose Life's speech based on its non-historically excluded "communicative

content," which *Chiles*, following *NIFLA*, makes clear is still presumptively protected—

particularly given "the dangers associated with censorship . . . in the fields of medicine and

public health." *Chiles*, 146 S. Ct. at 1025 (cleaned up).

Plaintiff's attempt to cabin *Chiles*'s reach only to cases involving overt viewpoint

discrimination also fails. (Opp. at 7 n.3.) Plaintiff points to Justice Kagan's concurrence stating

the same (*id.*)—but fails to acknowledge that *six other Justices* in the majority did *not* join that

opinion. *See Chiles*, 146 S. Ct. at 1029-31 (Kagan, J., concurring, joined only by Sotomayor, J.).

And *Chiles* relied on numerous *content-based* regulation cases in arriving at its holding. *See id.*

at 1021-23 (citing cases). Again, therefore, *Chiles*'s baseline principles apply even absent overt

viewpoint discrimination.

### C.     Choose Life's speech-based services are akin to Ms. Chiles's for-profit talk therapy services.

Plaintiff protests that the speech in *Chiles* wasn't commercial because it wasn't

"promotional advertising." (Opp. at 7 n.2.) But Choose Life's point is that the commercial speech

inquiry also generally involves consideration of the "*Bolger* factors," including whether the

speaker has an economic motive.[3] *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 67

(1983). Ms. Chiles clearly does. (Choose Life Memo at 6 n.4.) Moreover, Plaintiff is *not* seeking

to restrict Choose Life's *advertising* directly to potential pregnancy center clients, like Attleboro

Women's Health Center ("Attleboro"). Rather, it is attempting to silence the *ultimate speech-*

---

[3] The *raison d'etre* government usually has more leeway to regulate "[t]he truth of commercial speech" is that people advertise for commercial profits and thus "there is little likelihood of its being chilled by proper regulation and forgone entirely." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 772 n.24 (1976). But that is also true of for-profit speakers like Ms. Chiles, who performs talk-therapy for a commercial profit.

*based service* Choose Life provides to Attleboro, which happens to be speech promoting the charitable offering by Attleboro of free counseling and services. But *Chiles* makes clear that restricting even economically motivated *speech-based* services still must abide the full protections of the First Amendment. So too here.

Plaintiff's position is also anomalous. Colorado's law was predicated on the notion that "conversion therapy" allegedly has been proven "ineffective" and "harmful," *see* Respondent's Brief on the Merits, *Chiles v. Salazar*, No. 24-539, at 3-7,[4] and yet the Supreme Court protected it anyway. *Chiles*, 146 S. Ct. at 1029. Plaintiff's position that *advertising* is somehow less protected would yield the absurd result that Colorado could still ban Ms. Chiles from *promoting* her economically motivated speech-based services as safe and effective (which Colorado deems to be false), even while *Chiles* made clear that restricting the services themselves triggers strict scrutiny.

Worse, Colorado *specifically analogized* its law to the Supreme Court's "commercial speech doctrine, where the government can altogether prohibit speech that is false or misleading in order to protect consumers' interests in informed decisionmaking." Respondents' Br. at 42-43. The Supreme Court had none of it. *See Chiles,* 146 S. Ct. at 1021 (highlighting "First Amendment's jealous protections for the individual's right to think and speak freely"). Indeed, allowing Colorado to ban *advertising* about talk therapy in the name of "public health and safety" would plainly run headlong into the *same* "inalienable right to think and speak freely . . . in the free marketplace of ideas" that effectively prohibits Colorado from banning the *services themselves* under *Chiles*. *Id.* at 1029. Thus, Plaintiff's attempt to distinguish Ms. Chiles's speech services from Choose Life's own speech services falls flat.

    **D.**    **Choose Life's speech does not fall into a historically unprotected category.**

---

[4] https://perma.cc/DET2-D4YA/

Plaintiff speciously asserts that Choose Life engages in a "stunning misrepresentation of the law" by recognizing the obvious—i.e., that "false" speech restrictions *necessarily* regulate based on content[5]—along with the general rule that such restrictions trigger heightened scrutiny. (Opp. at 8.) The Supreme Court held exactly that in *United States v. Alvarez*, 567 U.S. 709, 723 (2012) (plurality) ("Our constitutional tradition stands against the idea that we need Oceania's Ministry of Truth. . . . [t]he mere potential for the exercise of that power casts a chill . . . the First Amendment cannot permit."); *id.* at 733 (Breyer, J., concurring) (similar). And *Chiles* expressly relied on *Alvarez* for the proposition that "historical laws proscribing *fraud* and defamation" do *not* broadly allow "enforce[ment] [of] content-based restrictions on any 'false statements.'" 146 S. Ct. at 1027 (citing *Alvarez*, 567 U.S. at 718-722 (plurality) (emphasis added)); *see also Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 620 (2003) (noting "exacting proof requirements" of fraud claims prevent undue chill); *Chiles*, 146 S. Ct. at 1028 (citing *Madigan*).

Plaintiff says this reading of *Chiles* "would eviscerate the Lanham Act" and all consumer protection laws. (Opp. at 8.) Not so. It means that such laws cannot be *applied* based on alleged falsity alone "absent any evidence that the speech was used to gain a *material advantage*," *Alvarez*, 567 U.S. at 723 (plurality) (emphasis added), or otherwise that the restriction is ultimately based on a separate, cognizable "proof of injury," *id.* at 736 (Breyer, J., concurring). Plaintiff says that "[u]ntruthful speech, commercial or otherwise, has never been protected for its own sake." (Opp. at 9 (quoting *Virginia*, 425 U.S. at 771).) But "the Court has been careful to instruct that falsity alone may not suffice to bring [ ] speech outside the First Amendment." *Alvarez*, 567 U.S. at 719 (plurality).

---

[5] Plaintiff refuses to acknowledge the basic fact that determining "falsity" necessarily requires reviewing the *substantive content of communication* to determine if the speech is actually false. *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

*Chiles* also plainly means government cannot restrict speech under the Lanham Act or otherwise by the use of "mere labels." 146 S. Ct. at 1024. Plaintiff wrongly says Choose Life's speech "fall[s] squarely within" the "well-established exceptions" of "fraud" and "defamation." (Opp. at 9.) On the contrary, Plaintiff has *admitted* (Doc. 81 at 7) its claims do not require any showing that Choose Life "made a false representation of a material fact *knowing* that the representation was false," with "*intent to mislead the listener*," *Madigan*, 538 U.S. at 620 (emphasis added)—particularly as to whether Attleboro was in full compliance with Massachusetts's licensure requirements. And Plaintiff tellingly never acknowledges that the way a pro-life pregnancy center speaks about abortion in its public-facing marketing is plainly a form of "protected speech." *Id.* at 620; *see Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 249-50 (2d Cir. 2014).[6]

*Chiles* forecloses the doctrinal aggregation on which Plaintiff's reading depends. The Court held that "discrete traditions of content-based regulations cannot be aggregated together to sustain some new and broader category of lesser-protected speech," characterizing the State's argument as a request to recognize a "cavernous 'First Amendment Free Zone,' one in which States may censor almost any speech they consider 'substandard care.'" *Id.* at 1027 (quoting *United States v. Stevens*, 559 U.S. 460, 469 (2010)). Similarly here, Plaintiff imposes the label

---

[6] Plaintiff criticizes Choose Life for calling its pregnancy center marketing services "medical speech," but Choose Life unquestionably provides marketing services "in the field[] of medicine and public health," which *Chiles*, building on *NIFLA*, confirms is also protected speech. *Chiles*, 146 S. Ct. at 1025 (quoting *NIFLA*, 585 U.S. at 767); *accord Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 566 (2011) (invalidating pharmaceutical marketing restriction and noting "[a] consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue"; "[t]hat reality has great relevance in the fields of medicine and public health, where information can save lives") (internal quotes omitted). And Plaintiff is the one who alleged that, "Abundant Hope works with Choose Life Marketing solely to promote the so-called 'medical' services provided under the 'Attleboro Women's Health Center' name." (Doc. 59 at ¶ 81.)

"false commercial advertising" on Choose Life's speech only by combining premises none of which independently suffices: status as an independent contractor for a nonprofit charitable speaker, alleged monetary value of free charitable services, alleged charitable fundraising effects, alleged falsity, and a general state interest in consumer protection. None of those, standing alone, places the pregnancy-center speech at issue here outside the First Amendment's "jealous" protections for free speech from such overt content-based censorship; together, they form precisely the kind of doctrinal stitching *Chiles* has rejected, consistent with *Stevens*, *Alvarez*, and *NIFLA*.

Contrary to Plaintiff's protestations, Choose Life has never argued the Lanham Act and Chapter 93A are facially unconstitutional. But, as Plaintiff admits, *Chiles* makes clear that restricting speech based on content must undergo heightened scrutiny absent any showing of "*exacting* proof requirements," such as *mens rea* and actual harm. *Chiles*, 146 S. Ct. at 1028 (emphasis added); *Alvarez*, 567 U.S. at 733 (Breyer, J., concurring); *see also Counterman v. Colorado*, 600 U.S. 66, 75 (2023) (quoting *Alvarez*, 567 U.S. at 733 (Breyer, J., concurring), and holding that henceforth prosecutions of unprotected "true threats" must show *recklessness* in order to provide sufficient "breathing space" for protected speech). Plaintiff insists it has alleged sufficient harm. But "Four Women's allegations regarding the 591 patients who" simply "*interacted with* both Four Women and Attleboro via telephone in just over a year" (Opp. at 11 n.5) (emphasis added) are hardly the kind of "injur[ious]" harm sufficient to ameliorate concerns that Four Women's action is laden with "dangers associated with censorship," thus requiring heightened scrutiny. *Chiles*, 146 S. Ct. at 1025 (internal quotes omitted). The same is true of Four Women's allegations regarding the Jane Does allegedly deceived into merely "*engaging unknowingly with Attleboro*," and women allegedly not "show[ing] up" to their appointments at

Four Women (Opp. at 11 n.5) (emphasis added)—particularly since the fact "speech might persuade provides no lawful basis for quieting it." *Sorrell*, 564 U.S. at 576. And the alleged "harm to Four Women's reputation" is utterly unsupported, at least as to Choose Life, which was limited to generating online material for Attleboro that never once referenced Four Women.

###### E.    *First Resort* cannot survive *Chiles*.

Plaintiff devotes one paragraph to *First Resort, Inc. v. Herrera*, 860 F.3d 1263 (9th Cir. 2017), wrongly insisting it remains good law as a case about false advertising. (Opp. at 11-12.) Plaintiff never acknowledges that *First Resort*'s critical premise—that pregnancy center advertisements are supposedly "directed at the providing of services rather than toward an exchange of ideas," *id.* at 1273—cannot survive *NIFLA* and *Chiles*, which make clear that pregnancy centers' public-facing speech is very much part of the "marketplace of ideas." *See NIFLA*, 585 U.S. at 772; *Chiles*, 146 S. Ct. at 1029.[7] Plaintiff does not cite or discuss *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107 (9th Cir. 2021), its characterization of *First Resort* as hinging on "benefits to employee compensation," 985 F.3d at 1117, or its requirement that economic motivation must be primary. And Plaintiff utterly fails to dispute that speech ultimately contained in Attleboro's online materials cannot be commercial merely because Attleboro fundraises. (*Cf.* Choose Life's Memo at 7-8 and n.8.)[8]

---

[7] Plaintiff did not cite *Fargo Women's Health Org., Inc. v. Larson*, 381 N.W.2d 176 (N.D. 1986) or address Choose Life's argument (Memo at 6, n. 5) that *Chiles* similarly supersedes it.

[8] The Supreme Court's recent unanimous decision in *First Choice Women's Resource Centers, Inc. v. Davenport*, No. 24-781, 2026 WL 1153029 (U.S. Apr. 29, 2026), reinforces these principles. In *First Choice*, the Court recognized that state action "effectively restricting how" a pregnancy resource center "may interact privately with its donors" burdens First Amendment associational rights, and rejected a rule under which "the government could channel the ability of disfavored groups to associate through narrow and state-preferred forms" or achieve "what the First Amendment forbids" through "subtle . . . interference" with protected liberties. Id., at *11 (*quoting Bates v. Little Rock*, 361 U.S. 516, 523 (1960)). The Court also reaffirmed that the First Amendment "protects [the] right to solicit charitable contributions," and "limits a government's

Accordingly, *Chiles* remains on point and dispositive, and this Court should reconsider its order denying Choose Life's motion to dismiss.

## II.    Manifest Error.

Plaintiff insists this Court already "rejected" Choose Life's request to dismiss Plaintiff's claims seeking to censor speech on ectopic pregnancy and abortion's link to breast cancer. (Opp. at 13.) But this Court's order did *not* specifically reject that request. (Doc. 94 at 1-30.) Plaintiff also argues that even though *Chiles* confirms that speech on disputed science cannot be censored based on so-called "medical consensus," the outcome here would remain unchanged because Plaintiff also seeks to censor *other* statements not involving matters of disputed science. (Opp. at 13-14.) That's self-evidently absurd.

Plaintiff further insists Defendants' speech about breast cancer and ectopic pregnancy aids Attleboro in holding itself out as a qualified medical provider. (Opp. at 14.) But that argument only confirms "the dangers associated with content-based regulations of speech" in "public health," given "the inherent risk that" Four Women merely seeks "to suppress unpopular ideas or information." *NIFLA*, 585 U.S. at 771. Indeed, even unlicensed pregnancy centers have a First Amendment right to publicly promote pro-life scientific information without fear they will be censored merely because abortion clinics allege it makes them *look* like medical clinics. *See, e.g.*, *Evergreen*, 740 F.3d at 247. So too here.

---

ability to make demands of charit[able] [nonprofits] that would have the 'predictable result' of rendering their 'solicitations . . . unsuccessful.'" *Id.* at *8 n.2 (*quoting Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 799-800 (1988)). Conditioning full First Amendment protection for nonprofit speech on the content or effectiveness of donor communications—by labeling speech "commercial" because it helps generate donor support—would invert *First Choice*'s principles and create precisely the donor-association burden the High Court condemned. And the order's fundraising-nexus theory would create a discovery pathway fraught with the same kinds of associational burdens condemned by *First Choice*.

At a minimum, the Court should clarify that Plaintiff may not premise liability on these disputed scientific-opinion statements and may not use them as background "context" to convert otherwise protected medical and public-health advocacy into actionable deception.

**CONCLUSION**

For the foregoing reasons, this Court should grant Choose Life's motion for reconsideration and dismiss Counts I and II as to Choose Life with prejudice.

Respectfully submitted, this 18th day of May, 2026.

/s/ Peter Breen
Peter Breen†
Michael McHale†
Nathan Loyd†
Thomas More Society
121 W. Wacker Dr.
Suite 650
Chicago, IL 60601
(312) 878-7464
pbreen@thomasmoresociety.org
mmchale@thomasmoresociety.org
nloyd@thomasmoresociety.org
† admitted *pro hac vice*

/s/ Ryan P. McLane
Ryan P. McLane
(BBO# 697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
(413) 789-7771
ryan@mclanelaw.com

*Attorneys for Defendant Choose Life Marketing, LLC*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2026, I served a copy of the foregoing document upon the

following counsel of record via CM/ECF:

Matthew D. Patton (BBO No. 703798)
Law Office of Nicholas F. Ortiz, P.C.
One Boston Place, Suite 2600
Boston, MA 02108
(617) 338-9400
mdp@mass-legal.com

Martha Coakley (BBO # 87300)
Emily J. Nash (BBO #696460)
Caroline Holliday (BBO #707301)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
mcoakley@foleyhoag.com
enash@foleyhoag.com

Brenna Rosen (pro hac vice)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, New York 10019
brosen@foleyhoag.com

*Attorneys for Plaintiff*

Thomas M. Harvey
Law Office of Thomas M. Harvey
22 Mill Street, Suite 408
Arlington, MA 02476
Tel: 617-710-3616; Fax 781-643-1126
tharveyesq@aol.com

*Attorney for Defendants Abundant Hope Pregnancy Resource Center, d/b/a Attleboro Women's Health Center, Catherine Roman, Nicole Carges, and Darlene Howard*

Dated: <u>May 18, 2026</u>                    /s/ Peter Breen
                                                       Peter Breen
                                                       *Attorney for Defendant Choose Life Marketing, LLC*

11