**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FOUR WOMEN HEALTH SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ABUNDANT HOPE PREGNANCY RESOURCE CENTER, INC., d/b/a ATTLEBORO WOMEN'S HEALTH CENTER, CATHERINE ROMAN, NICOLE CARGES, DARLENE HOWARD, and CHOOSE LIFE MARKETING, LLC,<br><br>Defendants. | Case No. 1:24-cv-12283-JEK<br><br>The Hon. Julia E. Kobick<br>U.S. District Judge |

# DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY INTERLOCUTORY ORDER FOR IMMEDIATE APPEAL

**TABLE OF CONTENTS**

INTRODUCTION......1
BACKGROUND......3
ARGUMENT......3
I. Legal Standards. ......3
II. The Court Should Certify Its Interlocutory Order for Appeal. ......5
A. Whether Defendants' advertising is commercial speech. ......5
B. Whether Defendants speak with the intent of influencing customers "to purchase the speaker's goods or services" under the Lanham Act. ......12
C. Whether Chapter 93A § 11 reaches Choose Life's speech. ......14
III. In the Alternative, the Court Should Certify the Chapter 93A § 11 Question to the Massachusetts Supreme Judicial Court. ......17
IV. The Court Should Stay Proceedings Pending Certification and Review. ......18
CONCLUSION......20
CERTIFICATE OF SERVICE......22
CERTIFICATE PURSUANT TO LOCAL RULE 7.1......22

## TABLE OF AUTHORITIES

**Cases**

Ariix, LLC v. NutriSearch Corp., 985 F.3d 1107 (9th Cir. 2021) ........ 6, 7, 10
Brown v. Town of South Thomaston, No. 08-308-P-H, 2010 WL 11545906 (D. Me. Jan. 21, 2010) ........ 11
Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994) ........ 16
Chiles v. Salazar, 146 S. Ct. 1010 (2026) ........ 2, 3, 9
Citizens United v. FEC, 558 U.S. 310 (2010) ........ 15
Courtemanche v. Motorola Solutions, Inc., 793 F. Supp. 3d 279 (D. Mass. 2025) ........ 1, 3
Elrod v. Burns, 427 U.S. 347 (1976) ........ 19
Evergreen Ass'n, Inc. v. City of New York, 740 F.3d 233 (2d Cir. 2014) ........ 11
Fargo Women's Health Org., Inc. v. Larson, 381 N.W.2d 176 (N.D. 1986) ........ 10, 13
First Choice Women's Res. Centers, Inc. v. Davenport, 146 S. Ct. 1114 (2026) ........ 2, 9, 11, 19
First Resort, Inc. v. Herrera, 860 F.3d 1263 (9th Cir. 2017) ........ passim
Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore, 879 F.3d 101 (4th Cir. 2018) ........ 9, 11, 12
Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc., 700 F. App'x 251 (4th Cir. 2017) ........ 12
Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153 (1999) ........ 16
In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156 (1st Cir. 2009) ........ 16
In re Primus, 436 U.S. 412 (1978) ........ 7
In re TelexFree Sec. Litig., 358 F. Supp. 3d 98 (D. Mass. 2019) ........ 16
In re Trump, 874 F.3d 948 (6th Cir. 2017) ........ 5, 11, 14
KetoNatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc., 181 F.4th 1069 (10th Cir. July 14, 2026) ........ 3, 6, 10, 11
KetoNatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc., 756 F. Supp. 3d 1128 (D. Kan. 2024) ........ 10
Landis v. N. Am. Co., 299 U.S. 248 (1936) ........ 18, 19
Lawson v. FMR LLC, 724 F. Supp. 2d 167 (D. Mass. 2010), rev'd, 670 F.3d 61 (1st Cir. 2012), rev'd, 571 U.S. 429 (2014) ........ 4
Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1 (1997) ........ 16
Mayday Health v. Jackley, No. 26 Civ. 78 (KPF) (S.D.N.Y. Feb. 11, 2026) ........ 10
Mayday Health v. Rhoden, No. 4:26-CV-04096-CCT, 2026 WL 2070966 (D.S.D. July 17, 2026) ........ 2, 6, 10
Meijer, Inc. v. Ranbaxy Inc., 245 F. Supp. 3d 312 (D. Mass. 2017) ........ 12
Nat'l Inst. of Family & Life Advocates v. Becerra, 585 U.S. 755 (2018) ........ 2, 9, 15
Nat'l Org. for Women, Inc. v. Scheidler, 765 F. Supp. 937 (N.D. Ill. 1991) ........ 8
Nat'l Org. for Women, Inc. v. Scheidler, 968 F.2d 612 (7th Cir. 1992), rev'd, 510 U.S. 249 (1994) ........ 8
Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175 (2024) ........ 5
New York Times Co. v. Sullivan, 376 U.S. 254 (1964) ........ 5, 9

New.Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) .......... 13, 14
NIFLA v. James, 160 F.4th 360 (2d Cir. 2025) .......... 7, 9
Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480 (1986) .......... 14, 15, 18
Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc., 332 F.3d 6 (1st Cir. 2003) .......... 12, 13, 19
Rafferty v. Merck & Co., 479 Mass. 141 (2018) .......... 16
Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs., 608 F.3d 110 (1st Cir. 2010) .......... 18
Reese v. BP Exploration (Alaska) Inc., 643 F.3d 681 (9th Cir. 2011) .......... 5
Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781 (1988) .......... 9
Snyder v. Phelps, 562 U.S. 443 (2011) .......... 5
Sorrell v. IMS Health Inc., 564 U.S. 552 (2011) .......... 9, 15
Strauss v. Angie's List, Inc., 951 F.3d 1263 (10th Cir. 2020) .......... 13
Wright v. United Servs. Auto. Ass'n, No. 23-cv-11155-ADB, 2024 WL 4681749 (D. Mass. Nov. 5, 2024), petition for leave to appeal granted, No. 25-1979 (1st Cir. Oct. 21, 2025) .......... 4, 17
Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199 (1996) .......... 5
Zecco v. Hess Corp., 777 F. Supp. 2d 207 (D. Mass. 2011) .......... 17
Zurich Am. Ins. Co. v. Med. Props. Tr., Inc., 88 F.4th 1029 (1st Cir. 2023) .......... 17

**Statutes**

15 U.S.C. § 1125(a)(1)(B) .......... 2, 14
28 U.S.C. § 1292(b) .......... passim
Mass. Gen. Laws c. 93A, § 11 .......... passim

**Rules**

Mass. S.J.C. Rule 1:03 .......... 1, 17, 18, 20

## INTRODUCTION

Defendants Choose Life Marketing, LLC ("Choose Life"), Abundant Hope Pregnancy Resource Center, Inc. d/b/a Attleboro Women's Health Center ("Abundant Hope"), Catherine Roman, Nicole Carges, and Darlene Howard (the last four collectively, the "Abundant Hope Defendants") respectfully move that this Court certify its March 26, 2026 Order (Dkt. 94) for immediate appeal to the First Circuit under 28 U.S.C. § 1292(b) as to whether (a) advertising the charitable offering by a nonprofit of wholly free services is commercial speech, or is instead fully protected noncommercial speech; and (b) the Lanham Act's requirement of speech made "with the intent of influencing potential customers to purchase the speaker's goods or services" can be satisfied where the advertised services are wholly free and the audience is asked to enter no transaction involving consideration. Choose Life further moves that the Court certify whether (c) M.G.L. c. 93A § 11 reaches a marketing vendor that prepared and placed a nonprofit's advertising of its charitable offering of free services, where the nonprofit's activities are not "trade or commerce" and its own identical speech is not actionable under the statute. Question (a) controls both Counts. Question (b) controls Count I, which remains pending against all Defendants. Question (c) controls Count II, which remains pending only against Choose Life; the Abundant Hope Defendants support its certification. If the Court declines certification under § 1292(b), Choose Life respectfully moves that the Court instead certify the § 11 question to the Massachusetts Supreme Judicial Court pursuant to its Rule 1:03. Defendants further request that the Court stay proceedings, including discovery, while this Court, and any court reviewing a certified question, resolve these threshold issues.

The questions presented here are ones on which reasonable jurists can and do disagree—"difficult and pivotal questions of law not settled by controlling authority," for which certification exists. *Courtemanche v. Motorola Solutions, Inc.*, 793 F. Supp. 3d 279, 284-85 (D. Mass. 2025). Their immediate resolution could terminate this litigation before the parties undertake expensive discovery

into disputed scientific questions, women's sensitive medical conversations, and a nonprofit's donor and associational relationships—discovery of the kind the Supreme Court this year unanimously allowed a pregnancy center to challenge on First Amendment grounds. *First Choice Women's Res. Centers, Inc. v. Davenport*, 146 S. Ct. 1114 (2026).

Prior to this Court's ruling, the parties had identified no decision where a court had ever applied 15 U.S.C. § 1125(a)(1)(B) of the Lanham Act to a nonprofit's speech promoting its wholly free charitable services, or to the marketing firm that prepared such advertising. Nor had the parties identified a decision where a court had exempted a nonprofit's speech under M.G.L. c. 93A § 11 while applying it to the marketing vendor that helped craft and place that speech.

And five days after this Court's Order issued, the Supreme Court decided *Chiles v. Salazar*, 146 S. Ct. 1010, 1023-24 (2026), which held that *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018), applies with equal force to attempts to silence speech as it does to compelled speech. While this Court denied reconsideration of its Order in view of *Chiles*, it expressly did "not foreclose further argument from the parties concerning the interaction between the plaintiff's claims and the defendants' First Amendment defense later in this case." Dkt. 113. Defendants respectfully contended in their reconsideration motion that, in addition to clarifying the broad scope of *Becerra*, *Chiles* further undercut the foundations of *First Resort, Inc. v. Herrera*, 860 F.3d 1263 (9th Cir. 2017), which this Court relied upon extensively in its Order.

Reasonable jurists can disagree whether the Ninth Circuit's *First Resort* has been abrogated or at least significantly limited, and whether and to what extent it should be applied here, to treat speech that would otherwise be inherently noncommercial—a nonprofit's advertising of its charitable offering of wholly free services—as commercial speech. *See, e.g., Mayday Health v. Rhoden*, No. 4:26-CV-04096-CCT, 2026 WL 2070966, at *11 (D.S.D. July 17, 2026) (declining to apply *First Resort* and holding pro-abortion-rights nonprofit's speech noncommercial, despite the fact that it "fundraises and sells

merchandise on its website to further its nonprofit mission"); *KetoNatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 181 F.4th 1069, 1087-88 (10th Cir. July 14, 2026) (holding nonprofit's statements not commercial speech, even though interested for-profit company "funds the [nonprofit] and influences its executive decisions," because those allegations "cannot satisfy the quid pro quo necessary" to show that the speech was motivated by "direct economic gain").

## BACKGROUND

Four Women's two claims arise from the same targeted speech, alleging it constitutes false advertising under the Lanham Act, and unfair or deceptive acts or practices under Chapter 93A § 11. Dkt. 59 at 29-30. On March 26, 2026, this Court denied Choose Life's motion to dismiss in its entirety. It dismissed the Chapter 93A claim against the Abundant Hope Defendants because their free services are not "trade or commerce," but sustained the Lanham Act claim against them. Dkt. 94 at 13, 27-28.

Five days later, the Supreme Court decided *Chiles*. Defendants then moved for reconsideration, see Dkts. 97, 100; the Court denied the motions on July 28, 2026. Dkt. 113. The Court's order expressly preserved Defendants' ability to press their First Amendment defense "later in this case." *Id.* This motion follows roughly three weeks after that denial. General merits discovery has not yet begun.

## ARGUMENT

### I. Legal Standards.

Under 28 U.S.C. § 1292(b), a district judge may certify an otherwise non-appealable interlocutory order for immediate review when the judge is of the opinion that the order "involves a controlling question of law," "as to which there is substantial ground for difference of opinion," and "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Courtemanche*, 793 F. Supp. 3d at 284. First, a question of law is "controlling" if its "reversal would resolve the entire action," *id.* (citations omitted), though a question

need not end the case outright to be controlling, and courts in this district have certified questions dispositive of particular claims rather than the entire case, *see Courtemanche*, 793 F. Supp. 3d at 288-93 (certifying questions controlling individual Chapter 93A and Wiretap Act claims). Second, a substantial ground for difference of opinion exists when an issue "involves one or more difficult and pivotal questions of law not settled by controlling authority." *Courtemanche*, 793 F. Supp. 3d at 284-85 (internal quotation marks and citations omitted). Third, an appeal materially advances final resolution if "overturning the Court's decision advances the final resolution of the case." *Id.* at 284 (citations omitted). The appeal need not end every claim against every party: this district has certified where even an affirmance would "shape both discovery initiatives and settlement strategies in a fashion which should expedite resolution of these cases overall." *Lawson v. FMR LLC*, 724 F. Supp. 2d 167, 169-70 (D. Mass. 2010) (Woodlock, J.), *rev'd*, 670 F.3d 61 (1st Cir. 2012), *rev'd*, 571 U.S. 429 (2014).

While certification is the exception, courts in this district do certify orders denying motions to dismiss where a threshold doctrine presents pure questions of law. *See Wright v. United Servs. Auto. Ass'n*, No. 23-cv-11155-ADB, 2024 WL 4681749, at *2-4 & n.4 (D. Mass. Nov. 5, 2024) (certifying an order denying a motion to dismiss that presented pure legal questions), *petition for leave to appeal granted*, No. 25-1979 (1st Cir. Oct. 21, 2025).

The questions here are pure questions of law that the court of appeals can answer on the pleadings: whether advertising a charitable offering of wholly free services may be regulated as commercial speech, what "purchase" means, and whether § 11 reaches contractors working for nonprofits or requires any dealings between the parties. This is the exceptional case the doctrine contemplates: threshold constitutional defenses of the highest importance whose appellate resolution may render expensive and intrusive discovery unnecessary.

Certification does not require the Court to doubt its own ruling. It requires only recognition that a substantial ground for difference of opinion "exists where reasonable jurists might disagree on

an issue's resolution, not merely where they have already disagreed." *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) (quoting *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)).

## II. The Court Should Certify Its Interlocutory Order for Appeal.

Each of the three questions stated above is a controlling question of law, certifiable on its own. The Court may certify any one, two, or all three. And because appellate jurisdiction under § 1292(b) "applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court," *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996), certification on any one question brings the Order itself before the First Circuit.

### A. Whether Defendants' advertising is commercial speech.

*The question is controlling*. This Court held that Defendants' speech was not entitled to First Amendment protection because Plaintiff alleged that Defendants "engaged in commercial speech through false or misleading advertisements." Dkt. 94 at 29. However, if the challenged advertising of Abundant Hope's free services is noncommercial, Plaintiff's Lanham Act claim fails as to all Defendants, and its § 11 claim against Choose Life fails as well, because the Order's rejection of the First Amendment defense to both claims rests on that commercial-speech classification. Dkt. 94 at 28-29. Classification turns on the speech itself and the relationships among the speakers alleged in the complaint, accepted as true at this stage—just as this Court decided the question on the pleadings (Dkt. 94 at 21-29), so too could the First Circuit. While this is a private lawsuit asking a federal court to penalize and prohibit speech through judicial order, any such order must itself comply with the First Amendment. *See Snyder v. Phelps*, 562 U.S. 443, 451 (2011); *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964); *cf. Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024).

*Substantial ground for difference of opinion exists*. The Order's commercial-speech holding adopts the Ninth Circuit's fundraising-loop theory of economic motivation, and the Order itself relies heavily

on *First Resort*, 860 F.3d at 1272-74. But funding was held not enough in *KetoNatural*, and fundraising not enough in *Mayday Health*.

The Order drew its three-factor commercial-speech framework from *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1116 (9th Cir. 2021). Dkt. 94 at 21. But *Ariix* holds that the economic-motivation factor "asks whether the speaker acted *primarily* out of economic motivation, not simply whether the speaker had any economic motivation," 985 F.3d at 1116 (emphasis added); that "an incidental economic benefit, without more, does not make something commercial speech"—"[o]therwise, virtually any newspaper, magazine, or book for sale could be considered a commercial publication," id. at 1117; and it lists *First Resort* among the "indirect benefits" cases, one about "employee compensation." *Id.* (citing *First Resort*, 860 F.3d at 1273). Nothing pleaded here alleges that the speech itself is *primarily* motivated by economic gain: the mission the complaint itself pleads is ideological (Dkt. 59 ¶¶ 10, 84); the services are free; and the speech it targets is not Choose Life's *own* advertising but rather the speech it supplies as part of its professional services. *See Becerra*, 585 U.S. at 771 ("[R]egulating the content of professionals' speech poses the inherent risk" of "suppress[ing] unpopular ideas or information" and thus at least requires heightened scrutiny) (internal quotations omitted).

Four Women alleges that Abundant Hope "touts [its] medical 'services' in connection with efforts to raise funds from donors for its work manipulating the reproductive healthcare marketplace[, and o]n information and belief, Abundant Hope specifically touts its diversion of potential Four Women patients in its fundraising efforts." Dkt. 59 ¶ 95. Even on information and belief, there is no pleading that any private individuals benefited. There is no allegation of a quid pro quo or other specific economic benefit sought with a particular advertisement. The allegation that a cause-based nonprofit touts its free charitable services in fundraising, and even its diversion of clients away from a moral and political opponent, does not logically lead to the conclusion that the nonprofit's public

advertising of its free charitable services has an economic motivation, much less a *primary* economic motivation.

And in *NIFLA v. James*, 160 F.4th 360 (2d Cir. 2025), a sister Circuit adopted the Supreme Court's decision in *In re Primus*, 436 U.S. 412, 422 (1978), as teaching that,

> "[A] letter from a lawyer associated with the ACLU to a potential client 'communicating an offer of free assistance by attorneys associated with the ACLU, not an offer predicated on entitlement to a share of any monetary recovery . . . [,] undertaken to express personal political beliefs and to advance the civil-liberties objectives of the ACLU, rather than to derive financial gain,' was protected speech subject to strict scrutiny under the First Amendment." 160 F.4th at 376.

And the High Court in *Primus* analyzed whether the ACLU's policy of seeking fees after court successes justified a presumption it was "motivated by *considerations of pecuniary gain* rather than by its widely recognized goal of vindicating civil liberties." *Primus*, 436 U.S. at 430 (emphasis added). The Court noted that any fee award "would have gone to the *central fund of the ACLU*," instead of being shared with private "cooperating attorneys." *Id.* at 430 & n.24 (emphasis added). "Although such benefit to the organization may increase with the maintenance of successful litigation, *the same situation obtains with voluntary contributions and foundation support, which also may rise with ACLU victories in important areas of the law*. That possibility, standing alone, offers no basis for equating the work of lawyers associated with the ACLU or the NAACP with that of a group that exists for the *primary purpose of financial gain* . . . ." *Id.* at 430-31 (emphasis added). In the same way, the success of Abundant Hope in attracting clients may lead to greater voluntary contributions, but that fact provides "no basis" for claiming that Abundant Hope's "economic benefit was the primary purpose for speaking." *Ariix*, 985 F.3d at 1117. Economic *effect* does not equal economic *motive*.

Under the *Ariix* framework, especially as informed by *Primus*, whether the speech was primarily economically motivated is, at a minimum, a question on which reasonable jurists can differ. Four Women's own counsel agreed that Abundant Hope's nonprofit, no-charge character "means

that it is less likely to be commercial speech. We don't dispute that"—contesting only whether that is dispositive. Hr'g Tr. 62:16-19, Dkt. 92.

The Seventh Circuit also found no economic motive on the part of pregnancy centers sued by abortion clinics in prominent RICO litigation (when RICO was deemed to have an economic motive requirement). Plaintiffs there alleged that pro-life activists "established competing pregnancy testing and counseling facilities" near abortion clinics, and the Court held the pro-life activity not economically motivated, even though the activists allegedly targeted those clinics for closure, imposed costs on them, and drew donations from supporters specifically to continue those efforts. *Nat'l Org. for Women, Inc. v. Scheidler*, 968 F.2d 612, 616, 630 (7th Cir. 1992), *rev'd*, 510 U.S. 249 (1994) (holding RICO does not require an economic motive); *accord Nat'l Org. for Women, Inc. v. Scheidler*, 765 F. Supp. 937, 944 (N.D. Ill. 1991) (donations-as-economic-motive is "nonsensical") (Holderman, J.). The defendants in *Scheidler* were accused of much worse than the conduct alleged here, but even so, their pregnancy centers' economic effect on abortion clinics was deemed not to be economically motivated. There as here, any "competition" between the parties is moral and political, not market-based. And Four Women's counsel ascribed the same motive to Defendants here that *Scheidler* held was non-economic: "here you have specific attempts to put a separate entity out of business. And it's true that we don't dispute that that was their motivation." Hr'g Tr. 48:24-49:1, Dkt. 92. Counsel's next comment—"[t]hat motivation is a Chapter 93A motivation," *id.* at 49:1-2—relabels moral opposition as economic competition, the very move *Scheidler* rejected: abortion providers and pro-life advocates are "political opponents, not commercial competitors," with "political objectives, not marketplace goals." 765 F. Supp. at 941.

Compensation also does not decide classification, because the inquiry classifies the message by what it proposes to its audience, not by how its author is paid. The New York Times was a paid, for-profit publisher, yet "[t]hat the Times was paid for publishing the advertisement is as immaterial

in this connection as is the fact that newspapers and books are sold." *Sullivan*, 376 U.S. at 266. *Riley*'s professional fundraisers solicited for fees, yet the Court "appl[ied] [its] test for fully protected expression." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795-96 (1988). Choose Life's only commerce here is with Abundant Hope—a transaction the message's audience is no part of and the message never proposes—and any derivative benefit from the advertisements' success is the attenuated, second-order interest the Second and Fourth Circuits have held insufficient. *James*, 160 F.4th at 377; *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 879 F.3d 101, 109 (4th Cir. 2018).

The Supreme Court's recent decisions have also come down on the side of protection. *Chiles* reaffirmed that the dangers of censorship are no less acute for speech "in the fields of medicine and public health," and that such speech—even for-profit speech—remains part of the "marketplace of ideas." 146 S. Ct. at 1025, 1029 (quoting *NIFLA v. Becerra*, 585 U.S. at 771); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011). And *Chiles* settles that these protections are not confined to compelled speech but extend to censorship—a ground on which the Order discounted Defendants' authorities, Dkt. 94 at 29 n.4—for *Chiles* applied *NIFLA* to a law that prohibited a licensed counselor's speech based on its viewpoint and content. 146 S. Ct. at 1023-24. And in *First Choice*, the Court unanimously let a pregnancy center bring an immediate federal challenge to a state subpoena demanding its donor information—in an enforcement action over allegedly "provid[ing] false or misleading information about abortion"—warning against leaving the government free to "reshap[e] the marketplace of ideas to its pleasure." 146 S. Ct. at 1119, 1130. These decisions also strike at the foundations of *First Resort*, which classified a pregnancy center's advertising as commercial because its services "have monetary value," *but see James*, 160 F.4th at 377 (rejecting "commercial value" argument, for "this would be true of any non-profit"), and its "solicitation of a non-paying client base directly relates to [its] ability to fundraise and, in turn, to buy more advertisements." 860 F.3d at 1273-74. These arguments are not

new: Defendants pressed the First Amendment defense from their first motions, Dkt. 68 at 21-26, and explained on reconsideration how *Chiles* undermines *First Resort*'s premises, Dkt. 99 at 6-8, including how Chiles strikes at *First Resort*'s holding that a pregnancy center's advertisements about its services are "related to the provision of certain medical services, *not the exchange of ideas*." 860 F.3d at 1273 (emphasis added); *accord Fargo Women's Health Org., Inc. v. Larson*, 381 N.W.2d 176, 181 (N.D. 1986).

The divergence continues to be litigated nationwide. A district court recently held the speech of Mayday Health, a nonprofit that advertises (for-profit) out-of-state abortion pill vendors, to be noncommercial, because it "is a nonprofit organization expressing a moral belief and providing information for free," despite the fact that it "fundraises and sells merchandise on its website to further its nonprofit mission." *Rhoden*, 2026 WL 2070966, at *11; *see id.* at *17; *accord* Hr'g Tr. 15-16, *Mayday Health v. Jackley*, No. 26 Civ. 78 (KPF) (S.D.N.Y. Feb. 11, 2026), ECF No. 48 (Failla, J.) ("the fact that the website solicits donations does not transform its contents into commercial speech"). The court in *Rhoden* declined to apply *First Resort*, characterizing it—just as the Ninth Circuit did in *Ariix*—as a case where the "success of the advertisements directly relates to *employee compensation*." *Rhoden*, 2026 WL 2070966, at *11 (emphasis added).

The Tenth Circuit's decision a few weeks ago in *KetoNatural* provides further support for Defendants' position. There, a pet-food manufacturer allegedly funded two nonprofits to disparage a competitor's grain-free products. The district court described these nonprofits as "cut-outs" and "affiliated entities that appear to be independent nonprofit organizations but are largely funded by defendant" and held that "Plaintiff has alleged an economic motive behind the statements." *KetoNatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 756 F. Supp. 3d 1128, 1137, 1149 (D. Kan. 2024).

The Tenth Circuit disagreed, holding that the nonprofits' statements were not made with the required economic motive: allegations that the interested company "funds the Foundation and

influences its executive decisions cannot satisfy the quid pro quo necessary" to make the nonprofit's speech commercial. 181 F.4th at 1088. The key element of the commercial-speech analysis disputed here is economic motivation, see Dkt. 94 at 22—precisely the factor *KetoNatural* holds requires a quid pro quo, "*direct* economic gain," which Four Women has not alleged here. *Id.* at 1087-88 (emphasis added).

The question Defendants seek to certify is antecedent and purely legal. Further factual development would bear on what a factfinder might find, not on which legal standard governs. The question will also materially advance termination of the litigation. Absent certification, the parties face lengthy and expensive discovery, including a potential battle of experts over disputed scientific questions, discovery implicating donor and associational relationships of the kind the Supreme Court confronted in *First Choice*, and inquiry into women's sensitive conversations on medical decisions with the parties.[1] Should the First Circuit hold that the First Amendment protects this speech, the case ends; even a narrower answer would reduce the issues, simplify discovery, and advance termination.

Certification is all the more warranted given "[t]he practical and political consequences" present here. *In re Trump*, 874 F.3d at 952. Pregnancy-center speech alleged to "deceive" or "mislead" women has been the predicate of major appellate litigation for many years, *see, e.g.*, *First Choice*, 146 S. Ct. 1114; *Greater Baltimore Ctr.*, 879 F.3d 101; *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233 (2d Cir. 2014), and prompt clarification of the governing standards "would serve the public interest." *Brown v. Town of South Thomaston*, No. 08-308-P-H, 2010 WL 11545906, at *2 (D. Me. Jan. 21, 2010).

[1] Counsel for Four Women stated during oral argument that it would seek lost profits, "through the loss of actual business" or "through the business wrongfully obtained by the defendant," referring to the "business" of clients of Abundant Hope and/or Four Women. Hr'g Tr. 65:18-20 (July 29, 2025), Dkt. 92. Determining each relevant client's intent and decision regarding abortion would presumably require an invasive one-by-one review of their records at Abundant Hope and/or Four Women.

An appeal clarifying the First Amendment protections for speech on abortion, the nation's most contentious social issue over the past 50 years, would necessarily serve the highest public interest.

The Court should certify for appeal whether Defendants' advertising is commercial speech.

**B. Whether Defendants speak with the intent of influencing customers "to purchase the speaker's goods or services" under the Lanham Act.**

*The question is controlling.* "[Controlling] questions typically implicate a pure legal principle that can be resolved without extensive consultation to the record." *Meijer, Inc. v. Ranbaxy Inc.*, 245 F. Supp. 3d 312, 315 (D. Mass. 2017). The Lanham Act claim presents such a question: whether Defendants speak "with the intent of influencing potential customers to *purchase* [Abundant Hope's] goods or services" (Dkt. 94 at 21) (emphasis added) where the services at issue are provided entirely free of charge. If they do not, the Lanham Act claim fails.

*Substantial ground for difference of opinion exists.* The parties identified, and the Order cited, no decision finding that the Lanham Act's "purchase" requirement applies to a pregnancy center's advertising—or to any nonprofit's advertising—of its charitable offering of wholly free services. The nonprofit case the Order drew on, *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 259 (4th Cir. 2017) (unpublished), involved a certifier of eggs speaking to grocery retailers about which producers' eggs to stock and sell for profit: the purpose was to get the audience to buy eggs bearing its certification. *See* Dkt. 94 at 22-23. Here, Abundant Hope's communication leads its audience to buy nothing. And months after *Handsome Brook*, the same circuit held in a published decision that a pregnancy center's promotion of free services proposes no commercial transaction at all. *Greater Baltimore Ctr.*, 879 F.3d at 108-09. A first-of-its-kind application of a commercial purchase statute to noncommercial charitable outreach is the paradigm of a question "as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

The Court's Order observed that Defendants did not "cite any case law to support the proposition that 'to purchase' requires a monetary exchange." Dkt. 94 at 23. But, respectfully, the sole

authority the Order cited was *Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc.*, 332 F.3d 6, 19 (1st Cir. 2003)—and nothing in the pin-cited passage supports a contrary proposition. In fact, *Podiatrist* nowhere suggests that "purchase" encompasses the receipt of free services. *See also New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1118 (C.D. Cal. 2004) ("There is no purchase here because Ad-aware is available for free to the general public . . . ."). The meaning of "to purchase" for services that are concededly free is a question only the First Circuit can settle.

Nor can the audience's intent supply the speaker's proposal. The Order reasoned that the defendants intended to influence "potential customers to purchase the services offered at AWHC." Dkt. 94 at 23. But the amended complaint alleges the opposite: women allegedly seeking to purchase abortion services—from Four Women—were persuaded to accept free services from a charity instead. Speech that persuades a consumer not to buy does not satisfy that element. *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1268 (10th Cir. 2020) (Lanham Act claim failed because Angie's List did not intend to influence consumers to purchase its goods or services, instead, "[a]t best, the court concluded, it could be reasonably inferred that the statements were made to influence consumers to purchase goods and services from a tree care business other than" the plaintiff's). If intercepting would-be purchasers with a free alternative were itself influencing customers "to purchase," every charity that urges "don't buy—come to us, free of charge" would be engaged in commercial advertising, and the Act's textual anchor would do no work at all. The legal aid office that offers a tenant free representation instead of paid counsel, the volunteer tax program that prepares returns for free instead of for a preparer's fee, the charitable bail fund that posts bail so a family need not pay a bondsman—all would become commercial speakers and every displaced paid provider a competitor with a potential Lanham Act claim.

The record underscores the textual gap. Four Women's own opposition could not state its theory in the statute's terms, recasting *Podiatrist*'s element as "the intent of influencing potential

customers to solicit Abundant Hope's services." Dkt. 79-1 at 25 (emphasis added). Solicit is not purchase.

The Order otherwise relied on *First Resort* and *Larson* for the proposition that "the cost of services is not determinative." Dkt. 94 at 24. Neither analyzed the "purchase" requirement of the Lanham Act. Both addressed whether pregnancy-center speech is "commercial" for First Amendment purposes, which is a distinct factor. The Lanham Act requires *purchases from the speaker*, but the complaint faults Defendants for allegedly urging the public *not to purchase* at all. Neither *First Resort* nor *Larson* supports extending the Act to speech that lacks an intent to induce a purchase.

No court of appeals has held that free services can be "purchased" within the meaning of § 1125(a)(1)(B), and the one district court to face the question before this case read the element the other way. *New.Net*, 356 F. Supp. 2d at 1118. At worst, whether one can "purchase" free services is a difficult, novel question on which reasonable jurists can disagree. *In re Trump*, 874 F.3d at 952.

*The question will materially advance termination of the litigation.* If Defendants do not speak to induce a "purchase," the federal claim must be dismissed entirely. The question should therefore be certified.

**C. Whether Chapter 93A § 11 reaches Choose Life's speech.**

*The question is controlling.* This Court's Order holds that the Abundant Hope Defendants' public-facing speech is not actionable under Chapter 93A because a charitable pregnancy center offering free services is not engaged in "trade or commerce." Dkt. 94 at 9-13; *see Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480, 493-94 (1986). Yet the Order simultaneously permits § 11 liability against Choose Life for supplying the very same speech about the same services that Abundant Hope can communicate freely. If the First Circuit holds that § 11 does not permit liability against Choose Life in this circumstance, Plaintiff's § 11 claim must be dismissed.

*Substantial ground for difference of opinion exists.* Applying *Planned Parenthood*, this Court held that § 11 does not reach Abundant Hope's speech. 398 Mass. at 493-94; Dkt. 94 at 9-13. Yet the same

speech—created by Choose Life as Abundant Hope's contractor, published in service of Abundant Hope's charitable mission, and advertising services deemed not to be in "trade or commerce"—remains actionable against Choose Life. The resulting rule turns on speaker identity: the message is beyond the statute when the charity speaks it and actionable when the charity's vendor drafts it. Indeed, the Order recognizes that Abundant Hope's "use of a for-profit marketing agency does not change this calculus, because Abundant Hope contracted with [Choose Life] to carry out the organizations' shared mission." Dkt. 94 at 12.

Choose Life respectfully urges that the same contract, in service of the same mission, cannot leave the principal outside the statute yet place its agent within it—as against the principal's alleged competitor. Choose Life does not act independently of Abundant Hope when advertising, nor act in service of any market interest of its own in AWHC's client volume; it speaks for the charity, in the charity's name, to the charity's audience. Whatever relationship Choose Life has with Four Women is therefore no greater than Abundant Hope's—the relationship this Court held § 11 does not reach. Under that rule, a plaintiff could reach any charity's protected outreach by suing its printer, its ad agency, or its marketing firm instead of the charity, and *Planned Parenthood* would decide nothing. *See also Sorrell*, 564 U.S. at 563-65 (law that "enacts content- and speaker-based restrictions" and "disfavors specific speakers" warrants "heightened judicial scrutiny"); *NIFLA*, 585 U.S. at 777-78 (courts are "deeply skeptical" of laws that "distinguis[h] among different speakers, allowing speech by some but not others" (quoting *Citizens United v. FEC*, 558 U.S. 310, 340 (2010))). Whether § 11 tolerates that result is a question that, at worst, no controlling authority settles.

The Order grounds Choose Life's exposure in Choose Life's own conduct: Choose Life is a for-profit company, Abundant Hope paid it "substantial sums," and Choose Life created the advertisements and website content. Dkt. 94 at 14-15. That framing sharpens the question: whether a vendor's receipt of payment from the charity converts the charity's non-actionable message into the

vendor's "trade or commerce" as against the charity's alleged "competitor." The Supreme Judicial Court has never squarely confronted that question.

The participation cases the Order draws on do not settle it either. *Hanover* and the decisions following it ground participation liability in an underlying breach of fiduciary duty. Dkt. 94 at 15-16 (citing *Hanover Ins. Co. v. Sutton*, 46 Mass. App. Ct. 153, 172-74 (1999)). Chapter 93A "do[es] not explicitly enumerate private 'aiding and abetting' liability," and the decisions in this district that recognize participation liability involve breach of fiduciary duty. *In re TelexFree Sec. Litig.*, 358 F. Supp. 3d 98, 102-03 (D. Mass. 2019) (citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)). No fiduciary breach is alleged here. Whether participation principles built for fiduciary-breach settings extend to a vendor's creation of a charity's constitutionally protected outreach is, at minimum, a pure question of law on which reasonable jurists can disagree. This Court recognized the novelty at the hearing, asking whether "the advertiser for a nonprofit organization" that is "exempt from Section 11 of Chapter 93A" may "be subject to liability if it . . . knowingly participated in the allegedly false or deceptive advertising": "I didn't see case law cited either way for this question, and perhaps it's a novel one." Hr'g Tr. 16:10-23, Dkt. 92.

The applicability of § 11 to Choose Life also raises a pure legal question as to the degree of commercial relationship required between the targeted speaker and its audience. This Court's Order held privity unnecessary where the parties "are engaged in more than a minor or insignificant business relationship." Dkt. 94 at 16 (quoting *In re Pharm. Indus. Average Wholesale Price Litig.,* 582 F.3d 156, 192-93 (1st Cir. 2009)). And the Supreme Judicial Court has described § 11 as requiring "a commercial transaction between the parties." *Rafferty v. Merck & Co.*, 479 Mass. 141, 162 n.7 (2018) (citing *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 22-23 (1997)). But Choose Life's only connection to Four Women is derivative: it prepared and placed advertising for Abundant Hope, in Abundant Hope's name, addressed to Abundant Hope's audience, in service of its mission. Dkt. 94 at 14-16. The Order

nonetheless treats that derivative connection as "commercial" toward Four Women, even though the principal's identical relationship—and identical speech—is not. Whether a market relationship wholly derivative of a relationship that § 11 does not reach can itself satisfy § 11 is a pure question of Massachusetts law on which *Rafferty* and *Average Wholesale Price* point in different directions.

*The question will materially advance termination of the litigation.* A prompt determination that § 11 does not attach to Choose Life when it does not attach to Abundant Hope advances termination because it will require dismissal of Count II. Chapter 93A is also the only source of mandatory multiplied damages (for a willful or knowing violation) and the likeliest potential source of attorney's fees in this case, and Choose Life is the only defendant still facing Count II. A prompt answer reshapes exposure, settlement posture, and the scope of trial. The question should thus be certified.

### III. In the Alternative, the Court Should Certify the Chapter 93A § 11 Question to the Massachusetts Supreme Judicial Court.

Defendants' primary request is certification of the Order to the First Circuit, which may itself certify the Chapter 93A question to the Supreme Judicial Court if it concludes that state law controls. *See Wright*, 2024 WL 4681749, at *3 n.7; *Zurich Am. Ins. Co. v. Med. Props. Tr., Inc.*, 88 F.4th 1029, 1035 (1st Cir. 2023) (certifying a question to the SJC after granting interlocutory review). If the Court declines to certify under § 1292(b), Choose Life asks that the § 11 question be certified directly.

"[T]his Court may certify [a] question to the Supreme Judicial Court" when "a question of Massachusetts law may prove determinative in the case at hand and when it appears that there is no controlling precedent from the Commonwealth's highest court." *Zecco v. Hess Corp.*, 777 F. Supp. 2d 207, 211 (D. Mass. 2011) (citing Mass. S.J.C. R. 1:03). Both conditions hold here, for the reasons described in Section II.C. The question "may prove determinative" because resolution in Choose Life's favor eliminates one of the two claims against it outright. And there is "no controlling precedent" from the Commonwealth's highest court: the Supreme Judicial Court has never addressed whether § 11 expands to reach a vendor doing business with a nonprofit not engaged in "trade or

commerce," nor the degree of commercial connection § 11 requires between a defendant and a plaintiff with which it has never transacted.

Indeed, because Choose Life's targeted speech is the same speech this Court held not actionable under § 11 when spoken by Abundant Hope, the Order as to Choose Life "is at least in tension with" the Supreme Judicial Court's decision in *Planned Parenthood*. *See Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs.*, 608 F.3d 110, 118 (1st Cir. 2010).

If the Court certifies, Choose Life respectfully proposes the following question: Where a nonprofit's advertising of its charitable offering of free services is not in "trade or commerce" under M.G.L. c. 93A, and its own promotion of those services is therefore not actionable under the statute, see *Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480 (1986), may a for-profit marketing company that created and disseminated the nonprofit's promotional content be held liable under M.G.L. c. 93A, § 11, to an alleged for-profit competitor of the nonprofit with which the marketing company has had no direct commercial dealings? A proposed certification order, which states the question and includes the statement of facts required by Rule 1:03, accompanies this motion.

If this Court declines certification under § 1292(b), it should certify this question to the Supreme Judicial Court to resolve this tension—and the serious policy consequences it carries for nonprofits across the Commonwealth—in the first instance.

**IV. The Court Should Stay Proceedings Pending Certification and Review.**

Section 1292(b) contemplates a stay from this Court: an application for appeal "shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). Independent of the statute, this Court has inherent power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). That power is discretionary, exercised by weighing the competing interests: the economy of time and effort for the Court, counsel, and the

parties; the hardship to the movant of going forward; and any damage a stay may cause the other side. Every consideration favors a stay here.

First, a stay preserves the value of certification. If discovery proceeds while the First Circuit or the Supreme Judicial Court considers these questions, the parties will spend those resources anyway—and will have spent them for nothing if Defendants prevail. Discovery is just beginning; a stay now costs little and may save nearly everything certification is designed to save.

Second, the stay Defendants seek is modest in scope: in the first instance, a docket-management stay under *Landis*, pending this Court's certification ruling and, if it certifies, the First Circuit's decision whether to accept the appeal—relief that turns on the balance of the competing interests, not on the Court disavowing its ruling. And even if the Court were to measure a stay carried through merits review against the standards for a stay pending appeal, the considerations that make these questions substantial—the statutory text recited in *Podiatrist* and the text of § 11, the appellate divergence on speech classification, and the district-level disagreement over the purchase element—support the same relief. If the Court prefers, it may confine any stay to that threshold period and revisit its scope should the First Circuit accept the appeal.

Third, absent a stay, Defendants face irreparable injury. The parties must undergo the very burdens certification would spare: fact and expert discovery into disputed scientific questions, inquiries into women's sensitive medical conversations, and probes of a nonprofit's donor and associational relationships. The irreparable injury here is constitutional, not merely financial (including to a nonprofit dependent on charitable donations). Discovery into protected speech and association inflicts harm the moment disclosure is compelled. See *First Choice*, 146 S. Ct. at 1125, 1130-31; *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Fourth, a stay will not substantially injure Four Women. Four Women has litigated without interim relief: its preliminary-injunction motion was denied as moot, Dkt. 60, and it never renewed it. A modest pause will not diminish Four Women's claimed redress for past diversion. The public interest, discussed above, points the same way. The Court should resolve whether the Constitution protects this speech before compelling discovery into it, not after.

Defendants therefore request that the Court stay all proceedings, including discovery, pending (1) the Court's ruling on this motion; (2) if the Court certifies under § 1292(b), the First Circuit's decision whether to accept the appeal and, if it accepts, its decision on the merits; and (3) if the Court certifies to the Supreme Judicial Court, that court's answer.

## CONCLUSION

For the foregoing reasons, the Court should amend its March 26, 2026 Memorandum and Order to certify it for immediate appeal to the First Circuit pursuant to 28 U.S.C. § 1292(b). If it declines, the Court should alternatively certify to the Supreme Judicial Court of Massachusetts, pursuant to its Rule 1:03, the question whether Chapter 93A § 11 applies to Choose Life in these circumstances. The Court should also stay proceedings while this motion and any resulting appeal or certified question are resolved.

Respectfully submitted, this 19th day of August, 2026.

/s/ Peter Breen
Peter Breen†
Michael McHale†
Nathan Loyd†
Thomas More Society
121 W. Wacker Drive
Suite 650
Chicago, IL 60601
(312) 782-1680
pbreen@thomasmoresociety.org
mmchale@thomasmoresociety.org
nloyd@thomasmoresociety.org
† admitted *pro hac vice*

/s/ Ryan P. McLane
Ryan P. McLane
(BBO# 697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
(413) 789-7771
ryan@mclanelaw.com

*Attorneys for Defendant Choose Life Marketing, LLC*

/s/ Thomas M. Harvey
Thomas M. Harvey
Law Office of Thomas M. Harvey
993 Massachusetts Ave., Suite 306
Arlington, MA 02476
Tel: 617-710-3616; Fax 781-643-1126
tharveyesq@aol.com
*Attorney for Defendants Abundant Hope Pregnancy Resource Center Inc., Catherine Roman, Nicole Carges, and Darlene Howard*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2026, I served a copy of the foregoing document upon counsel of record via CM/ECF.

Dated: August 19, 2026 /s/ Peter Breen
Peter Breen

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(2), the undersigned counsel certifies that he conferred with Plaintiff's counsel and attempted in good faith to resolve or narrow the issues presented by this motion. Plaintiff's counsel indicated that Plaintiff opposes the relief requested.

Dated: August 19, 2026 /s/ Peter Breen
Peter Breen