**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

FOUR WOMEN HEALTH SERVICES, LLC,

Plaintiff,

v.

ABUNDANT HOPE PREGNANCY RESOURCE CENTER INC., d/b/a ATTLEBORO WOMEN'S HEALTH CENTER, CATHERINE ROMAN, NICOLE CARGES, DARLENE HOWARD, and CHOOSE LIFE MARKETING, LLC,

Defendants.

Civil Action No: 1:24-cv-12283-JEK

**PLAINTIFF FOUR WOMEN HEALTH SERVICES, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY INTERLOCUTORY ORDER FOR IMMEDIATE APPEAL**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J. Props. v. Stanley Black & Decker, Inc.*,
No. 11-10835-FDS, 2013 U.S. Dist. LEXIS 50849 (D. Mass. Apr. 8, 2013) ........................13

*Agatha v. Trump*,
151 F.4th 9 (1st Cir. 2025)........................................................................................17, 18

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ..........................................................................................7, 8

*Atrion Networking Corp. v. Marble Play, LLC*,
31 F. Supp. 3d 357 (D.R.I. 2014) ...................................................................................11,13

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)..................................................................................................7,8, 9,10

*Camacho v. P.R. Ports Auth.*,
369 F.3d 570 (1st Cir. 2004)..................................................................................................4

*Canal Elec. Co. v. Westinghouse Elec. Corp.*,
406 Mass. 369 (1990) .........................................................................................................15

*Caraballo-Seda v. Mun. of Hormigueros*,
395 F.3d 7 (1st Cir. 2005)...........................................................................................1, 4,5,18

*Carter Products, Inc. v. FTC*,
323 F.2d 523 (5th Cir. 1963) ..............................................................................................16

*Chiles v. Salazar*,
607 U.S. 627 (2026)..............................................................................................................10

*Colgate-Palmolive Co. v. FTC*,
310 F.2d 89 (1st Cir. 1962)..................................................................................................16

*Cummins v. EG & G Sealol, Inc.*,
697 F. Supp. 64 (D.R.I. 1988)..................................................................................4, 13, 14

*Doherty, Clifford, Steers & Shenfield, Inc. v. FTC*,
392 F.2d 921 (6th Cir. 1968) ..............................................................................................16

*Espinal v. Sephora USA, Inc.*,
No. 22 Civ. 3034-PAE, 2024 U.S. Dist. LEXIS 206346 (S.D.N.Y. Nov. 12,
2024) ....................................................................................................................................13

*Fargo Women's Health Org., Inc. v. Larson*,
381 N.W.2d 176 (N.D. 1986) ....................................................................................8

*First Resort, Inc. v. Herrera*,
860 F.3d 1263 (9th Cir. 2017) ................................................................................7, 8

*Fitzmorris v. Weaver*,
No. 21-cv-25-PB, 2024 U.S. Dist. LEXIS 10476 (D.N.H. Jan. 22, 2024) .............................19

*FTC v. LeanSpa, LLC*,
920 F. Supp. 2d 270 (D. Conn. 2013)..........................................................................16

*Gordon & Breach Sci. Publ'rs S.A. v. Am. Inst. of Physics*,
859 F. Supp. 1521 (S.D.N.Y. 1994).............................................................................12

*Graham v. Just A Start Corp.*,
No. 2009-1220, 2011 Mass. Super. LEXIS 139 (Mass. Super. Ct. Aug. 4, 2011) ...................................................................................................................15

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
700 F. App'x 251 (4th Cir. 2017) ..........................................................................8, 12

*Henderson v. Bank of N.Y. Mellon Corp.*,
No. 15-10599-PBS, 2016 U.S. Dist. LEXIS 200796 (D. Mass. Feb. 17, 2016)............. *passim*

*Katz v. Liberty Power Corp., LLC*,
No. 18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 198144 (D. Mass. Nov. 15, 2019) .....................................................................................................................5

*KetoNatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*,
181 F.4th 1069 (10th Cir. 2026) ................................................................................9

*Lama-Wolobah v. Paqui, LLC*,
No. 4:24-cv-12016-MRG, 2026 U.S. Dist. LEXIS 73065 (D. Mass. Mar. 31, 2026) ...............................................................................................11, 14, 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)...................................................................................................12

*Mayday Health v. Rhoden*,
No. 26-cv-04096-CCT, 2026 U.S. Dist. LEXIS 160676 (D.S.D. July 17, 2026)......................9

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
775 F.3d 109 (1st Cir. 2014).......................................................................................16

*Nat'l Inst. of Family & Life Advocates ("NIFLA") v. James*,
160 F.4th 360 (2d Cir. 2025) .......................................................................................9

*NOW v. Scheidler*,
968 F.2d 612 (7th Cir. 1992) ....................10

*New Eng.Gen-Connect, LLC v. US Carburetion, Inc.*,
No. 14-CV-13530-IT, 2015 U.S. Dist. LEXIS 178011 (D. Mass. Dec. 8, 2015)....................12

*New Jersey v. Trump*,
131 F.4th 27 (1st Cir. 2025)....................17

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964)....................10

*New.Net, Inc. v. Lavasoft*,
356 F. Supp. 2d 1090 (C.D. Cal. 2004) ....................12

*NIFLA v. Becerra*,
585 U.S. 755 (2018)....................10

*Picone v. Shire, LLC*,
No. 1:16-cv-12396-ADB, 2020 U.S. Dist. LEXIS 99910 (D. Mass. June 8, 2020) ....................18

*Planned Parenthood Fed. of Am. v. Problem Pregnancy of Worcester, Inc.*,
398 Mass. 480 (1986) ....................2

*Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*,
332 F.3d 6 (1st Cir. 2003)....................10

*Riley v. Nat'l Fed'n of Blind*,
487 U.S. 781 (1988)....................10

*S. Orange Chiropractic Ctr., LLC v. Cayan LLC*,
No. 15-13069-PBS, 2016 U.S. Dist. LEXIS 70680 (D. Mass. May 31, 2016) ...........4, 5, 6, 11

*Turgut v. Hitachi Rail*,
No. 1:24-cv-10660-AK (D. Mass. July 1, 2025), ECF 33 ....................4

*United Air Lines, Inc. v. Gregory*,
716 F. Supp. 2d 79 (D. Mass. 2010) ....................3, 4, 7, 11

*United States v. McCord Corp.*,
No. 22-cv-0289-SM-AJ, 2025 U.S. Dist. LEXIS 105656 (D.N.H. June 4, 2025) ....................6

*United States v. Representatives*,
No. 20-1475-CVR, 2023 U.S. Dist. LEXIS 233220 (D.P.R. Feb. 14, 2023) ....................12

*Usmanov v. MFS*,
No. 1:23-cv-11631-JEK (D. Mass. Oct. 21, 2024), ECF 36....................................................4,7

*Zecco v. Hess Corp.*,
777 F. Supp. 2d 207 (D. Mass. 2011).....................................................................16, 17

**Statutes**

28 U.S.C. § 1292(b)..........................................................................................3, 4, 17, 18

**Other Authorities**

S.J.C. Rule 1:03 ..................................................................................................................14

## INTRODUCTION

On March 26, 2026, following extensive briefing and oral argument, this Court rejected Defendants' first attempts to terminate this case. ECF 94. Denying in full Choose Life Marketing's ("CLM") motion to dismiss and denying in part the remaining defendants' motion for judgment on the pleadings, the Court held that Four Women Health Services, LLC ("Four Women") plausibly alleged that all Defendants violated the Lanham Act and that CLM violated M.G.L. c. 93A ("Chapter 93A"). *See id.* Defendants moved this Court to reconsider its ruling, and after further briefing, the Court denied these motions. ECF 113. Now, Defendants return to this Court, asking it to agree that now is the time for an appellate court to step in. Defendants are wrong, and the Court should reject their certification request.

Interlocutory appeal of a denial of a motion to dismiss is exceedingly rare. *See Caraballo-Seda v. Mun. of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005). Defendants fail to demonstrate that this Court's Order presents that rare case. Defendants seek certification of three questions, each of which Defendants have raised on prior occasions and the Court has reasoned through and answered. Neither disagreement with this Court's analysis and conclusions nor a belief that this case is important transforms twice-rejected arguments into a basis for certification. There is nothing barring Defendants from raising these same legal arguments at summary judgment and on appeal following a final judgment, but Defendants cannot circumvent litigation before this Court.

Instead, Defendants must litigate this case. Defendants' Rule 12 motions froze this case at the pleading stage for 19 months, during which time Defendants' advertising practices continued. This Court has held that Four Women has stated plausible claims against all Defendants. Defendants cannot be permitted to continue to avoid discovery by simply finding new ways to raise the same rejected arguments. Plaintiff requests that this Court deny Defendants' motion.

## BACKGROUND

Four Women filed its Amended Complaint on January 13, 2025, alleging that Defendants had engaged in a pattern of unfair, deceptive, and false advertising in online websites in violation of the Lanham Act and Chapter 93A. ECF 59. Specifically, Four Women alleged that Abundant Hope Pregnancy Resource Center, Inc. ("Abundant Hope"), Catherine Roman, Nicole Carges, and Darlene Howard (together with Abundant Hope, the "Abundant Hope Defendants"), and CLM—a for-profit ad agency paid by the Abundant Hope Defendants—developed and disseminated online advertising that misrepresented Abundant Hope and its services in an effort to mislead and divert women seeking abortion healthcare away from Four Women. *See generally id*. On March 14, 2025, CLM moved to dismiss, ECF 64, and on April 4, 2025, the Abundant Hope Defendants moved for judgment on the pleadings. ECF 76.

On March 26, 2026, the Court issued its Memorandum and Order resolving both motions (the "Order"). ECF 94. The Court denied CLM's motion to dismiss in its entirety, holding that Four Women plausibly stated claims that CLM violated both the Lanham Act and Chapter 93A. *Id.* at 30. CLM had argued that because Abundant Hope is a nonprofit that does not charge for the services advertised, Defendants' speech is not "commercial" and CLM cannot be liable under the Lanham Act or Chapter 93A. *See id*. at 22, 15. The Court rejected these arguments, holding that Four Women had plausibly alleged that Defendants "engaged in commercial speech through false or misleading advertisements." *Id*. at 29. The Court granted the Abundant Hope Defendants' motion for judgment on the pleadings as to the Chapter 93A claim only, concluding that the Supreme Judicial Court's ("SJC") 1986 decision in *Planned Parenthood Fed. of Am. v. Problem Pregnancy of Worcester, Inc*., 398 Mass. 480 (1986), foreclosed liability as to Abundant Hope, ECF 94 at 10-13. The Court held, however, that Four Women plausibly alleged a violation of the

Lanham Act against the Abundant Hope Defendants. *Id*. at 27.

Defendants moved for reconsideration, ECF 97; ECF 100. CLM argued that intervening First Amendment law compelled reconsideration of the Court's rulings, ECF 99, and Abundant Hope Defendants filed an untimely motion seeking to adopt CLM's motion, ECF 100. Following further briefing, ECF 101; ECF 103, the Court denied both motions, ECF 113.

On August 19, 2026, nineteen months after Four Women filed its Amended Complaint, the parties appeared for an initial scheduling conference in this case, where the Court approved the parties' proposed discovery schedule. ECF 117. Later that day, Defendants filed this Motion, seeking this Court's certification of an interlocutory appeal and a stay of discovery. ECF 118.

## ARGUMENT

This case is not the rare, exceptional circumstance in which interlocutory review of a motion to dismiss denial is warranted. At the precipice of discovery, Defendants ask this Court to freeze the litigation, insisting that now is the time for appellate intervention. Defendants focus their motion on the First Circuit, asking the Court to certify review of its Order under 28 U.S.C. § 1292(b), with a brief request "in the alternative" for certification of one question to the SJC. In either case, Defendants also request the Court stay the litigation.

Neither avenue is warranted, nor is a stay. The Court's Order rested on the careful application of well-settled law to the facts of this case, and Defendants have failed to demonstrate the "exceptional circumstances" that "justify a departure from the basic policy of postponing appellate review until after the entry of final judgment," *United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79, 89 (D. Mass. 2010) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). Four Women addresses each of Defendants' arguments in turn.

## I. <u>Certification Under § 1292(b) Is Inappropriate.</u>

"Section 1292(b) is meant to be used sparingly, and appeals under it are, accordingly, hen's-teeth rare." *Camacho v. P.R. Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004). Certification under § 1292(b) requires an order that (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion, (3) the "immediate appeal" of which "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Certification under § 1292(b) is an extraordinary procedure," and accordingly, "the party seeking it bears a heavy burden of convincing the court that" interlocutory review is warranted. *See United Air Lines*, 716 F. Supp. 2d at 89. "An extensive body of case law indicates that § 1292(b) review should only be granted in rare cases where the saving of costs to the litigants and increase in judicial efficiency is great." *Cummins v. EG & G Sealol, Inc.*, 697 F. Supp. 64, 68 (D.R.I. 1988).

"As a general rule, the First Circuit does not grant interlocutory appeals from a denial of a motion to dismiss." *Henderson v. Bank of N.Y. Mellon Corp.*, No. 15-10599-PBS, 2016 U.S. Dist. LEXIS 200796, at *5 (D. Mass. Feb. 17, 2016) (citing *Caraballo-Seda*, 395 F.3d at 9) (denying motion for certification of motion to dismiss denial); *see, e.g.*, Order Denying Motion for § 1292 Certification, *EmblemHealth v. Alexion*, No. 1:25-cv-10985-BEM (D. Mass. Apr. 28, 2026), ECF 71; Order Denying Motion for § 1292 Certification, *Turgut v. Hitachi Rail*, No. 1:24-cv-10660-AK (D. Mass. July 1, 2025), ECF 33; Order Denying Motion for § 1292 Certification, *Usmanov v. MFS*, No. 1:23-cv-11631-JEK (D. Mass. Oct. 21, 2024), ECF 36; *S. Orange Chiropractic Ctr., LLC v. Cayan LLC*, No. 15-13069-PBS, 2016 U.S. Dist. LEXIS 70680, at *3 (D. Mass. May 31, 2016); *United Air Lines*, 716 F. Supp. 2d at 89. "This reflects [the First Circuit's] policy preference against piecemeal litigation as well as prudential concerns about mootness, ripeness, and lengthy

appellate proceedings." *Katz v. Liberty Power Corp., LLC*, No. 18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 198144, at *9 (D. Mass. Nov. 15, 2019) (quoting *Caraballo-Seda*, 395 F.3d at 9).

Defendants' belief that the issues in this case are important, complex, novel, or "political[ly] consequen[tial]," ECF 119 at 11 (quoting *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017)), does not satisfy this standard. As the First Circuit has stated, "the fact that the case has tremendous implications" is "not determinative." *Caraballo-Seda*, 395 F.3d at 9; *see, e.g.*, *Katz*, 2019 U.S. Dist. LEXIS 198144, at *9 (denying motion for certification); *Henderson*, 2016 U.S. Dist. LEXIS 200796, at *6; *S. Orange Chiropractic Ctr.*, 2016 U.S. Dist. LEXIS 70680, at *3. District courts are perfectly well suited to decide cases with "tremendous implications," and they do so all the time.

Defendants raise three questions for certification under Section 1292(b): (A) whether advertising a nonprofit's free services is commercial speech ("Question A"); (B) whether the Lanham Act's requirement that speech be made "with the intent of influencing potential customers to purchase the speaker's goods or services" can be satisfied where the advertised services are free ("Question B"); and (C) for CLM only, whether Chapter 93A reaches a vendor that advertises on behalf of a nonprofit when the nonprofit's "identical speech" is not itself actionable under Chapter 93A ("Question C"). *See* ECF 119 at 1. To avoid redundancy, Four Women addresses Question A and Question B together, as both ask whether Defendants' speech is commercial as a matter of law.[1] As detailed below, none of these questions merits certification.

---

[1] The "purchase" language referenced in Defendants' second proposed question falls within the legal definition of "commercial advertising or promotion."

A. Defendants' Proposed Question Regarding Whether Their Speech Is Commercial Does Not Merit Certification.

Defendants ask the Court to certify its Order based on the asserted question of whether their advertising is commercial speech. This question is not a controlling question of law for which there is substantial ground for difference of opinion.[2] It is a fact-intensive question that scrutinizes the Court's application of law to fact.

Defendants' question is not a controlling question *of law*. "A controlling question of law usually involves 'a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine' rather than an application of law to the facts." *S. Orange Chiropractic Ctr.*, 2016 U.S. Dist. LEXIS 70680, at *4 (quoting *Ahrenholz v. Bd. of Tr. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)); *see also United States v. McCord Corp.*, No. 22-cv-0289-SM-AJ, 2025 U.S. Dist. LEXIS 105656, at *3 (D.N.H. June 4, 2025) (holding that the meaning of a word depended "largely upon the facts and circumstances of the particular case" and was therefore not a question of law). Whether the advertising at issue is commercial speech is a mixed question of fact and law, requiring the application of law to the facts of this case. Four Women's Amended Complaint included factual allegations on such topics as the location, form, and content of the advertisements; the role of CLM as a paid, for-profit advertising firm; and the movement of money for advertising and fundraising. The Court relied on these factual allegations in reaching its holding in the Order. *See* ECF 94 at 22-23. Review of Question A would not be a pure question of law as required under Section 1292(b).

By extension, Defendants' disagreement with the Court's application of case law to the facts of this case does not amount to "substantial ground for difference of opinion" for the purposes

[2] Four Women does not dispute that such a question would be "controlling," and that immediate appeal could "materially advance" the termination of the litigation.

of Section 1292(b). "[T]he fact that the parties [] disagree as to the interpretation of persuasive authority" does not "constitute a difference of opinion sufficient to warrant certification." *Henderson*, 2016 U.S. Dist. LEXIS 200796, at *9 (quoting *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)); *see United Air Lines*, 716 F. Supp. 2d at 92 ("[A] difference of opinion suited for a § 1292 appeal does not arise every time a court is called upon to apply a particular legal principle to a novel fact pattern.") (internal quotations omitted); *see also Usmanov*, No. 1:23-cv-11631, ECF 36 ("[D]isagreement over a court's application of the law to the facts does not tee up a 'controlling question of law'").

Defendants disagree with the Court's application of the three-factor "commercial-speech" framework, a notoriously "fact-driven" analysis, *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (quoting *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1272 (9th Cir. 2017)). In *Bolger v. Youngs Drug Prods. Corp.*, the Supreme Court stated that facts present "strong support" that speech is commercial where (1) the speech is an advertisement, (2) the speech refers to a particular product, and (3) the speaker "has an economic motivation." 463 U.S. 60, 66-67 (1983). The Supreme Court clarified that no one factor was necessary or sufficient to constitute "commercial" speech; while "[t]he combination of *all* these characteristics [] provides strong support for the" commercial speech classification, it was not holding that each factor "must necessarily be present in order for speech to be commercial." *Id.* at 67 & n.14.

Defendants' challenge to the "commercial speech" classification has always turned on only one factor, the "economic motivation" factor. Defendants argue the Court misapplied this factor under *Ariix*, 985 F.3d at 1116 (interpreting the third *Bolger* factor as "ask[ing] whether the speaker acted *primarily* out of economic motivation"). ECF 119 at 6. Even if *Ariix* controlled here (which it does not), Defendants mischaracterize *Ariix*. First, the Ninth Circuit emphasized that it was not

"collaps[ing] the *Bolger* factors into this one factor; no one factor will be dispositive." *Id.* at 1117 n.7. Second, in its analysis, the Ninth Circuit clarified that "economic motivation is *not* limited simply to the expectation of a direct commercial transaction with consumers" and listed other benefits that could suffice as "adequate economic motivation." 985 F.3d at 1117 (emphasis added).

Against this backdrop, the Court held that Defendants met this "economic motivation" factor. CLM, a for-profit advertising firm compensated financially for the advertising at issue, "has a clear economic incentive" under this standard,[3] and Abundant Hope receives indirect financial benefits from the advertising, including through fundraising. ECF 94 at 23. The Court's Order aligns with holdings by other courts nationwide that have recognized that when a nonprofit's statements are made in a commercial context and directed toward the promotion of services rather than the exchange of ideas, such statements may constitute "commercial speech." *See Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 259 (4th Cir. 2017) ("[The] identity of the speaker does not categorically determine whether a speaker is economically motivated."); *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1276 (9th Cir. 2017) (holding that a CPC's advertising of medical services for which it did not charge money was a "classic example[] of commercial speech"); *Fargo Women's Health Org., Inc. v. Larson*, 381 N.W.2d 176, 180-81 (N.D. 1986) ("[T]he degree, if any, that monies are received by the [CPC] from its clients . . . is [not] dispositive of our determination that the communication involved is commercial speech."). Indeed, the Ninth Circuit in *Ariix* itself recognized the sort of "indirect benefits" found in *First Resort* and *Handsome Brook Farm* constitute viable forms of "economic motivation." 985 F.3d

[3] Despite arguing that a financial transaction is required for speech to be commercial, Defendants appear to also argue that compensation is not sufficient to supply an economic motive either. *See* ECF 119 at 8-9. Defendants' contradicting arguments underscore that Defendants do not seek certification of a legitimate question, but instead challenge the application of settled law to them.

at 1117.

Defendants' disagreement with the Court's holding turns on Defendants' analysis of the *facts*, listing allegations in the pleadings they believe support an alternative conclusion and describing hypotheticals that were not pled. ECF 119 at 6. Aside from being unpersuasive, Defendants' argument belies the relief it seeks; this sort of fact-based disagreement is not the stuff of Section 1292(b), *see, e.g.*, *Henderson*, 2016 U.S. Dist. LEXIS 200796, at *9.

Likewise, the cases Defendants cite as demonstrating a "substantial disagreement" simply apply the *Bolger* framework to distinct sets of facts. *Id.* (rejecting argument that there was a substantial ground for difference of opinion where cases cited by movant were "factually distinguishable"). In multiple cases cited by Defendants, the courts' holdings that the speech was not commercial depended both on the fact that plaintiff had failed to allege a link or nexus between the speech and funding to the nonprofits and because the speech failed at least one other *Bolger* factor. *See KetoNatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 181 F.4th 1069, 1087 (10th Cir. 2026) (holding nonprofits' speech was not commercial because the plaintiff failed to allege a link between the speakers' funding and the challenged statements, and because the speech also failed the other two *Bolger* factors); *Mayday Health v. Rhoden*, No. 26-cv-04096-CCT, 2026 U.S. Dist. LEXIS 160676, at *30-32 (D.S.D. July 17, 2026) (holding speech not commercial where plaintiff failed to plausibly allege a nexus between the nonprofit's advertisements and fundraising, and second *Bolger* factor not met); *Nat'l Inst. of Family & Life Advocates ("NIFLA") v. James*, 160 F.4th 360, 376 (2d Cir. 2025) (holding speech was not commercial because, *inter alia*, the speakers did not provide the services at issue themselves (second *Bolger* factor), received no "financial benefit," and instead served only "to provide the public with information about [abortion

pill reversal] and access to third-party providers”).[4] Here, by contrast, Defendants have never disputed that the first two *Bolger* factors are met, and Four Women has specifically alleged that Abundant Hope’s fundraising is contingent on the success of its false advertising. *See* ECF 59 ¶ 95 (“Abundant Hope touts these medical ‘services’ in connection with efforts to raise funds . . . Abundant Hope specifically touts its diversion of potential Four Women patients in its fundraising efforts.”). None of those cases involved claims against for-profit advertising agencies or advertisements for services, published and disseminated by a for-profit advertising firm.

Finally, Defendants’ attempts to invoke recent Supreme Court First Amendment jurisprudence that this Court has already recognized as inapposite likewise has no bearing on this motion. Neither *Chiles v. Salazar*, 607 U.S. 627 (2026), which CLM raised in its motion for reconsideration and this Court rejected as “not on point,” ECF 113, nor *NIFLA v. Becerra*, 585 U.S. 755 (2018), which the Court distinguished in its Order, ECF 94 at 29 n.4, addresses commercial speech, let alone in a manner indicating a “substantial ground for difference of opinion.” These cases do nothing to demonstrate that Question A is a proper basis for interlocutory review.

B. <u>Defendants’ Question Regarding Whether This Advertising Is “Commercial Advertising” under the Lanham Act Does Not Justify Certification.</u>

Next, Defendants seek to certify whether Defendants’ advertising is “made with the intent of influencing potential customers to purchase the speaker’s goods or services”—one element within the four-factor test the First Circuit uses to assess whether speech is “commercial advertising or promotion” for the purposes of the Lanham Act. *See Podiatrist Ass’n, Inc. v. La*

---

[4] The other cases Defendants cite are not false advertising cases. *See, e.g.*, *NOW v. Scheidler*, 968 F.2d 612 (7th Cir. 1992), rev’d, 510 U.S. 249 (1994) (involving alleged violations of the Sherman Antitrust Act and RICO); *Riley v. Nat’l Fed’n of Blind*, 487 U.S. 781 (1988) (involving challenge to North Carolina’s Charitable Solicitations Act); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (defamation/libel case).

*Cruz Azul de Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir. 2003). Question B likewise fails to meet the requirements of Section 1292(b).

First, Question B is not controlling. A question of law is controlling if "reversal of the district court's order would terminate the action." *United Air Lines*, 716 F. Supp. 2d at 91 (quoting *Philip Morris, Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997)); *see also Atrion Networking Corp. v. Marble Play, LLC*, 31 F. Supp. 3d 357, 359 (D.R.I. 2014) (explaining a legal question cannot be "controlling" "if litigation would be conducted in much the same manner regardless of the disposition of the question upon appeal"). Even if this question were resolved in Defendants' favor, the Chapter 93A claim, which is predicated on the same false and deceptive advertising and business practices, would remain.

Second, Defendants have not demonstrated that the question is one for which there is substantial ground for difference of opinion. "There may be substantial ground for difference of opinion when an issue involves 'one or more difficult and pivotal questions of law not settled by controlling authority.'" *Henderson*, 2016 U.S. Dist. LEXIS 200796, at *8 (quoting *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984)). "For example, an interlocutory appeal might be appropriate when the circuits are divided and a court follows the minority view" or "where the caselaw in the district courts nationwide is divided." *S. Orange Chiropractic*, 2016 U.S. Dist. LEXIS 70680, at *6 (citing cases). By contrast, "[a]n absence of case law in support of Plaintiff's arguments does not establish sufficient ground for difference of opinion for purposes of certifying an interlocutory appeal." *Lama-Wolobah v. Paqui*, LLC, No. 4:24-cv-12016-MRG, 2026 U.S. Dist. LEXIS 73065, at *16 (D. Mass. Mar. 31, 2026); *see Atrion*, 31 F. Supp. 3d at 360.

Defendants' argument focuses on an absence of precedent. Defendants argue that Four Women has not identified a "decision where a court had ever applied [the Lanham Act] to a

nonprofit's speech promoting its wholly free charitable services, or to the marketing firm that prepared such advertising," ECF 119 at 2; Defendants have likewise cited no case holding that the "purchase" element for goods or services requires a monetary exchange.[5] This dearth of cases does not demonstrate a "substantial ground for difference of opinion." *See New Eng. Gen-Connect, LLC v. US Carburetion, Inc.*, No. 14-CV-13530-IT, 2015 U.S. Dist. LEXIS 178011, at *2 (D. Mass. Dec. 8, 2015); *see also United States v. Representatives*, No. 20-1475 (CVR), 2023 U.S. Dist. LEXIS 233220, at *8 (D.P.R. Feb. 14, 2023) ("Courts have cautioned that the 'novelty' of an issue is not enough to establish a substantial ground for difference of opinion.").

The limited interpretation of "purchase" Defendants propose would also be inconsistent with the Lanham Act. As many courts have recognized, the Lanham Act applies to non-profits as it does to for-profit entities. *See, e.g.*, *Handsome Brook*, 700 F. App'x at 258-59; *Gordon & Breach Sci. Publ'rs S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1534-35 (S.D.N.Y. 1994) (noting that "commercial advertising or promotion" in the Lanham Act "covers misrepresentations by non-profit and for-profit organizations alike"). Defendants' attempt to limit the reach of the Lanham Act based on a strict interpretation of the First Circuit's "purchase" element would give carte blanche to non-profits to engage in false advertising, even when advertising for services—as Defendants' speech does here. Such a reading is incompatible with the Lanham Act.

---

[5] Defendants rely on *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) to support their argument that "purchase" may not encompass the receipt of free services. *See* ECF 119 at 13. But *New.Net* is not an advertising case, and the Plaintiff in *New.Net* could not allege as a matter of law "that the reference to Plaintiff in its software was 'for the purpose of influencing consumers to buy Defendant's goods or services' because the statements about [Plaintiff] appear[ed] only *after*" the goods were delivered, thus foreclosing the possibility that action was intended to influence a purchase. *New.Net*, 356 F. Supp. 2d at 1118 (emphasis added). Here, Defendants' deceptive advertising operates before any interaction with AWHC. And regardless of any "purchase," a plaintiff's allegations that a defendant's false statements caused it economic injury place the plaintiff's injuries directly within the Lanham Act's "zone of interests." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32 (2014).

C. Defendants' Proposed Question C—Whether Chapter 93A "Reaches" CLM's Speech—Is an Inappropriate Basis for Interlocutory Review by the First Circuit.

Finally, Defendants ask the Court to certify based on a question that applies to CLM alone: whether CLM, as an advertiser, can be held liable under Chapter 93A where its client has been held not liable for the same speech. This question is purely one of state law.[6] "[I]t is improper to certify a question of state law to the United States Court of Appeals for interlocutory review." *Cummins*, 697 F. Supp. at 70; *see, e.g.*, *A.J. Props. v. Stanley Black & Decker, Inc.*, No. 11-10835-FDS, 2013 U.S. Dist. LEXIS 50849, at *2 (D. Mass. Apr. 8, 2013) (explaining "an interlocutory appeal to the First Circuit was not the appropriate vehicle for the determination of the contested issue, which is a matter of Massachusetts state contract law"); *Espinal v. Sephora USA, Inc.*, No. 22 Civ. 3034-PAE, 2024 U.S. Dist. LEXIS 206346, at *12-13 (S.D.N.Y. Nov. 12, 2024). In *Cummins*, the court denied a similar request, explaining:

> If . . . this Court were to grant § 1292(b) certification, the First Circuit Court would find itself in no better position to make a determination concerning state law than this Court now finds itself. In fact, it is quite likely that the Court of Appeals, should it accept the interlocutory appeal, would feel compelled to itself certify the state law issue to the [SJC]. The delay that would be caused by such a circuitous certification route, of an issue that may become moot, would be inefficient for the courts involved and unfair to the litigants.

697 F. Supp. at 70. Certification based on this Chapter 93A question would similarly contravene interests of judicial expediency.

Certification based on Question C is particularly inefficient as it pertains to only one claim. In other words, it is not a "controlling" question. A legal question cannot be "controlling" "if litigation would be conducted in much the same manner regardless of the disposition of the question upon appeal." *Atrion*, 31 F. Supp. 3d at 359. If CLM were to prevail and the First Circuit

---

[6]. If Defendants genuinely believe that this state law question requires resolution, the forum for appeal is the SJC, not the First Circuit. Defendants relegate SJC certification to a brief afterthought, however, proposing it only "in the alternative" should this Court decline § 1292(b) certification. ECF 119 at 17.

were to reverse on appeal, the Lanham Act claim would still remain against all Defendants. Thus, through Question C, Defendants seek to start a long, circuitous journey that may result in no change to the scope of the litigation even if they succeed. *See Cummins*, 697 F. Supp. at 71. ("Section 1292(b) must not be used to transmogrify a legitimate cause of action into a legal pinball bouncing from court to court in the federal and state judicial systems."). This sort of inefficiency is the reason why courts so strongly disfavor interlocutory appeals.

## II. <u>Certification to the Supreme Judicial Court Is Unwarranted.</u>

Defendants follow their lengthy request for certification to the First Circuit with a halfhearted request for certification to the SJC of Question C, pursuant to S.J.C Rule 1:03. A federal court may certify a question of law to the SJC when there exists a question of law that is "determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decision of the SJC." *Lama-Wolobah*, 2026 U.S. Dist. LEXIS 73065, at *13-14 (citing S.J.C. Rule 1:03). "The purpose of this certification is not to satisfy a frustrated party who has failed to prevail on a motion at the federal level." *Id*. Defendants are clearly not interested in this route, even though a genuine dispute over the interpretation of state law belongs before the SJC, not the First Circuit; they spend less than two pages on the topic and ask for this relief only "if the Court declines certification under § 1292(b)." ECF 119 at 17. Defendants' cursory argument fails to demonstrate the propriety for certification of their question to the SJC, particularly given the case's early posture and the judiciary's strong preference against piecemeal litigation.

Defendants propose the following, expanded version of Question C for certification to the SJC:

> Where a nonprofit's advertising of its charitable offering of free services is not in 'trade or commerce' under M.G.L. c. 93A, and its own promotion of those services

> is therefore not actionable under the statute . . . may a for-profit marketing company that created and disseminated the nonprofit's promotional content be held liable under M.G.L. c. 93A § 11, to an alleged for-profit competitor of the nonprofit with which the marketing company has had no direct commercial dealings?

ECF 119 at 18. This question is not a single, discrete question of law appropriate for certification. Rather, Defendants have improperly bundled several distinct issues into one compound inquiry that asks the Court to not only resolve a question of law, but also to assess the significance of the parties' conduct and commercial relationships, thereby presenting a question that cannot be answered without further development of the factual record. *See Canal Elec. Co. v. Westinghouse Elec. Corp*., 406 Mass. 369, 372 (1990) ("The record before us is not fully developed on issues raised by [plaintiff], as required by our rule, and those issues raise factual disputes that are not resolved . . . In this case, we confine our answers to the undisputed facts."). Whether an entity operates in a business context is a fact-intensive inquiry, *see Graham v. Just A Start Corp.*, No. 2009-1220, 2011 Mass. Super. LEXIS 139, at *28-30 (Mass. Super. Ct. Aug. 4, 2011), and "[i]t is improper to certify issues that are not a question of law, but are questions centered on factual allegations to a specific case." *Lama-Wolobah*, 2026 U.S. Dist. LEXIS 73065, at *14.

Moreover, this is not a case of nonexistent precedent. The Court applied several significant SJC decisions in answering the question of whether CLM was engaged in "trade or commerce" and, therefore, liable under Chapter 93A for its own deceptive conduct. *See* ECF 94 at 14-16 (citing, e.g., *Wheatley v. Mass. Ins. Insolvency Fund*, 465 Mass. 297 (2013) and *Linkage Corp. v. Trs. Of Bos. Univ.*, 425 Mass. 1 (1997)). Relying on these cases, the Court assessed the facts pled—including CLM's role in creating the content of the advertising, its actions targeting Four Women's business, and its role as a for-profit agency that was paid for this work—and held that "[w]hen a profitmaking business inserts its *own* false and misleading advertisements into the marketplace in exchange for consideration, it is engaged in trade or commerce, even if it shares a

charitable vision with a nonprofit organization." ECF 94 at 14-15 (emphasis added). In other words, applying SJC authority, this Court was able to "confidently predict how the SJC would answer the question" Defendants seek to certify, *Zecco v. Hess Corp.*, 777 F. Supp. 2d 207, 216 (D. Mass. 2011).

The Court's Order is further bolstered by broader FTC Act jurisprudence. Under the FTC Act, which is wholly incorporated into Chapter 93A,[7] advertisers are liable for false advertising when they directly participate in the deception at issue. *See Colgate-Palmolive Co. v. FTC*, 310 F.2d 89, 92 (1st Cir. 1962) (allowing FTC to pursue action against advertising agency for false television ad when it gave its aid and suggestion to client); *see also, e.g.*, *Doherty, Clifford, Steers & Shenfield, Inc. v. FTC*, 392 F.2d 921, 928 (6th Cir. 1968) (advertisers may be liable for deceptive advertising when they "offer general marketing consultation for both new and existing products," "formulate advertising Plans," "prepare layouts and copy for advertisements," and "originate advertising ideas"); *Carter Prods., Inc. v. FTC*, 323 F.2d 523, 533-34 (5th Cir. 1963) (stating it was "clear from the record that the advertising agency here was deeply involved," noting the agency "agreed with Carter on the motif of the program [and] wrote up the storyboards"); *FTC v. LeanSpa, LLC*, 920 F. Supp. 2d 270, 276-77 (D. Conn. 2013) (denying motion to dismiss where FTC and Connecticut Attorney General alleged marketer "coordinated directly" with weight loss company's CEO on lead generation activities).

In the face of this precedent, there is no need to certify to the SJC. Defendants offer no SJC authority that "seemingly point[s] in [an] opposite direction[]" from this precedent holding advertisers accountable for conduct like this, nor do they present arguments that would otherwise

[7] *See McDermott v. Marcus, Errico, Emmer & Brooks*, P.C., 775 F.3d 109, 122 (1st Cir. 2014) ("The SJC announced with striking clarity that Massachusetts has wholly incorporated the FTC Act, 15 U.S.C. § 45(a)(1), into Chapter 93A . . . It follows that, because Massachusetts has folded the FTC Act into Chapter 93A, unfair or deceptive conduct that violates the FTC Act also violates Chapter 93A.") (internal citations omitted).

undermine the Court's confidence in its ability to "confidently predict how the SJC would answer the question," *Zecco*, 777 F. Supp. 2d at 216. On the contrary, as the Court observed in its Order, limiting the reach of Chapter 93A to immunize for-profit entities from liability simply because they purport to speak to "further the core mission of a nonprofit organization" is an undue limitation that would "contravene the Legislature's intent to promote more equitable behavior in the marketplace by those acting in a business context." ECF 94 at 15 (citing *Linkage Corp.*, 425 Mass. at 25).

Should the Court nevertheless determine that certification to the SJC is warranted, Four Women objects to Defendants' proposed question as written, as it contains certain assumptions that would merit further scrutiny by the SJC. Should the Court consider certification, Plaintiff respectfully requests the opportunity to further brief the appropriate scope of the question presented.

## III. A Stay is Inappropriate.

Finally, Defendants ask that this Court stay all discovery in this case, should it certify interlocutory review of any portion of the Order to any court. Even if the Court chooses to certify interlocutory review of its Order, it should deny this request. A stay of discovery is neither necessary nor appropriate here.

Stays are disfavored. "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right." *New Jersey v. Trump*, 131 F.4th 27, 34 (1st Cir. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted)). Section 1292 does not alter this standard; it provides that application for appeal "shall not stay proceedings in the district court" absent further order of the court. 28 U.S.C. § 1292(b). Defendants bear the burden of justifying the "extraordinary relief" of a stay. *Agatha v. Trump*, 151 F.4th 9, 11 (1st Cir. 2025).

In considering whether to grant a stay, courts consider four factors: (1) whether the movant made a "strong showing that it is likely to succeed on the merits"; (2) whether the movant has shown it will be "irreparably injured absent a stay"; (3) "whether the issuance of a stay will substantially injure other parties interested in the proceeding"; and (4) "where the public interest lies." *Id.* (internal quotations omitted). "The first two factors 'are the most critical.'" *Id.* (quoting *Nken*, 556 U.S. at 434).

Defendants have not demonstrated a "strong showing" that they are likely to succeed on the merits. "Where the appellate court has not ruled on the petition, the likelihood of success inquiry requires two considerations: first, whether the moving party will obtain permission to appeal, and second, if permission to appeal is granted, whether the moving party will prevail on the merits of the appeal." *Picone v. Shire, LLC*, No. 1:16-cv-12396-ADB, 2020 U.S. Dist. LEXIS 99910, at *6 (D. Mass. June 8, 2020) (internal quotations omitted). As discussed *supra*, the First Circuit has "repeatedly emphasized that interlocutory certification under 28 U.S.C. § 1292(b) should be used sparingly and only in exceptional circumstances. *See Caraballo-Seda*, 395 F.3d at 9 (internal quotation marks omitted). This Court applied controlling precedent to the unique facts in this case to reach a well-reasoned conclusion on two separate occasions. Defendants fail to demonstrate, at a minimum, a substantial difference of opinion or complete lack of guidance in the SJC sufficient to satisfy the requirements for certification—let alone a "strong showing" that it would prevail on the merits of its questions.

Nor will Defendants be irreparably injured absent a stay, as their only "burden" will be proceeding with ordinary discovery pursuant to a robust protective order and the schedule this Court has already set. Mere litigation expense does not constitute the sort of irreparable injury

justifying a stay, "even if those expenses are ultimately rendered unnecessary." *Fitzmorris v. Weaver*, No. 21-cv-25-PB, 2024 U.S. Dist. LEXIS 10476, at *8 (D.N.H. Jan. 22, 2024).

Meanwhile, Four Women continues to be injured by Defendants' conduct. Defendants have worked to keep this case locked in pre-discovery through their motion practice, all the while continuing the same pattern of misconduct underlying this action: writing, publishing, and disseminating false and deceptive advertising in an attempt to misdirect potential Four Women patients. Every day of further delay enables Defendants' conduct, not only harming Four Women but also misleading Massachusetts consumers. There is no basis to stay this case any further. It is time for discovery to begin.

## CONCLUSION

For the foregoing reasons, Four Women respectfully requests that this Court deny Defendants' Motion to Certify in its entirety.

Dated: September 16, 2026

**Four Women Health Services, LLC**

By its attorneys,

/s/ *Matthew Patton*
Matthew D. Patton (BBO No. 703798)
**Patton Legal, P.C.**
161 Savin Hill Ave
Boston, MA 02125
(617) 453-3693
mpatton@pattonlegalpc.com

/s/ *Martha Coakley*
Martha Coakley (BBO #87300)
**Zucker Law Group LLP**

/s/ *Emily Nash*
Emily J. Nash (BBO #696460)
**Foley Hoag LLP**
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
enash@foleyhoag.com

Brenna Rosen (*pro hac vice*)
**Foley Hoag LLP**
1301 Avenue of the Americas

33 Arch St., 25th Floor
Boston, MA 02110
(617) 865-8967
mcoakley@zuckerlawgroup.com

New York, New York 10019
(212) 812-0400
brosen@foleyhoag.com

**CERTIFICATE OF SERVICE**

I, Emily Nash, certify that on September 16, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to defendants by electronically serving its counsel of record.

/s/ *Emily Nash*
Emily J. Nash