**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FOUR WOMEN HEALTH SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ABUNDANT HOPE PREGNANCY RESOURCE CENTER, INC., d/b/a ATTLEBORO WOMEN'S HEALTH CENTER, CATHERINE ROMAN, NICOLE CARGES, DARLENE HOWARD, and CHOOSE LIFE MARKETING, LLC,<br><br>Defendants. | Case No. 1:24-cv-12283-JEK<br><br>The Hon. Julia E. Kobick<br>U.S. District Judge<br><br>*(Leave to file granted on September 30, 2026)* |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO CERTIFY INTERLOCUTORY ORDER FOR IMMEDIATE APPEAL AND TO STAY PROCEEDINGS**

## INTRODUCTION

Plaintiff Four Women does not dispute that the commercial-speech question is "controlling" or that an immediate appeal "could 'materially advance'" this litigation. Dkt. 125 at 6 n.2. Its remaining arguments—that the questions apply settled law to facts, that a state-law question cannot go to the First Circuit, and that a stay requires the showing needed to stay a judgment pending appeal—do not hold. Each proposed question asks what legal standard governs facts the Court has already taken as true, and no controlling authority answers them. And two days after its opposition, Four Women served invasive requests for client files, fundraising materials, and internal strategy documents, which only highlights the need for a pause while certification is considered, to avoid lengthy and expensive discovery fights involving weighty constitutional issues.

## ARGUMENT

### I. This case presents exceptional circumstances warranting certification.

Four Women invokes "exceptional circumstances." Dkt. 125 at 3. The First Circuit holds that certification "should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984). Courts decide whether those circumstances exist by applying the statute's elements. The First Circuit in *Caraballo-Seda v. Mun. of Hormigueros* vacated its grant of interlocutory review because two of the three elements failed: other district courts had reached the same answer, and the remaining claims on the same facts were proceeding. 395 F.3d 7, 9 (1st Cir. 2005). This district, in turn, certifies orders denying dismissal when all three are met. *Courtemanche* recited the exceptional-circumstances standard, then certified after finding each element satisfied. *Courtemanche v. Motorola Sols., Inc.*, 793 F. Supp. 3d 279, 285, 288-93 (D. Mass. 2025); *see Simmons v. Galvin*, No. 01-11040-MLW, 2008 WL 11456109, at *2-3 (D. Mass. Jan. 16, 2008) (same); *Wright v. United Servs. Auto. Ass'n*, No. 23-cv-11155-ADB, 2024 WL 4681749, at *2-4 (D. Mass.

Nov. 5, 2024), *petition for leave to appeal granted*, No. 24-8032 (1st Cir. Oct. 20, 2025); *Meijer, Inc. v. Ranbaxy Inc.*, 245 F. Supp. 3d 312, 315 (D. Mass. 2017).

Defendants' opening memorandum made that showing here. Each question is controlling: Question A would dispose of both counts, Question B of the only federal claim, and Question C of the § 11 claim. Dkt. 119 at 5, 12-17. Each is unsettled: before this case, the parties had identified no decision applying § 1125(a)(1)(B) to a nonprofit's promotion of free services or to its marketing vendor, or exempting a nonprofit from § 11 while applying it to the vendor. *Id.* at 2; *see* Hr'g Tr. 16:10-23, Dkt. 92. And an immediate appeal could make unnecessary discovery into sensitive medical conversations, a charity's fundraising communications and donor relationships, and the associational relationships and advocacy strategy of a prominent national marketing consultant to religious and pro-life nonprofits. Dkt. 119 at 2, 11; *see infra* Part V; Ex. B, Def. 8.

Nor does it count against certification that Defendants raised these arguments before. Reconsideration asks whether the Court erred or the law changed; § 1292(b) asks whether reasonable jurists could disagree. *See Courtemanche*, 793 F. Supp. 3d at 283 (denying reconsideration and certifying in the same order).

**II. Question A asks which legal standard governs, not how to weigh facts.**

Four Women calls the commercial-speech question a "mixed question of fact and law." Dkt. 125 at 6. But Defendants do not ask the First Circuit to find facts or to reject the Court's inferences. For this appeal, Defendants accept the pleaded facts and the inference the Court drew: that the advertising attracts clients and supports fundraising, and that Abundant Hope paid Choose Life to prepare and place it. Dkt. 94 at 22-23. The dispute is over the governing standard—whether those benefits, and a vendor's pay, make a charity's promotion of free services commercial. That is a question of "the meaning of a . . . constitutional provision," the test Four Women itself offers. Dkt. 125 at 6 (quotation omitted). *Usmanov*, on which Four Women relies, is different. There, this Court denied

certification because the First Circuit had just addressed both proposed questions and the movant disputed only how that standard applied. *Usmanov v. Mass. Fin. Servs. Co.*, No. 1:23-cv-11631-JEK, ECF 36 (D. Mass. Oct. 21, 2024) (citing *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024)). Here the Order drew its commercial-speech standard from out-of-circuit decisions. Dkt. 94 at 21-24.

The standard is contested. The Order drew its framework from *Ariix, LLC v. NutriSearch Corp.*, Dkt. 94 at 21, which asks "whether the speaker acted primarily out of economic motivation, not simply whether the speaker had any economic motivation," and holds that "an incidental economic benefit, without more, does not make something commercial speech." 985 F.3d 1107, 1116-17 (9th Cir. 2021). However, the Order then applied *First Resort, Inc. v. Herrera*, which treated a pregnancy center's ability to "fundraise and, in turn, to buy more advertisements" as an economic motivation (though *First Resort* did *not* consider the question whether fundraising and advertising alone are sufficient to make the economic motivation *primary*, as required by *Ariix*), 860 F.3d 1263, 1273-74 (9th Cir. 2017); Dkt. 94 at 22-23. *See Ariix*, 985 F.3d at 1117 (listing First Resort among cases about "employee compensation"). And the Second Circuit rejected the "commercial value" theory of free services because "this would be true of any non-profit providing information, free services, and access to third-party providers." *Nat'l Inst. of Fam. & Life Advocs. v. James*, 160 F.4th 360, 377 (2d Cir. 2025). The Tenth Circuit recently held that allegations that an interested company funded a nonprofit "cannot satisfy the quid pro quo necessary" to make its statements commercial. *KetoNatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 181 F.4th 1069, 1087-88 (10th Cir. July 14, 2026). The Fourth Circuit has held that "[a] morally and religiously motivated offering of free services cannot be described as a bare 'commercial transaction,'" though it distinguished ordinances aimed at false advertising. *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 879 F.3d 101, 108 (4th Cir. 2018). These authorities treat indirect economic benefits differently, though their facts also differ. Four Women says those

courts also found other *Bolger* factors missing. Dkt. 125 at 9. But each addressed economic motivation, the only factor disputed here. Dkt. 94 at 22. Four Women's counsel agreed at argument that Abundant Hope's nonprofit, no-charge character "means that it is less likely to be commercial speech," Hr'g Tr. 62:16-19, Dkt. 92, and described the motive as "specific attempts to put a separate entity out of business," *id.* at 48:24-25. That is the stance of "political opponents, not commercial competitors." *Nat'l Org. for Women, Inc. v. Scheidler*, 765 F. Supp. 937, 941 (N.D. Ill. 1991), *aff'd*, 968 F.2d 612 (7th Cir. 1992), *rev'd*, 510 U.S. 249 (1994) (holding RICO does not require an economic motive). The parties identify no First Circuit decision resolving how a charity's fundraising, or its vendor's pay, bears on that factor.

The Order also rested on Choose Life's pay. Dkt. 94 at 22. *New York Times Co. v. Sullivan* and *Riley* show why compensation alone cannot settle the classification: that the Times "was paid for publishing the advertisement is as immaterial in this connection as is the fact that newspapers and books are sold." 376 U.S. 254, 266 (1964); *see Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795-96 (1988). Four Women notes that those were not false-advertising cases, Dkt. 125 at 10 n.4, but they show that pay does not decide what the speech is. And *KetoNatural* and *Mayday Health v. Rhoden*, No. 4:26-CV-04096-CCT, 2026 WL 2070966, at *11 (D.S.D. July 17, 2026), postdate the Order and the close of reconsideration briefing. The Court declined to treat *Chiles v. Salazar*, 607 U.S. 627 (2026), as grounds for reconsideration while not foreclosing further First Amendment argument, Dkt. 113.

**III. Question B asks what "purchase" means when the services are free.**

Four Women offers no reading of "purchase" that reaches services given away. Its footnote says the word "falls within the legal definition of 'commercial advertising or promotion,'" Dkt. 125 at 5 n.1, which restates the element. The First Circuit's test requires speech "made with the intent of influencing potential customers to purchase the speaker's goods or services." *Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc.*, 332 F.3d 6, 19 (1st Cir. 2003). The Order recognized that the First Circuit has not "distinguished between free and paid services." Dkt. 94 at 24. Four Women distinguishes *New.Net*

because the statements there appeared after delivery. Dkt. 125 at 12 n.5. That does not answer its express reasoning: "There is no purchase here because Ad-aware is available for free to the general public." *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1118 (C.D. Cal. 2004). Four Women also does not answer *Strauss v. Angie's List, Inc.*, which affirmed dismissal where the statements at most steered consumers to businesses other than the plaintiff, not to the speaker's own services. 951 F.3d 1263, 1267-69 (10th Cir. 2020). Four Women's own brief below recast the element as influencing customers "to solicit Abundant Hope's services." Dkt. 81 at 23. Soliciting is not purchasing. If steering people from a paid provider to a free one were enough, every legal-aid office, free tax clinic, and charitable bail fund would be a commercial advertiser.

The High Court in *Lexmark Int'l, Inc. v. Static Control Components, Inc.* decided who may sue, 572 U.S. 118, 131-32 (2014), but it did not eliminate the separate purchase requirement, which the First Circuit has continued to cite. *Clemente Props., Inc. v. Pierluisi-Urrutia*, 165 F.4th 1, 29 (1st Cir. 2026) (citing *Podiatrist*'s four-part test); *see Strauss*, 951 F.3d at 1268-69. Nor do Defendants claim a blanket nonprofit exemption. The services advertised to the audience are free; Choose Life's services to the charity are paid, but the advertisements offer those services to no one. And Question B is controlling though Count II would remain: a controlling question need not end the whole case, *Courtemanche*, 793 F. Supp. 3d at 290, 292 (certifying questions that could dispose of individual claims), and this one would end the only federal claim and the only claim pending against the Abundant Hope Defendants. Dkt. 94 at 13, 27-28.

**IV. Question C is unsettled, and it may go to the First Circuit or the SJC.**

Section 1292(b) has no federal-question limit. The First Circuit recently accepted a § 1292(b) appeal on a question of Massachusetts insurance law and certified that question to the SJC. *Zurich Am. Ins. Co. v. Med. Props. Tr., Inc.*, 88 F.4th 1029, 1031-32, 1035 (1st Cir. 2023). This district certified a Chapter 93A question about the relationship § 9 requires between the parties. *Courtemanche*, 793 F.

Supp. 3d at 288-90. And in *Wright*, the First Circuit accepted a § 1292(b) appeal from an order denying dismissal of a Chapter 93A claim and, after argument, directed the parties to propose questions for certification to the SJC. Pls.-Appellees' Proposed Questions for Certification at 1, *Wright*, No. 25-1979 (1st Cir. Sept. 21, 2026). *Cummins v. EG & G Sealol, Inc.* warned against "a legal pinball bouncing from court to court" while other claims continue. 697 F. Supp. 64, 71 (D.R.I. 1988). That concern does not fit here. Questions A and B independently warrant review; if review is permitted on either, the First Circuit may also address Question C within its review of the same Order, *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996), or certify it to the SJC. And Four Women itself says a genuine state-law dispute belongs before the SJC, Dkt. 125 at 14—the direct route Defendants requested "[a]lternatively, or in addition." Dkt. 118 at 2.

Existing law does not answer the question. The Order rests on Choose Life's own paid advertising and an alleged "competitive marketplace relationship" with Four Women, not merely on participation liability. Dkt. 94 at 14-17. Choose Life does not contend that § 11 always requires privity. The question is whether preparing and placing advertisements for a charity's free, mission-driven services supplies the commercial interaction § 11 requires with that charity's alleged "competitor," when the charity's own activities fall outside Chapter 93A. *See Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480, 493-94 (1986). The SJC's description of § 11 as requiring "a commercial transaction between the parties," *Rafferty v. Merck & Co.*, 479 Mass. 141, 162 n.7 (2018), and *Planned Parenthood*'s treatment of charitable activity leave that relationship unresolved. Four Women's FTC cases, Dkt. 125 at 16, concern whether an agency that participates in deceptive advertising is liable under the FTC Act; they do not resolve what commercial interaction § 11 requires between a paid vendor and a charity's alleged "competitor."

Answering Question C changes the nature of this litigation. Count II, pending against Choose Life alone, is this case's only source of mandatory multiple damages for a willful or knowing violation

and its only source of mandatory attorney's fees. M.G.L. c. 93A, § 11; Dkt. 119 at 17. Ending it changes Choose Life's exposure, even if Count I remains. The issue is the statutory consequence of the alleged paid advertising relationship, given the Order's treatment of Abundant Hope's charitable activities. The Court itself observed at argument, "I didn't see case law cited either way for this question, and perhaps it's a novel one." Hr'g Tr. 16:10-23, Dkt. 92. A question the Court saw as open is not one whose answer it can "confidently predict." Dkt. 125 at 16-17. Choose Life does not oppose further briefing on the question's formulation. Dkt. 125 at 17.

### V. A pause while these questions are decided is warranted.

Defendants request a stay under *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936), through certified review or, at a minimum, through this Court's certification ruling and the First Circuit's decision whether to accept an appeal, with the duration revisited at that point. Dkt. 118 at 2; Dkt. 119 at 19. *Nken v. Holder*, 556 U.S. 418 (2009), governs a stay of an order pending appeal, and Defendants do not ask the Court to suspend its Order. Courts in this district have paused cases when they certify. *Simmons*, 2008 WL 11456109, at *4 (stay "necessary to achieve the substantial savings of time and expense that an interlocutory appeal may provide"); *Zecco v. Hess Corp.*, 777 F. Supp. 2d 207, 217 (D. Mass. 2011). Four Women's only case applying *Nken* to a request for interlocutory review, *Picone v. Shire, LLC*, No. 1:16-cv-12396-ADB, 2020 U.S. Dist. LEXIS 99910, at *6 (D. Mass. June 8, 2020), arose on a Rule 23(f) petition, which lies without the district court's leave; it says nothing about a court's discretion to pause its own proceedings while it considers certification.

The burden is concrete. On September 18, Four Women asked Abundant Hope for client files, health information, and appointment records of the Jane Does, identified by name, and of all defined AWHC clients since September 5, 2020; fundraising materials concerning AWHC and its services; and strategy documents, meeting notes, and pitch decks concerning Choose Life. Ex. A (Excerpts from Pl.'s 1st RFPs to Abundant Hope), Req. Nos. 4-6. It asked Choose Life for its policies

for all of its clients across the country, including "pro-life organizations" and "Christian-led businesses," and for the numbers and identities of its pregnancy-center clients. Ex. B (Excerpts from Pl.'s 1st RFPs to Choose Life), Req. No. 1 & Def. 8; Ex. C (Excerpts from Pl.'s 1st Interrogatories to Choose Life), Interrog. No. 7. These requests and others will require substantial work on privacy and associational objections before the threshold questions are resolved. The protective order restricts use and public disclosure of covered information, but it permits litigation-related access by the parties, creates no separate category for donor or strategy materials, and does not govern health information from a source that is not a HIPAA "covered entity." Dkt. 41 ¶¶ 2-4, 6. Assurances of confidentiality "may reduce the burden of disclosure to the State," but "they do not eliminate it." *Cf. Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021). Those limits support a temporary pause without requiring the Court to decide any privilege now.

Whatever Four Women's claims of continuing harm, Dkt. 125 at 19, it took no steps to remedy them for the nearly two years since amending its complaint, including never moving for the preliminary injunction it prayed for in that pleading. Dkt. 59 at 31; *see* Dkt. 60 (denying original motion as moot). Its newfound urgency warrants at best a bounded pause, not full denial of a pause. Fact discovery runs to August 2, 2027. Dkt. 117 at 2. A brief stay now, before responses are due, avoids or narrows the most intrusive discovery while the threshold questions are decided.

## CONCLUSION

Defendants thus respectfully urge that the Court certify its March 26, 2026 Memorandum and Order for immediate appeal under 28 U.S.C. § 1292(b); alternatively or in addition, certify the Chapter 93A § 11 question to the Supreme Judicial Court under Rule 1:03; and stay proceedings, including discovery, while this motion and any resulting appeal or certified question are resolved.

Respectfully submitted, this 30th day of September, 2026.

/s/ Peter Breen
Peter Breen†
Michael McHale†
Tyler Brooks†
Nathan Loyd†
Thomas More Society
121 W. Wacker Drive
Suite 650
Chicago, IL 60601
(312) 782-1680
pbreen@thomasmoresociety.org
mmchale@thomasmoresociety.org
nloyd@thomasmoresociety.org
tbrooks@thomasmoresociety.org
† admitted *pro hac vice*

/s/ Ryan P. McLane
Ryan P. McLane
(BBO# 697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
(413) 789-7771
ryan@mclanelaw.com

*Attorneys for Defendant Choose Life Marketing, LLC*

/s/ Thomas M. Harvey
Thomas M. Harvey
Law Office of Thomas M. Harvey
993 Massachusetts Ave., Suite 306
Arlington, MA 02476
Tel: 617-710-3616; Fax 781-643-1126
tharveyesq@aol.com
*Attorney for Defendants Abundant Hope Pregnancy Resource Center Inc., Catherine Roman, Nicole Carges, and Darlene Howard*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2026, I served a copy of the foregoing document upon all counsel of record via CM/ECF.

Dated: September 30, 2026

/s/ Peter Breen
Peter Breen
*Attorney for Defendant Choose Life Marketing, LLC*